Timothy Kelly, Esq.
California State Bar Number: 304840
1403 Spyglass Parkway
Vallejo, CA 94591
707-570-7507
Email:
tskelliot@gmail.com

Attorney for Plaintiff
Easton Stokes

**DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA**

EASTON STOKES

vs.

THE UNITED STATES DEPARTMENT OF JUSTICE, WILLIAM BARR, individually and as Attorney General of the United States, THE U.S. BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES (ATF); REGINA LOMARDO individually and as Acting Director of ATF; THE FEDERAL BUREAU OF INVESTIGATION; Christopher Wray individually and as Director of the Federal Bureau of Investigation; STATE OF CALIFORNIA, XAVIER BECERRA, individually and acting as Attorney General of the State of California, THE SONOMA COUNTY SHERIFF'S OFFICE, MARK ESSICK, individually and as Sheriff of Sonoma County,

Defendants.

CASE NO.: 19-4613

COMPLAINT FOR DECLARATORY JUDGEMENT AND INJUNCTIVE RELIEF

1

NOW COMES Plaintiff, Easton Stokes, by and through his attorney, Timothy Kelly, states the following complaint to the Honorable Court:

### **INTRODUCTION**

1. This is an action to uphold the Second Amendment and to ensure that the mentally healthy, whom the federal government bars from firearm possession due to any previous psychiatric hold, may present evidence of their fitness to have their firearm rights restored, as contemplated under the federal Gun Control Act.

2. Federal law gives persons barred from gun possession from an involuntary psychiatric commitment the right to restore their gun rights if those persons are not a danger to the public and it is in the public interest. The law provides that such individuals can apply to the United States Attorney General, and if he or she denies the application, such persons can seek judicial review.

3. However, Congress delegated to the states the responsibility to establish "relief from disabilities programs" to restore gun rights to such individuals.  Some states have implemented programs to carry out the federal law to allow persons with a prior involuntary mental health commitment the opportunity to demonstrate their mental fitness to possess firearms.  Other states have not.

4. California is a state without a relief from federal disabilities program.  Thus, California citizens, who at any time of their lives were committed to a mental health hospital pursuant to Welfare and Institutions Code section 5250, are forever banned from restoring their Second Amendment rights under federal law.

5. Easton Stokes, a citizen of California, sought mental health treatment during his last year of high school.  Although he voluntarily sought care, his treatment was deemed an involuntary hold under California Welfare and Institutions Code sections 5150 and 5250.  Mr. Stokes continued his treatment past the statutory 14-day hold, waived his right to a judicial hearing, and he was certified under Welfare and Institutions Code section 5250 by the attending staff at Oakcrest hospital in Santa Rosa, California.

6. After sixteen days of treatment, California, Mr. Stokes went on to lead a healthy, productive life.  In the past eighteen years, Mr. Stokes has had no further mental health episodes.

7. Under California law, the Welfare and Institutions Code section 5150, and 5250 holds and certification resulted in a 5-year firearm ban. However, the Welfare and Institutions Code section 5250 certification rendered Mr. Stokes ineligible under federal law for the remainder of his life to possess a firearm.

8. Mr. Stokes lacks a forum or any other recourse to apply for restoration under federal law because California has not created a relief from federal disabilities program.  This is a violation of his rights to bear arms under the Second Amendment, and his rights to Due Process of law under the Fifth and Fourteenth Amendments.

**THE PARTIES**

9. Plaintiff EASTON STOKES is a natural person, a citizen of the United States and of the State of California, and a resident of Sonoma County, California. Plaintiff is not a risk to himself or to other people but was committed once approximately eighteen years ago after ingesting psilocybin. Plaintiff wishes to inherit firearms belonging to his grandfather, a World War II veteran.  However, Mr. Stokes is prevented from doing so due to the unnecessarily broad federal firearm ban and the lack of forum to

seek restoration of his Second Amendment rights under federal law. Although federal law provides a right to restore firearm rights, Defendants have not permitted Plaintiff to demonstrate his current fitness under federal law and have instead prevented him from owning or possessing a firearm based solely on the one-time commitment. Plaintiff has in fact been unable to purchase or possess a firearm and fears arrest, criminal prosecution, incarceration, and fines if he were to do so.

10. Defendant Attorney General William Barr heads the United States Department of Justice ("Department of Justice"), which is the U.S. agency responsible for enforcement of federal criminal laws. Defendant Barr, in his capacity as Attorney General, is presently enforcing the unconstitutionally broad ban complained of in this Complaint. Defendant Barr also has ultimate authority for supervising all the functions of the Department of Justice and of the U.S. Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), which is an arm of the Department of Justice. Defendant Department of Justice is the agency principally enforcing the unconstitutionally broad prohibition under 18 U.S.C. § 922 (2006) preventing Plaintiff from obtaining a firearm based on the bare fact of a one-time involuntary commitment.

11. Defendant ATF is the arm of the Department of Justice responsible for prevention of federal offenses involving the use, manufacture, and possession of firearms, including the unconstitutionally broad ban challenged in this case. Defendant ATF also regulates, via licensing, the sale, possession, and transportation of firearms and ammunition in interstate commerce. ATF is currently enforcing the laws, customs, practices and policies complained of in this action.

12. Defendant Regina Lombardo is the Acting Director of the ATF and, in that capacity,

is presently enforcing the laws, customs, practices, and policies complained of in this action.

13. Defendant Federal Bureau of Investigation ("FBI") is an agency of the Department of Justice and is the agency primarily responsible through its NICS Section of performing background checks for federal, state, and local law enforcement authorities. Defendant FBI's NICS Section is responsible in this case for communicating to Defendant Sonoma County Sheriff's Office that Plaintiff was prohibited from acquiring a firearm by the unconstitutionally broad ban complained of in this action. Defendant FBI is presently enforcing the laws, customs, practices, and polices complained of in this action.

14. Defendant Christopher A. Wray, III is the Director of the FBI and, in that capacity, is presently enforcing the laws, customs, practices, and polices complained of in this action.

15. Defendant State of California is the state in which Mr. Stokes resides, and has been delegated the authority by Congress to create a relief from disabilities program to restore Second Amendment rights. The fact that California has not created any such forum comprises the basis for this action. Defendant Xavier Becerra is the Attorney General of California and, in that capacity, is presently enforcing the laws, customs, practices, and policies complained of in this action.

16. Defendant Sonoma County Sheriff's Office is the principle law enforcement organization of Sonoma County, charged with enforcing the laws, customs, practices, and polices complained of in this action.

17. Defendant Sheriff Mark Essick is the Sherriff of Sonoma County, California and head

of the Sonoma County Sheriff's Office. In that capacity, he is presently enforcing the laws, customs, practices, and policies complained of in this action.

## JURISDICTION AND VENUE

**18.** This case concerns certain subject matter under the original and exclusive jurisdiction of the federal courts of the United States of America.

**19.** This action seeks relief pursuant to 28 U.S.C. §§ 2201, 2202, and 2412 (2006), and 5 U.S.C. § 702 (2006). Therefore, jurisdiction is founded on 28 U.S.C. § 1331 (2006) in that this action arises under the Constitution and laws of the United States.

**20.** This Court has authority to award costs and attorney fees pursuant to 28 U.S.C. § 2412 (2006).

**21.** Venue is proper in this district pursuant to 28 U.S.C. § 1391(e) (2006).

## STATEMENT OF FACTS

**22.** In the spring of 2002, Easton Stokes was 18 years old. He was a senior at El Molino High School in Forestville, California.

**23.** Throughout high school, Mr. Stokes was popular among his peers. Mr. Stokes engaged in academic and extracurricular school activities, and he was mentally healthy.

**24.** One day during his senior year he tried psilocybin. Mr. Stokes felt significant mental changes. He began having trouble sleeping, stopped eating, and felt depressed. Seeking treatment, Mr. Stokes checked himself in to Kaiser in Santa Rosa, California.

25. Easton Stokes signed paperwork granting decision-making power to Nancy Barker, the mother of his best friend. Personnel at Kaiser recommended that Mr. Stokes be transported to Oakcrest, the local mental health treatment facility. From what Mr. Stokes and others recall, personnel at Kaiser further decided to label Mr. Stokes as "5150" to transport him to Oakcrest via ambulance. See California Welfare and Institutions Code section 5150. Mr. Stokes remained at Oakcrest past the 72-hour "5150 hold." The "5150 hold" therefore became a "5250 certification." Mr. Stokes did not seek judicial review of the 5250 certification. See California Welfare and Institutions Code sections 5253 and 5254. No one informed Mr. Stokes of the long-term repercussions of the psychiatric holds and the certification.

26. Mr. Stokes stayed at Oakcrest for 16 days. After being discharged, his psychiatrist gradually decreased his medication until his psychiatrist removed him from medication entirely within four months.

27. In the nearly two decades that have passed, Mr. Stokes has not suffered any mental health issues. Mr. Stokes is respected by his community, and considered to be intelligent, forthright, humorous and personable. Mr. Stokes has volunteered as a teen mentor, and has been consistently employed.

28. Four years ago, Mr. Stokes was diagnosed with stage three colon cancer. Mr. Stokes underwent 12 rounds of chemotherapy, 11 months wearing a colonoscopy bag, and 20 hours of surgery. Fortunately, Mr. Stokes completely recovered. Even during this challenging time, Mr. Stokes did not suffer any mental health symptoms.

29. Mr. Stokes is mentally fit and not a danger to himself or others.

30. In 2016, Mr. Stokes submitted a Personal Firearms Eligibility Check (PFEC). Unsurprisingly, he was informed that he was ineligible to either possess or purchase

firearms. While the notification does not contain the reason for the denial, there is no known basis for the denial other than the prior California Welfare and Institutions Code section 5250 commitment in 2002. Mr. Stokes requested to appeal the decision, but his request to appeal was denied. See Exhibit 1 (PFEC Notification and Letter Denying Right to Appeal).

31. Under the federal Gun Control Act, an individual "who has been committed to a mental institution" may not possess a firearm. Section 922(g). Specifically: "It shall be unlawful for any person . . . who has been adjudicated as a mental defective or who has been committed to a mental institution . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." *Ibid.*

32. However, the Gun Control Act provides a relief-from-disabilities program whereby individuals prohibited from possessing firearms may "appl[y] to the Attorney General for relief from the firearm restriction. The Gun Control Act states that the Attorney General may grant this relief if, after reviewing the circumstances regarding the disability and the applicant's record and reputation, "it is established to his satisfaction . . . that the applicant will not be likely to act in a manner dangerous to public safety and that the granting of the relief would not be contrary to the public interest." See 18 U.S.C. § 925(c).[1] Judicial review is available to "[a]ny person whose application for

---

[1] The full text of the statute provides:

(c) A person who is prohibited from possessing, shipping, transporting, or receiving firearms or ammunition may make application to the Attorney General for relief from the disabilities imposed by Federal laws with respect to the acquisition, receipt, transfer, shipment, transportation, or possession of firearms, and the Attorney General may grant such relief if it is established to his satisfaction that the circumstances regarding the disability, and the applicant's record and reputation, are such that the applicant will not be likely to act in a manner dangerous to public safety and that the granting of the

8

relief from disabilities is denied by the Attorney General." *Ibid.* A United States district court "may in its discretion admit additional evidence where failure to do so would result in a miscarriage of justice." *Id.*

33. The Attorney General has delegated his authority to "[i]nvestigate, administer, and enforce the laws related to . . . firearms," including the relief-from-disabilities program of 18 U.S.C. § 925(c), to the director of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). 28 C.F.R. § 0.130(a)(1). ATF regulations prescribe the form and contents of an application for relief from disabilities. See 27 C.F.R. § 478.144. All applications from individuals, for instance, must contain written statements from three references and written authorization for ATF to obtain pertinent background records. § 478.144(c)(1)–(2).

34. Applications from individuals prohibited from firearm possession because of prior commitment to a mental institution must provide: the court order mandating commitment; medical records reflecting diagnosis; and records from any authority showing the applicant's discharge from commitment, restoration of medical competency, and restoration of rights. See § 478.144(c)(5).

35. The ATF director may not grant relief to an applicant previously committed to a mental institution unless the applicant meets the requirements of 18 U.S.C. § 925(c) and unless

---

relief would not be contrary to the public interest. Any person whose application for relief from disabilities is denied by the Attorney General may file a petition with the United States district court for the district in which he resides for a judicial review of such denial. The court may in its discretion admit additional evidence where failure to do so would result in a miscarriage of justice. A licensed importer, licensed manufacturer, licensed dealer, or licensed collector conducting operations under this chapter, who makes application for relief from the disabilities incurred under this chapter, shall not be barred by such disability from further operations under his license pending final action on an application for relief filed pursuant to this section. Whenever the Attorney General grants relief to any person pursuant to this section he shall promptly publish in the Federal Register notice of such action, together with the reasons therefor.

18 U.S.C.A. § 925 (West).

"a court, board, commission, or other lawful authority" has subsequently determined the applicant "to have been restored to mental competency, to be no longer suffering from a mental disorder, and to have had all rights restored." 27 C.F.R. § 478.144(e).

36. Since 1992, Congress has eliminated funding for ATF to investigate or act upon applications for relief from federal firearms disabilities submitted by individuals. See Treasury, Postal Service, and General Government Appropriations Act, 1993, Pub. L. No. 102-393, 106 Stat. 1729, 1732; see Consolidated Appropriations Act, 2014, Pub. L. No. 113-No. 13-1876 Tyler v. Hillsdale Cnty. Sheriff's Dep't, et al. Page 4 76, 128 Stat. 5, 57; United States v. Bean, 537 U.S. 71, 75 n.3 (2002) (collecting appropriation riders from 1994–2002).

37. Thus, individuals seeking relief under section 925(c) are without recourse, even though federal law establishes a right to such relief. Finding a forum to hear applications in federal district court is of no avail, following *United States v. Bean* (2002) 537 U.S. 71 (holding that even though Congress defunded the relief from disabilities program, applications could not be addressed in federal court because administrative remedies had not been exhausted).

38. Notwithstanding the red tape with ATF, in 2008 Congress authorized federal grants to states to assist them in determining which individuals are eligible to purchase and possess firearms and to aid them in supplying accurate information to federal databases. See NICS Improvement Amendments Act of 2007, Pub. L. No. 110-180, § 103, 122 Stat. 2559, 2567. To be eligible for such grants, a state must certify to the Attorney General that it has implemented a relief-from-disabilities program under which an individual who "pursuant to state law" has been adjudicated mentally defective or has been "committed to a mental institution" may apply "for relief from the disabilities

imposed" by 18 U.S.C. § 922(g)(4). §§ 103 & 105, 122 Stat. at 2568–69.  Thus, if a state chooses to implement a relief from disabilities program to restore federal firearm rights, citizens of those states can avail themselves of that relief.

39. Under the state-implemented relief-from-disabilities program, states "shall grant the relief" if "the circumstances regarding the disabilities . . . and the person's record and reputation, are such that the person will not be likely to act in a manner dangerous to public safety and that the granting of the relief would not be contrary to the public interest." *Ibid.* These state programs must permit an individual "whose application for the relief is denied to file a petition with the State court of appropriate jurisdiction for a de novo judicial review of the denial."2 § 105(a)(3), 122 Stat. at 2570.  Roughly half the states have created grant-eligible relief-from-disabilities programs.

40. To date, California, Mr. Stokes's state of residence, has not implemented a relief-from-disabilities program.  Therefore, Plaintiff and other California residents who are ineligible to possess firearms under section 922(g)(4) have no recourse to appeal the lifelong federal firearm ban.

### FIRST CAUSE OF ACTION: SECOND AMENDMENT VIOLATION

41. Paragraphs 1-40 are incorporated herein.
42. Section 922(g) of the Federal Gun Control Act, as applied to Mr. Stokes by defendants, violates the Second Amendment because Mr. Stokes has no right to seek restoration of his federal firearm rights while citizens of other states do.
43. A government cannot categorically deny the right to bear arms to a person who was once "committed to a mental institution," regardless of the individual's present condition and without providing a forum in which a person may present evidence of their fitness to possess firearms.

44. § 922(g)(4) prohibits firearm possession not just by the mentally ill but by anyone "who has been committed to a mental institution," regardless of the reason for the commitment. The Federal Gun Control Act gives those committed to a mental institution the right to restore their firearms rights.   Under the current framework, the federal government has delegated the appeal mechanism of § 922 to the states. Notwithstanding this provision, California has not implemented a relief from disabilities program and Mr. Stokes cannot seek relief anywhere.

45. Not only can Mr. Stokes not avail himself of a forum to demonstrate current fitness to possess firearms, he is unable to challenge the original California Welfare and Institutions Code 5150 and 5250 designations (and resulting firearm ban under the Federal Gun Control Act) even though, as a factual matter, Ms. Stokes sought treatment voluntarily and he was never involuntarily committed by any court of law.

46. Defendants actions therefore unnecessarily and arbitrarily infringe on Mr. Stokes's Second Amendment right to keep and bear arms.

47. Plaintiff has incurred attorney's fees and costs as a direct result of prosecuting the present court action.

## SECOND CAUSE OF ACTION: FIFTH AMENDMENT AND DUE PROCESS VIOLATIONS

48. Paragraphs 1-48 are incorporated herein.

49. Defendants WILLIAM BARR the Department of Justice, the ATF, B. Regina Lombardo, Thomas E. Brandon, the FBI, Christopher Wray and the United States of America have, together and separately, violated Plaintiff's rights under the Due Process Clause of the Fifth Amendment.

50. The unconstitutionally broad ban on a certain class of individuals— those who have been involuntarily committed—from acquiring a firearm without providing for a means to seek review and relief from such ban violates Plaintiff's right to equal protection of the laws guaranteed under the Due Process Clause of the Fifth Amendment to the United States Constitution.

51. In violation of the Plaintiff's right to due process, Plaintiff has been deprived of his Second Amendment right to keep and bear firearms without being afforded notice and an opportunity to be heard on the matter prior to the deprivation and/or through a post-deprivation proceeding to seek review and relief from the deprivation.

52. As a direct and proximate result of the above infringement and impermissible burden on Plaintiff's Second Amendment rights, Plaintiff has suffered and continues to suffer from an unlawful deprivation of his fundamental constitutional right to keep and bear arms.

53. Plaintiff has incurred attorney's fees and costs as a direct result of prosecuting the present court action.

## THIRD CAUSE OF ACTION: FOURTEENTH AMENDMENT EQUAL PROTECTION AND DUE PROCESS VIOLATION

54. Plaintiff incorporates paragraphs 1-53 herein.

55. Defendants have, together and separately, violated Plaintiff's rights under the Equal Protection and Due Process Clauses of the Fourteenth Amendment.

56. The unconstitutionally broad ban and enforcement thereof complained of in this action violates Plaintiff's right to keep and bear arms as incorporated against the states under the Fourteenth Amendment to the United States Constitution.

57. The unconstitutionally broad ban on a certain class of individuals—individuals who have been involuntarily committed—acquiring a firearm without providing for a means to seek review and relief from such ban violates Plaintiff's right to equal protection of the laws guaranteed under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

58. In violation of the Plaintiff's right to due process under the Due Process Clause of the Fourteenth Amendment, Plaintiff has been deprived of his right to keep and bear firearms without being afforded notice and an opportunity to be heard on the matter prior to the deprivation and/or through a post-deprivation proceeding to seek review and relief from the deprivation.

59. As a direct and proximate result of the above infringement and impermissible burden on Plaintiff's Second Amendment rights, Plaintiff has suffered and continues to suffer from an unlawful deprivation of his fundamental constitutional right to keep and bear arms.

60. Plaintiff has incurred attorney's fees and costs as a direct result of prosecuting the present court action.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter

judgment in his favor and against Defendants as follows:

**61.** Declare that 18 U.S.C. § 922(g)(4) (2006), its derivative regulations, and all related laws, policies, and procedures violate Plaintiff's right to keep and bear arms as secured by the Second Amendment to the United States Constitution.

**62.** Declare that 18U.S.C.§922(g)(4)(2006), its derivative regulations, and all related laws, policies, and procedures violate Plaintiff's rights to equal protection and due process under the Due Process Clause of the Fifth Amendment to the United States Constitution.

**63.** Declare that enforcement of 18U.S.C.§922(g)(4)(2006), its derivative regulations, and all related laws, policies, and procedures violates Plaintiff's rights to equal protection and due process under the Fourteenth Amendment to the United States Constitution.

**64.** Permanently enjoin the Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them from enforcing against Plaintiff 18 U.S.C. § 922(g)(4) (2006) and all its derivative regulations, and all related laws, policies, and procedures that would impede or criminalize Plaintiff's exercise of his right to keep and bear arms—unless Plaintiff is afforded an opportunity to demonstrate his fitness and thereby seek relief from 18 U.S.C. § 922(g)(4) (2006) and all related laws, derivative regulations, policies, and procedures.

**65.** Award Plaintiff costs and attorney's fees and expenses to the extent permitted under 28 U.S.C. § 2412 (2006).

**66.** Grant such other and further relief as the Court deems just and proper.

Dated August 11, 2019

                                              Respectfully Submitted,

                                              /s/ Timothy Kelly

                                              Timothy S. Kelly

                                              ATTORNEY FOR MR. STOKES

.

ATTESTATION OF ELECTRONIC SIGNATURES

I, Timothy Kelly, attorney for Mr. Stokes, hereby attest that I have on file all holographic signatures corresponding to any signatures indicated by a conformed signature (/s/) within this e-filed document.

Dated:  August 11,  2019

                                              /s/ Timothy Kelly

                                              _____

                                              Timothy Kelly

                                              Attorney for Plaintiff