DAVID L. ANDERSON (CABN 149604)
United States Attorney

SARA WINSLOW (DCBN 457643)
Chief, Civil Division

JULIE BIBB DAVIS (CABN 184957)
Assistant United States Attorney

    1301 Clay Street, 3rd Floor
    Oakland, California 94612
    Telephone: (415) 770-3857
    FAX: (510) 637-3727
    Julie.Davis@usdoj.gov

Attorneys for Federal Defendants

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| EASTON STOKES,<br><br>    Plaintiff,<br><br>    v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE, et al.<br><br>    Defendants. | **C-19-cv-4613 WHA**<br><br>**FEDERAL DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; [PROPOSED] ORDER**<br><br>Judge: Hon, William Alsup<br>Date:  October 22, 2020<br>Time: 8:00 am<br>Location: Remote |

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION..............................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES .......................................................2

I.     INTRODUCTION....................................................................................................2

II.    FEDERAL STATUTORY AND REGULATORY BACKGROUND ........................3

III.   FACTUAL BACKGROUND ...................................................................................6

IV.   LEGAL STANDARD ..............................................................................................7

V.    ARGUMENT ...........................................................................................................8

        A.     Plaintiff's Second Amendment Claim Is Foreclosed By The Ninth Circuit's Decision in *Mai*.................................................................8

        B.     Plaintiff Cannot State A Legally Cognizable Second Amendment Claim.........8

        C.     Plaintiff's Second Amendment Claim Involves Conduct That Falls Outside The Scope Of The Second Amendment .................................9

        D.     Section 922(g)(4) Is Consistent With Plaintiff's Constitutional Rights Because It Satisfies The Applicable Level Of Scrutiny .................................11

              1.    Section 922(g)(4) Substantially Relates To The Important Governmental Interest Of Preventing Firearm Violence, Including Suicide, and Protecting Public Safety .................................11

                    (a)   Section 922(g)(4) Serves Important And Compelling Government Interests .................................11

                    (b)   Section 922(g)(4) Substantially Relates To Protecting Public Safety .................................13

               2.    Section 922(g)(4) Is Constitutional As Applied To Plaintiff.............18

        E.     Plaintiff's Due Process And Equal Protection Claims Are Without Merit .......19

CONCLUSION..........................................................................................................23

# TABLE OF AUTHORITIES

Page(s)

Cases

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ............................................................................................................ 7

*Barrett v. United States*,
423 U.S. 212 (1976) .......................................................................................................... 14

*Bell v. United States*,
No. 13-5533, 2013 WL 5763219 (E.D. Pa. Oct. 24, 2013) ............................................. 21

*Binderup v. Attorney Gen. U.S.*,
836 F. 3d 336 (3d Cir. 2016) ........................................................................................... 10

*Black v. Snow*,
272 F. Supp. 2d 21 (D.D.C. 2003) .............................................................................. 21, 22

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ............................................................................................................ 7

*Clark v. Jeter*,
486 U.S. 456 (1988) .......................................................................................................... 11

*Cleburne v. Cleburne Living Center, Inc.*,
473 U.S. 432 (1985) .......................................................................................................... 22

*Conn. Dep't. of Pub. Safety v. Doe*,
538 U.S. 1 (2003) .............................................................................................................. 22

*Davis v. United States*,
854 F.3d 594 (9th Cir. 2017) .............................................................................................. 7

*Dickerson v. New Banner Inst., Inc.*,
460 U.S. 103 (1983) ...............................................................................................14, 17, 21

*District of Columbia v. Heller*,
554 U.S. 570 (2008) .............................................................................................2, 8, 9, 10

*Heller v. Doe by Doe*,
509 U.S. 312 (1993) .......................................................................................................... 22

*Drake v. Filko*,
724 F.3d 426 (3d Cir. 2013) ........................................................................................ 13, 15

*Estelle v. Smith*,
451 U.S. 454 (1981) .......................................................................................................... 15

*Fla. Bar. v. Went For It, Inc.*,
515 U.S. 618 (1995) .......................................................................................................... 15

*FTC v. Publ'g Clearinghouse, Inc.*,
  104 F.3d 1168 (9th Cir. 1997) ........................................................... 7

*Graham v. Connor*,
  480 U.S. 386 (1989) ........................................................................ 20

*Heller v. Bedford Cent. Sch. Dist.*,
  665 F. App'x 49 (2d Cir. 2016) ....................................................... 18

*Huddleston v. United States.*,
  415 U.S. 814 (1974) ........................................................................ 14

*Jackson v. City & Cty. Of San Francisco*,
  746 F.3d 953 (9th Cir. 2014) ............................................................. 9

*Kachalsky v. Cty. of Westchester*,
  701 F.3d 81 (2d Cir. 2012) .............................................................. 13

*Keyes v. Lynch*,
  195 F. Supp. 3d 702 (M.D. Pa. 2016) .............................................. 21

*Maffei v. Northern Ins. Co. of New York*,
  12 F.3d 892 (9th Cir. 1993) .............................................................. 7

*Mai v. United States*,
  952 F.3d 1106 (9th Cir. 2020) .................................................. passim

*Martinez v. Marin Sanitary Serv.*,
  349 F. Supp. 2d 1234 (N.D. Cal. 2004) ........................................... 7

*McDonald v. City of Chicago*,
  561 U.S. 742 (2010) .......................................................................... 9

*Nordyke v. King*,
  644 F.3d 776 (9th Cir. 2011) ....................................................... 3, 20

*Schall v. Martin*,
  467 U.S. 253 (1984) ................................................................ 3, 12, 13

*Schweiker v. Wilson*,
  450 U.S. 221 (1981) ........................................................................ 22

*Silvester v. Harris*,
  843 F.3d 816 (9th Cir. 2013) ........................................................... 11

*Turner Broad Sys., Inc. v. FCC*,
  520 U.S. 180 (1997) ........................................................................ 13

*United States v. Bean*,
  537 U.S. 71 (2002) ............................................................................ 5

*United States v. Carey*,
  602 F.3d 738 (6th Cir. 2010) ..................................................... 20, 22

*United States v. Chapman,*
   666 F.3d 220 (4th Cir. 2012) ................................................................. 17

*United States v. Chester,*
   628 F.3d 673 (4th Cir. 2010) ................................................................. 9

*United States v. Chovan,*
   735 F.3d 1127 (9th Cir. 2013) ............................................................... 9

*United States v. Emerson,*
   270 F.3d 203 (5th Cir. 2001) ................................................................. 10

*United States v. Leuschen,*
   395 F.3d 155 (3d Cir. 2005) .................................................................. 20

*United States v. Marzzeralla,*
   614 F.3d 85 (3d Cir. 2010) .................................................................... 9

*United States v. McIlwain,*
   772 F.3d 688 (11th Cir. 2014) ............................................................... 20

*United States v. Reese,*
   627 F.3d 792 (10th Cir. 2010) ............................................................ 9, 20

*United States v. Rozier,*
   598 F.3d 768 .......................................................................................... 10

*United States v. Salerno,*
   481 U.S. 739 (1987) .............................................................................. 12

*United States v. Skoien,*
   614 F.3d 638 (7th Cir. 2010) ...................................................... 11, 13, 15

*United States v. Staten,*
   666 F.3d 154 (4th Cir. 2011) ................................................................. 15

*United States v. Torres,*
   911 F.3d 1253 (9th Cir. 2019) ........................................................... 10, 11

*United States v. Vongxay,*
   594 F.3d 1111 (9th Cir. 2010) ........................................................... 10, 18

*United States v. Waters,*
   23 F.3d 29 (2d Cir. 1994) ...................................................................... 15

*United States v. Yancey,*
   621 F.3d 681 (7th Cir. 2010) ................................................................. 10

*Washington v. Glucksberg,*
   521 U.S. 702 (1997) ........................................................................... 3, 13

*Weinberger v. Salfi,*
   422 U.S. 749 (1975) .............................................................................. 14

Statutes

10 U.S.C. § 850a ...................................................................................................... 4

18 U.S.C. § 922(d)(4) ............................................................................................... 6

18 U.S.C. § 922(g) ................................................................................... 2, 3, 14, 20

18 U.S.C. § 922(g)(1) .............................................................................................. 21

18 U.S.C. § 922(g)(4) ......................................................................................... 2, 10

18 U.S.C. § 922(g)(8) .............................................................................................. 17

18 U.S.C. § 925(c) ..................................................................................................... 5

Cal. Welf. & Inst. Code § 5250 ................................................................................ 6

Cal. Welf. & Inst. Code § 5250(a) ................................................................. 6, 13, 17

Cal. Welf. & Inst. Code § 5250(c) ............................................................................ 6

Cal. Welf. & Inst. Code § 5275 ........................................................................... 6, 20

Public Law

Pub. L. No. 90-618 .................................................................................................... 4

Pub. L. No. 90-618, § 102, 82 .................................................................................. 5

Pub. L. No. 99-308 .................................................................................................... 5

Pub. L. No. 102-393 .................................................................................................. 5

Pub. L. No. 110-180 .................................................................................................. 6

Rules

Fed. R. Civ. P. 56(a) ........................................................................................... 7, 23

Regulations

17 C.F.R. § 478.11 .................................................................................................... 4

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that, on October 22, 2020, before the Honorable William H. Alsup, Defendants United States Department of Justice, William Barr, United States Bureau of Alcohol, Tobacco, Firearms and Explosives, Regina Lombardo, Federal Bureau of Investigation, and Christopher Wray (collectively "Federal Defendants") will move this Court for an order granting judgment on all claims in favor of Federal Defendants pursuant to Rule 56(a) of the Federal Rules of Civil Procedure. Federal Defendants' Motion is based on this notice; the following memorandum of points and authorities; and such oral argument as the Court may permit.

DATED:  September 10, 2020                    Respectfully submitted,

DAVID L. ANDERSON
United States Attorney

By:      */s/ Julie Bibb Davis*
         JULIE BIBB DAVIS
         Assistant United States Attorney

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.      INTRODUCTION

Plaintiff Easton Stokes ("Plaintiff") is prohibited from possessing a firearm under 18 U.S.C. § 922(g)(4) because it is undisputed that he was involuntarily committed for mental health treatment pursuant to California law. Complaint at ¶¶ 25-26 (Dkt. No. 1). The Ninth Circuit has recently held, in a published opinion, both that section 922(g)(4) is constitutional under the Second Amendment, and that the *continued* prohibition on the possession of firearms by a plaintiff who, like Plaintiff Stokes, was committed some years ago, survives an as applied challenge to section 922(g)(4). *Mai v. United States*, 952 F.3d 1106, 1120-1121 (9th Cir. 2020), *pet. for rehearing en banc denied* (September 10, 2020, Case. No. 18-35071, Dkt. No. 42). Moreover, the Ninth Circuit also held that section 922(g)(4)'s prohibition is constitutional where, as here, a plaintiff has no potential avenues for relief from the section 922(g)(4) prohibition under federal law. *Id.* Based on the controlling authority of *Mai* and other applicable caselaw, Plaintiff's Second Amendment claim must be denied, and summary judgment granted to Federal Defendants.[1]

History and common sense confirm that restricting the firearm possession of persons with a history of mental disturbance is consistent with "the right of law-abiding, responsible citizens to" keep and bear arms. *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008). The Second Amendment is thus not violated by the application to Plaintiff of section 922(g)(4)'s "longstanding prohibition[] on the possession of firearms by . . . the mentally ill." *Id.* at 626.

Even assuming that history did not foreclose Plaintiff's claims, section 922(g)(4)'s restriction on Plaintiff's firearm possession readily withstands the means-end scrutiny the Ninth Circuit has applied to determine whether the prohibitions contained in 18 U.S.C. § 922(g) run afoul of the Second Amendment. Congress enacted section 922(g)(4) to address the problem of "firearms deaths caused by

---

[1]      Federal Defendants previously moved to dismiss Plaintiff's claims against them; per an Order dated January 22, 2020 (Dkt. No. 49), this Court denied Federal Defendants' motion.  The Court subsequently stated in its Case Management Scheduling Order that motions were due by September 10, 2020.  Dkt. No. 50.  Pursuant to that Order, Federal Defendants now bring this motion for summary judgment.

persons who are not criminals, but who commit sudden, unpremeditated crimes with firearms as a result of mental disturbances," 114 Cong. Rec. 21,829 (statement of Rep. Bingham). The Supreme Court has long recognized the government's "legitimate and compelling" interest "in protecting the community from crime," *Schall v. Martin*, 467 U.S. 253, 264 (1984) (quotation marks omitted), and its "unquestionably important and legitimate" interest in suicide prevention, *Washington v. Glucksberg,* 521 U.S. 702, 735 (1997). And there is plainly a substantial fit between the compelling interests animating section 922(g)(4) and Congress's choice to address the problem of gun violence through a prohibition on firearm possession by individuals who have suffered from such severe mental illness that they were committed to a mental institution. *Mai*, 952 F.3d at 1118-19 (holding that even where a plaintiff asserts that he personally no longer suffers from mental illness and has led a life free from violence, "the Second Amendment does not demand 'an individualized hearing' to assess Plaintiff's own personal level of risk.")

Plaintiff's due process and equal protection claims likewise fail as a matter of law. When, as here, a specific right is delineated pursuant to Amendment, the right is more appropriately analyzed under that Amendment, and not under a due process or equal protection framework. *See Nordyke v. King*, 644 F.3d 776, 794 (9th Cir. 2011). Accordingly, Federal Defendants are entitled to summary judgment on all of Plaintiff's claims.

## II. FEDERAL STATUTORY AND REGULATORY BACKGROUND

The federal restrictions barring certain individuals from possessing firearms are set forth in 18 U.S.C. § 922(g). Under section 922(g)(4), an individual "who has been committed to a mental institution" may not possess a firearm. Specifically, section 922(g)(4) states:

> It shall be unlawful for any person . . . who has been adjudicated as a mental defective or who has been committed to a mental institution . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate commerce.

*Id.*[2] Regulations issued by the ATF define these terms as follows:

> Adjudicated as a mental defective.
> (a) A determination by a court, board, commission, or other lawful authority that a person, as a result of marked subnormal intelligence, or mental illness, incompetency, condition, or disease;
> (1) Is a danger to himself or to others; or
> (2) Lacks the mental capacity to contract or manage his own affairs.
> (b) The term shall include –
> (1) A finding of insanity by a court in a criminal case; and
> (2) Those persons found incompetent to stand trial or found not guilty by reason of lack of mental responsibility pursuant to articles 50a and 72b of the Uniform Code of Military Justice, 10 U.S.C. § 850a, 876b.
> . . . .
> Committed to a mental institution. A formal commitment of a person to a mental institution by a court, board, commission, or other lawful authority. The term includes a commitment to a mental institution involuntarily. The term includes commitment for mental defectiveness or mental illness. It also includes commitments for other reasons, such as drug use. The term does not include a person in a mental institution for observation or a voluntary admission to a mental institution.

17 C.F.R. § 478.11.

Congress enacted these provisions as part of the Gun Control Act of 1968, Pub. L. No. 90-618, 82 Stat. 1213, after a multi-year inquiry into violent crime that included "field investigation and public hearings." S. Rep. No. 88-1340, at 1-2 (1964).

During the hearings, federal law enforcement officials noted the "number of tragedies and crimes" resulting from the circumvention of local firearms laws, including an incident involving a "mentally ill youth who bought a gun in a Fairfax gunshop . . . and used it to kill a high school student." *Juvenile Delinquency: Hearings Before the Subcomm. to Investigate Juvenile Delinquency of the S. Comm. on the Judiciary*, 88th Cong. 3375 (1963) (pt. 14) (statement of James Bennett, Director, U.S. Bureau of Prisons). The evidence before Congress also addressed suicide, showing that "[i]n 1966, 6,855 Americans were murdered by gun[] [whereas] 10,407 suicides and 2,600 fatal accidents involved firearms," 114 Cong. Rec. 21,774 (1968) (statement of Rep. Rosenthal), and that "[i]n the last decade, 92,747 Americans took their own lives with a firearm, reflecting the fact that the surest and easiest way

---

[2] Section 922(g) also imposes firearm restrictions on several other groups of individuals, including convicted felons, section 922(g)(1); fugitives, section 922(g)(2); and domestic violence misdemeanants, section 922(g)(9).

to commit suicide is with a gun," *id.* at 21,811 (statement of Rep. Schwengel).

Congress sought to address these problems by "regulat[ing] more effectively interstate commerce in firearms so as to reduce the likelihood that they fall into the hands of the lawless or those who might misuse them," S. Rep. No. 89-1866, at 1 (1966), including "persons who are not criminals, but who commit sudden, unpremeditated crimes with firearms as a result of mental disturbances," 114 Cong. Rec. 21,829 (statement of Rep. Bingham). Lawmakers explained that they sought to restrict access to firearms from "individuals who by their previous conduct or mental condition or irresponsibility have shown themselves incapable of handling a dangerous weapon in the midst of an open society," *id.* at 21,809-10 (statement of Rep. Tenzer), such as "persons with a history of mental disturbances," *id.* at 21,784 (statement of Rep. Celler).

As originally enacted, the Gun Control Act included a provision under which an individual barred from firearm possession due to certain non-firearm offenses could apply to the federal government for "relief from the disabilities imposed by Federal laws," based on a showing "that the circumstances regarding the conviction, and the applicant's record and reputation, are such that the applicant will not be likely to act in a manner dangerous to public safety and that the granting of the relief would not be contrary to the public interest." Pub. L. No. 90-618, § 102, 82 Stat. at 1225. In 1986, Congress expanded that relief-from-disabilities program to cover any person whom the Gun Control Act "prohibited from possessing, shipping, transporting, or receiving firearms." Firearms Owners' Protection Act, Pub. L. No. 99-308, § 105(1)(A), 100 Stat. 449, 459 (1986) (codified as amended at 18 U.S.C. § 925(c)). As relevant here, the federal program for "relief from the disabilities imposed by Federal [firearms] laws," 18 U.S.C. § 925(c), was in effect from 1986 until 1992, when Congress suspended its funding through an appropriations restriction on the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), which administered the program. *See* Treasury, Postal Service, and General Government Appropriations Act, 1993, Pub. L. No. 102-393, tit. I, 106 Stat. 1729, 1732 (1992); *United States v. Bean*, 537 U.S. 71, 74-75 (2002).

Congress subsequently found deficiencies in the reporting of information to the National

Instant Criminal Background Check System (NICS) that made it possible for individuals with documented mental health problems to purchase and misuse firearms notwithstanding 18 U.S.C. § 922(d)(4) and (g)(4). It accordingly enacted the NICS Improvement Amendments Act of 2007, Pub. L. No. 110-180, 121 Stat. 2559 (2008). The Act, *inter alia*, authorizes federal grants to assist States to improve the quality of information they make available to the databases searched by NICS. *Id.* § 103(b)(1), 121 Stat. at 2567. To be eligible for such a grant, a State must certify to ATF that it has implemented a program under which persons who "pursuant to State law" have been adjudicated mentally defective or committed to a mental institution may "apply to the State for relief from the disabilities imposed by [18 U.S.C. § 922(d)(4) and (g)(4)]." *Id.* § 103(c), 121 Stat. at 2568; *id.* § 105(a), 121 Stat. at 2569. At present, approximately thirty States—though not California—have created qualifying programs.

## III. FACTUAL BACKGROUND

In 2002, Plaintiff was committed to Oakcrest, a mental health treatment facility, on a psychiatric hold. *See* Cal. Welf. & Inst. Code § 5250; Complaint at ¶ 25 (Dkt. No. 1). He remained there for sixteen days. Complaint at ¶ 26. Plaintiff's commitment to Oakcrest was pursuant to a "5250 certification," (Complaint at ¶ 25) which specifically applies to people who have "not been willing or able to accept, treatment on a voluntary basis" and thus constitutes an involuntary commitment under California law. Cal. Welf. & Inst. Code § 5250(c). Additionally, 5250 commitments are designed for people who are "a danger to others, or to himself or herself, or gravely disabled." Cal. Welf. & Inst. Code § 5250(a). Plaintiff admits that he was committed pursuant to a section 5250 involuntary commitment, and also admits that he did not seek judicial review of the 5250 certification, which he was entitled to do under California law (Cal. Welf. & Inst. Code § 5275, et seq.), in order to challenge his commitment. Complaint at ¶ 25

In 2016, Plaintiff submitted a Personal Firearms Eligibility Check ("PFEC") which was denied, presumably as a result of Plaintiff's prior involuntary psychiatric commitment.[3] *Id.* at ¶ 30. Plaintiff does

---

[3] Plaintiff's PFEC notification was silent as to the reason for his denial; Plaintiff alleges he is unaware of any other

1  not deny that he was subject to an involuntary psychiatric hold, but does allege that he initially sought

2  treatment at another hospital voluntarily before he was committed to Oakcrest. *Id.* at ¶¶ 24-26, 45.

3  **IV.    LEGAL STANDARD**

4         One of the principal purposes of summary judgment is to identify and dispose of factually

5  unsupported claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Summary judgment is

6  appropriate when the moving party "shows that there is no genuine dispute as to any material fact and

7  the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute is "genuine"

8  only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party.

9  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-249 (1986).  A fact is "material" if it might affect

10  the outcome of the case.  *Id.* at 248.  In considering a motion for summary judgment, the court must

11  view the evidence in the light most favorable to the non-moving party.  *Davis v. United States*, 854 F.3d

12  594, 598 (9th Cir. 2017).

13         The party moving for summary judgment has no burden to produce any evidence on elements of

14  a claim on which the non-moving party will bear the burden at trial, but can merely point out an absence

15  of evidence to support any such element. *Celotex*, 477 U.S. at 322-23; *Maffei v. Northern Ins. Co. of*

16  *New York*, 12 F.3d 892, 899 (9th Cir. 1993).  Once the moving party does so, the non-moving party must

17  present specific evidence to show there is a genuine issue for trial. *Celotex*, 477 U.S. at 323.  If the non-

18  moving party fails to make this showing, the moving party is entitled to judgment as a matter of law.

19  *Celotex*, 477 U.S. at 323.  Summary judgment is also proper if the non-moving party fails to produce

20  sufficient evidence on any element of her case.  *Id.* at 322.  The bare existence of a "scintilla" of

21  evidence in support of the non-moving party's position is not sufficient; the non-moving party must

22  offer sufficient evidence on which a finder of fact could reasonably find for him. *Anderson*, 477 U.S. at

23  252; *FTC v. Publ'g Clearinghouse, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997) ("A conclusory, self-

24  serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine

25

26  ───────────────────
    possible basis for the denial besides his psychiatric hold.  Complaint at ¶ 30; Exhibit 1.

27  FEDERAL DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; [PROPOSED]
    ORDER

28  C-19-CV-4613 WHA

                                           7

issue of material fact."). The mere suggestion that facts are in controversy, in combination with conclusory or speculative testimony in affidavits and moving papers, is not sufficient to defeat summary judgment. *See Martinez v. Marin Sanitary Serv.*, 349 F. Supp. 2d 1234, 1243 (N.D. Cal. 2004).

## V.    ARGUMENT

### A.    Plaintiff's Second Amendment Claim Is Foreclosed By The Ninth Circuit's Decision in *Mai*

The Ninth Circuit's decision in *Mai*, which was pending at the time of Federal Defendants' motion to dismiss, is dispositive of Plaintiff's Second Amendment claim. Like Plaintiff Stokes, Plaintiff Mai was subject to an involuntary commitment many years ago (1999) at a young age (17). *Mai*, 952 F.3d at 1110. Like Plaintiff Stokes, Plaintiff Mai alleged that he did not suffer from any lingering mental illness, and has since led a socially-responsible life. *Id.* Moreover, as here, there were no federal avenues for relief for Mai's section 922(g)(4) bar from possessing a firearm. *Id.* at 1110-1111.

The Ninth Circuit held that, under the applicable intermediate scrutiny standard, the prohibition on the possession of firearms by persons who had been involuntarily committed was "a reasonable fit with the government's indisputably important interest in preventing gun violence." *Id.* at 1109. In addition, "scientific evidence supports the congressional judgment that those who have been committed involuntarily to a mental institution still pose an increased risk of violence even years after their release from commitment." *Id.* As a result, section 922(g)(4)'s continued application to people: 1) years after their commitment; 2) in the absence of an avenue for relief from the ban; and 3) in situations where the Court had "no reason to doubt" that the person in question was no longer mentally ill, withstands Second Amendment scrutiny. *Id.* at 1118-1121. Based on the reasoning of the *Mai* Court, Federal Defendants are entitled to summary judgment.

### B.    Plaintiff Cannot State A Legally Cognizable Second Amendment Claim

Plaintiff's first cause of action alleges that section 922(g)(4) of the Federal Gun Control Act, as applied to him, violates the Second Amendment. Complaint at ¶ 42. Plaintiff is incorrect, and Federal Defendants are entitled to summary judgment on this claim.

Second Amendment rights are not unlimited. In *District of Columbia v. Heller*, 554 U.S. 570, 635 (2008), after determining that the Second Amendment conferred an individual right to keep and bear arms, 554 U.S. at 595, the Supreme Court nonetheless recognized that, "[l]ike most rights, the right secured by the Second Amendment is not unlimited." The *Heller* Court expressly provided a non-exhaustive list of "presumptively lawful regulatory measures," including "longstanding prohibitions on the possession of firearms by felons and the mentally ill." *Id.* at 626-27, 627 n. 26. The Court explained that "nothing in [its] opinion should be taken to cast doubt on" such measures, *id.* at 626, and "repeat[ed] those assurances" in *McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010) (plurality opinion).

Post-*Heller*, the Ninth Circuit has, like numerous other circuits, applied a two-step inquiry to Second Amendment issues. *See Mai,* 952 F.3d at 1113; *Jackson v. City & Cty. Of San Francisco*, 746 F.3d 953, 960 (9th Cir. 2014) (citing *United States v. Chovan*, 735 F.3d 1127, 1136-37 (9th Cir. 2013)); *United States v. Chester*, 628 F.3d 673, 680 (4th Cir. 2010); *United States v. Reese*, 627 F.3d 792, 800 (10th Cir. 2010); *United States v. Marzzeralla*, 614 F.3d 85, 89 (3d Cir. 2010). This two-step inquiry "(1) asks whether the challenged law burdens conduct protected by the Second Amendment and (2) if so, directs courts to apply an appropriate level of scrutiny." *Jackson*, 746 F.3d at 960 (citing *Chovan*, 735 F.3d at 1126). Applying this standard here, as required by the Ninth Circuit, *see Mai*, 925 F.3d at 1113, Plaintiff's Second Amendment claims against Federal Defendants must fail. First, as applied to Plaintiff, section 922(g)(4) does not affect rights within the scope of the Second Amendment's protection. Furthermore, even if such rights were affected, section 922(g)(4) as applied to Plaintiff passes muster under the level of constitutional scrutiny required by the Ninth Circuit's precedents.

### C. Plaintiff's Second Amendment Claim Involves Conduct That Falls Outside The Scope Of The Second Amendment

The Ninth Circuit has assumed, without deciding, that section 922(g)(4) burdens Second Amendment rights. *Mai*, 952 F.3d at 1115. As discussed *supra* and *infra*, Federal Defendants are entitled to summary judgment even if the section 922(g)(4) prohibition does fall within the scope of the

Second Amendment. Nonetheless, Federal Defendants continue to assert that Plaintiff's claim is not within the scope of the Second Amendment.

In determining whether a given regulation falls within the scope of the Second Amendment, the Ninth Circuit "ask[s] whether the regulation is one of the presumptively lawful regulatory measures identified in *Heller*, or whether the record includes persuasive historical evidence establishing that the regulation at issue imposes prohibitions that fall outside the historical scope of the Second Amendment." *Mai*, 952 F.3d at 1114; *see also United States v. Torres*, 911 F.3d 1253, 1258 (9th Cir. 2019) (*Heller*'s "non-exhaustive examples of presumptively lawful regulations . . . 'comport with the Second Amendment because they affect individuals or conduct unprotected by the right to keep and bear arms.'") (quoting *Binderup v. Attorney Gen. U.S.*, 836 F. 3d 336, 343 (3d Cir. 2016) (en banc)). For example, in *United States v. Vongxay*, 594 F.3d 1111 (9th Cir. 2010), the Ninth Circuit held that section 922(g)(1) did not violate the Second Amendment because the restriction on possession of firearms by felons was a "presumptively lawful" regulation listed in *Heller*, and because "felons are categorically different from the individuals who have a fundamental right to bear arms." *Id*. at 1115 (emphasis omitted); *see also United States v. Rozier*, 598 F.3d 768, 771 (11th Cir. 2010) (per curiam) (finding that *Heller* "suggests that statutes disqualifying felons from possessing a firearm under any and all circumstances do not offend the Second Amendment.").

The Supreme Court's inclusion of firearm prohibitions based on mental illness in its list of "presumptively lawful regulatory measures," *Heller*, 554 U.S. at 626-27 n. 26, reflects the historical record, which makes clear that "the right of law-abiding, responsible citizens" to possess firearms, *id*. at 635, does not extend to individuals who have been "committed to a mental institution," 18 U.S.C. § 922(g)(4). In the American colonies, for example, disarmament of dangerous individuals was considered consistent with the right to bear arms. *See Vongxay*, 594 F3dat 1118. "[M]ost scholars of the Second Amendment agree that the right to bear arms was tied to the concept of a virtuous citizenry," which did not include individuals with a history of mental illness. *United States v. Yancey*, 621 F.3d 681, 684-85 (7th Cir. 2010) (per curiam); *United States v. Emerson*, 270 F.3d 203, 226 n.21 (5th Cir. 2001)

(noting that "those of unsound mind" were historically prohibited from firearm possession). As such, Federal Defendants submit that Plaintiff's claim here involves conduct that does not fall within the scope of the Second Amendment.

### D. Section 922(g)(4) Is Consistent With Plaintiff's Constitutional Rights Because It Satisfies The Applicable Level Of Scrutiny

Because section 922(g)(4) does not violate the Second Amendment right as originally understood, and as explicated in *Heller*, this Court need go no further to reject Plaintiff's Second Amendment claim against Federal Defendants. If, however, this Court holds that application of the challenged law implicates Second Amendment rights, then—under this Circuit's precedent—the Court proceeds to means-end scrutiny of the law. *See Mai*, 952 F.3d at 1115. Application of section 922(g)(4) to Plaintiff satisfies the intermediate scrutiny the Ninth Circuit applies in this context. *See id.* (applying intermediate scrutiny and upholding constitutionality of section 922(g)(4)); *Silvester v. Harris*, 843 F.3d 816, 823 (9th Cir. 2013) (observing that Ninth Circuit precedent "clearly favors the application of intermediate scrutiny in evaluating the constitutionality of firearms regulations, so long as the regulation burdens to some extent conduct protected by the Second Amendment").

#### 1. Section 922(g)(4) Substantially Relates To The Important Governmental Interest Of Preventing Firearm Violence, Including Suicide, and Protecting Public Safety

To satisfy intermediate scrutiny, "a statutory classification must be substantially related to an important government objective." *Clark v. Jeter*, 486 U.S. 456, 461 (1988). "A statute need not utilize the least restrictive means of achieving this interest in order to withstand intermediate scrutiny." *Torres*, 911 F.3d at 1263 (internal quotation marks omitted). Section 922(g)(4), as applied to Plaintiff, clearly meets that standard.

##### (a) Section 922(g)(4) Serves Important And Compelling Government Interests

"[T]wo important interests support § 922(g)(4)'s ban on the possession of firearms by those who were involuntarily committed to a mental institution: preventing crime and preventing suicide." *Mai*, 952 F.3d at 1116. A primary governmental objective underlying section 922(g)(4) is to protect the

public from "armed mayhem" in the form of firearms violence, and thereby to preserve peace and public safety. *United States v. Skoien*, 614 F.3d 638, 642 (7th Cir. 2010). Protecting public safety and combating crime are well-established compelling governmental interests. *United States v. Salerno*, 481 U.S. 739, 748 (1987) (noting that the Supreme Court has "repeatedly held that the Government's regulatory interest in community safety can, in appropriate circumstances, outweigh an individual's liberty interest"); *Schall v. Abrams*, 467 U.S. 253, 264 (1984) ("The legitimate and compelling state interest in protecting the community from crime cannot be doubted.") (citation omitted)).

Congress enacted section 922(g)(4) following a multi-year inquiry into violent crime that revealed a "serious problem of firearms misuse in the United States." S. Rep. No. 89-1866, at 3, 53. Among other things, Congress's investigation of firearm-related killings also revealed that firearms "were the agency of death" in over half of all suicides. S. Rep. No. 88-1340, at 3. The evidence before Congress showed that "[i]n 1966, 6,855 Americans were murdered by gun[] [whereas] 10,407 suicides and 2,600 fatal accidents involved firearms." 114 Cong. Rec. 21,774 (statement of Rep. Rosenthal), and that "[i]n the last decade, 92,747 Americans took their own lives with a firearm, reflecting the fact that the surest and easiest way to commit suicide is with a gun." *Id.* at 21,811 (statement of Rep. Schwengel).

To address these problems, Congress undertook "to regulate more effectively interstate commerce in firearms so as to reduce the likelihood that they fall into the hands of the lawless or those who might misuse them." S. Rep. No. 8901866, at 1; *see also* Cong. Rec. 13,219 (statement of Sen. Tydings) ("Within the context of Federal control of traffic in firearms, States and localities can move effectively to keep these lethal weapons out of the hands of criminals, drug addicts, mentally disordered persons, juveniles, and other persons whose possession of them is too high a price in danger to us all to allow."). Congress sought to "cut down or eliminate firearms deaths caused by persons who are not criminals, but who commit sudden unpremeditated crimes with firearms as a result of mental disturbances." 114 Cong. Rec. 21,829 (statement of Rep. Bingham).

To that end, Congress enacted statutory provisions addressed to "individuals who by their previous conduct or mental condition or irresponsibility have shown themselves incapable of handling a

dangerous weapon in the midst of an open society," 114 Cong. Rec. 21,809-10 (statement of Rep. Tenzer), such as "persons with a history of mental disturbances." *Id.* at 21,784 (statement of Rep. Celler). These provisions include section 922(g)(4), which makes unlawful for any person "who has been committed to a mental institution . . . . to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." In sum, the government's interest "in protecting the community from crime" is "legitimate and compelling." *Schall*, 467 U.S. at 264, as is its interest in preventing suicide. *See Washington v. Glucksberg*, 521 U.S. 702, 735 (1997) (recognizing the government's interest in suicide prevention as "unquestionably important and legitimate"); *Mai*, 952 F.3d at 1120.

### (b)    Section 922(g)(4) Substantially Relates To Protecting Public Safety

A substantial relationship exists between protecting public safety (*e.g.* by preventing violent crime and suicide) and prohibiting firearms possession by persons, such as Plaintiff, who have been involuntarily committed based on a finding that mental illness creates a reasonable expectation of danger to himself or others. *See* Cal. Welf. & Inst. Code § 5250(a).

Congress' decision to adopt a prophylactic prohibition against the "presumptively risky" category of individuals who have been involuntarily committed was a justifiable response to the problem of firearms violence that it sought to address. "When reviewing the constitutionality of statutes [under intermediate scrutiny], courts 'accord substantial deference to the legislature's predictive judgments.'" *Drake v. Filko*, 724 F.3d 426, 436-37 (3d Cir. 2013) (quoting *Turner Broad Sys., Inc. v. FCC*, 520 U.S. 180, 195 (1997)). Moreover, even if the historical understanding – that persons with a demonstrated history of mental illness are not guaranteed the right to possess firearms under the Second Amendment – were not dispositive of this case, that historical record would counsel in favor of affording Congress the room, in the context of the mentally infirm, "to make sensitive public policy judgments (within constitutional limits) concerning the dangers in carrying firearms and the manner to combat those risks." *Kachalsky v. Cty. of Westchester*, 701 F.3d 81, 97 (2d Cir. 2012) (quoting *Turner Broad. Sys*, 512 U.S.

at 665); *Skoien*, 614 F3d at 641 (noting that "Congress is not limited to case-by-case exclusions of persons who have been shown to be untrustworthy with weapons" and that "some categorical disqualifications are permissible").

The Supreme Court has "recognized and given weight" to Congress's "broad prophylactic purpose" in enacting the restrictions on firearms possession in 18 U.S.C. § 922(g). *Dickerson v. New Banner Inst., Inc.*, 460 U.S. 103, 118 (1983). Congress sought to limit firearm availability "to those whose possession thereof was contrary to the public interest." *Huddleston v. United States*. 415 U.S. 814, 824 (1974). The legislative "intent in enacting []§ 922(g) . . . was to keep firearms out of the hands of presumptively risky people." *Dickerson*, 460 U.S. at 112 n.6; *see Barrett v. United States*, 423 U.S. 212, 220 (1976) (citing legislative history reflecting a concern with "keeping firearms out of the hands of categories of potentially irresponsible persons").

Consistent with the intent to keep firearms out of the hands of presumptively risky persons, section 922(g) is not limited to persons who have already committed dangerous or violent acts. In the case of section 922(g)(4), Congress relied on a history of involuntary commitment or adjudicated mental illness as the basis for the firearm prohibition. *See* 114 Cong. Rec. 14,733 (1968) (Sen. Long) (stating that mentally ill individuals, "by their actions, have demonstrated that they are dangerous, or that they *may become dangerous*" (emphasis added)). In enacting section 922(g)(4), Congress certainly was aware that "a person committed to a mental institution later may be deemed cured and released"; nevertheless, "[t]he past . . . commitment disqualifies. Congress obviously felt that such a person [who had previously been committed to a mental institution], though unfortunate, was too much of a risk to be allowed firearms privileges." *Dickerson*, 460 U.S. at 116.

Congress acted logically in relying on the above criteria as relevant indicia of a future risk of violence, rather than attempting to craft a regime mandating individualized predictions of future violence. Such individualized predictions would impose extraordinarily difficult, if not impossible, burdens on government officials and likely would be no more than a guess. And Congress was entitled to adopt a statutory scheme that relied instead on objective, historical data. *See Weinberger v. Salfi*, 422

U.S. 749, 751 (1975) ("Congress . . . could rationally have concluded . . . that the expense and other difficulties of individual determinations justified the inherent imprecision of an objective, easily administered prophylactic rule."). Moreover, the Supreme Court has recognized the inherent difficulty in making such "free floating" and particularized assessments of dangerousness. *See Estelle v. Smith*, 451 U.S. 454, 472 (1981).

"[I]n enacting § 922(g)(4), Congress determined that, like felons and domestic-violence assailants, those who have been involuntarily committed to a mental institution also pose an increased risk of violence." *Mai*, 952 F.3d at 1117. Congress appropriately determined that persons who have previously been involuntarily committed pose an unacceptable risk of misusing firearms because they are susceptible to future episodes of mental illness. Indeed, the Gun Control Act "is designed to prohibit the ownership of firearms not only by individuals who have already committed dangerous acts, but also by those with a potential for violence." *United States v. Waters*, 23 F.3d 29, 34 (2d Cir. 1994). To achieve that purpose, Congress reasonably relied not on actual evidence of future dangerousness but on past commitment or adjudication of mental illness. It has no bearing that, under this framework, some individuals to whom section 922(g)(4) is applicable may not engage in, or even contemplate, gun violence. Congress has chosen to err on the side of caution, and it was entitled to conclude that such caution is warranted where to do otherwise "could have devastating consequences for innocent citizens." H.R. Rep. No. 102-618, at 14 (1992). This clearly satisfies intermediate scrutiny, which requires only that the degree of fit between the challenged law and the governmental interest it serves be "reasonable," not perfect. *Drake*, 724 F.3d at 436.

Beyond the legislative history, empirical evidence "shows an increased risk of violence for those who have been released from involuntary commitment", *Mai,* 952 F.3d at 1117, and further demonstrates that Congress acted reasonably in determining that persons who have been involuntarily committed pose an enhanced risk of violence.[4] Research suggests that persons who suffer from

---

[4] Federal Defendants have no additional obligation to produce concrete evidence in support of Congress' legislative judgment, and the Court need not consider such evidence to analyze section 922(g)(4) as it applies to Plaintiff. *See Fla. Bar. v. Went For It, Inc.*, 515 U.S. 618, 628 (1995) (noting that even under strict scrutiny, some restrictions on speech can be

significant mental illness pose an increased risk of harm to themselves or others. *See* Seena Fazel & Martin Grann, *The Population Impact of Severe Mental Illness on Violent Crime*, 163 Am. J. Psychiatry 1397, 1401 (2006) (reporting increased risk "in patients with severe mental illness compared with the general population") (cited in *Mai*, 952 F.3d at 1117). A National Institute of Mental Health ("NIMH") study showed that patients with serious mental illness "were two to three times as likely as people without such illness to be assaultive. In absolute terms, the lifetime prevalence of violence among people with serious mental illness was 16% . . . compared with 7% among people without mental illness." Richard A. Friedman, *Violence and Mental Illness – How Strong Is The Link*, 355 New Eng. J. Med. 2064, 2065 (2006).

Persons with mental illness also have a significantly increased risk of suicide. The NIMH reports that over 90 percent of persons who commit suicide have a mental disorder, a substance-abuse disorder, or both. NIMH, *Suicide in the U.S.: Statistics and Prevention*.[5] The suicide rate for persons with active psychiatric disorders is 7 to 10 times the rate for the general population. *See* Bryan L. Tanney*, Psychiatric Diagnoses and Suicidal Acts*, in Ronald W. Maris *et al.*, *Comprehensive Textbook of Suicidology* 340 (2000). Consistently, a high suicide rate exists among persons who have been previously committed. *See* Virginia A. Hiday, *Civil Commitment: A Review of Empirical Research*, 6 Bhev. Sci & L. 15, 25 (1988) (among 189 patients who entered the commitment process, 10 had committed suicide within 19 months). And, not surprisingly, firearms are much more likely to cause injury or death than other available weapons, such as knives. As one commentator has noted, "[a] suicide attempt with a firearm rarely affords a second chance," while "[a]ttempts involving drugs or cutting, which account for more than 90% of all suicidal acts, prove fatal far less often." Matthew Miller & David Hemenway, *Guns and Suicide in the United States*, 359 New. Eng. J. Med. 989, 990 (2008).

Because there are an estimated 12 to 25 attempted suicides for every suicide death, the inference

---

upheld "based solely on history, consensus, and 'simple common sense.'"). Such evidence is nonetheless provided here to the extent that it is helpful for the Court's analysis. *See, e.g. United States v. Staten*, 666 F.3d 154, 163-67 (4th Cir. 2011) (relying on empirical data in conducting Second Amendment means-end analysis); *Skoien*, 614 F.3d at 643-44 (same).

[5] http://adhdclinic.com/health_topics/suicide_prevention/suicide-in-the-us.html

is strong that removing firearms from the hands of mentally ill persons can save lives. *See* Joseph R.

Simpson, *Bad Risk? An Overview of Laws Prohibiting Possession of Firearms by Individuals With a*

*History of Treatment for Mental Illness*, 35 J. Am. Acad. Psychiatry Law 330, 338 (2007) (concluding

that individuals with psychiatric diagnoses may be at a higher risk of suicide if there are firearms in their

households); Mark A. Ilgen *et al.*, *Mental Illness, Pervious Suicidality, and Access to Gins in the United*

*States*, 59 Psychiatric Servs. 198, 198-200 (2008) (explaining that restricting access to lethal means is

one of only two suicide interventions with reasonable empirical support). Additional examination of

suicide method data revealed that:

> [h]aving a gun in the home was a strong risk factor for gun-related suicide
> . . . but was inversely related to committing suicide with a non-firearm
> method . . . That is, persons with a gun in the home were more likely than
> others to use a gun to commit suicide and less likely than others to commit
> suicide by means of drug overdose, hanging, or other method. . . .

Douglas J. Wiebe, *Homicide and Suicide Risks Associated With Firearms in the Home: A National*

*Case-Control Study,* 41 Annals Emergency Med. 771, 777 (2003).

For all of these reasons, the fact of Plaintiff's involuntary commitment to a mental institution

under a provision providing that he was "a danger to others, or to himself or herself, or gravely disabled"

(Cal. Welf. & Inst. Code § 5250(a)), defeats any claim that section 922(g)(4) is not substantially related

to preventing future violent crime or suicide. This outcome reflects Congress and the nation's long-

established judgment that such a person is "too much of a risk to be allowed firearms privileges."

*Dickerson*, 460 U.S. at 116. Even were this Court to conclude that Plaintiff can now possess firearms

without the risk of danger, it would not affect the requisite fit between section 922(g)(4) and Congress'

objectives. As the Fourth Circuit recognized when rejecting an as-applied Second Amendment challenge

to the analogous 18 U.S.C. § 922(g)(8) restriction, which prohibits gun possession from those subject to

a domestic violence protective order: "the prohibitory net cast by [the statute] may be somewhat over-

inclusive given that not every person who falls within it would misuse a firearm . . . if permitted to

possess one," but "[t]his point does not undermine the [statute's] constitutionality . . . because it merely

suggests that the fit is not a perfect one; a reasonable fit is all that is required under intermediate

scrutiny." *United States v. Chapman*, 666 F.3d 220, 231 (4th Cir. 2012) (citations omitted).

## 2. Section 922(g)(4) Is Constitutional As Applied To Plaintiff

As discussed *supra*, the Ninth Circuit has recently rejected a Second Amendment as applied challenge to section 922(g)(4)'s prohibition on firearm possession by a plaintiff who had been involuntarily committed to a mental institution. *Mai*, 952 F.3d at 1111-1119. Two other courts of appeals have come to the same conclusion in unpublished opinions. *See Heller v. Bedford Cent. Sch. Dist.* 665 F. App'x 49, 54 (2d Cir. 2016); *United States v. McRobie*, No. 08-4632 WL 82715 (4th Cir. Jan. 14 2009) (per curiam).

Despite this authority, Plaintiff argues that, because he does not have a forum to demonstrate current fitness to possess firearms, section 922(g)(4) is unconstitutional as applied to him.[6] Complaint at ¶ 45. Such an argument was squarely addressed and rejected by the Ninth Circuit in *Mai*, where the plaintiff also did not have an avenue for relief from the prohibition under federal law. 952 F.3d at 1111, 1120-1121. As the Court held, even in the absence of an avenue of relief from a categorical, lifetime ban, "§ 922(g)(4) nevertheless remains a reasonable fit for the congressional goal of reducing gun violence." *Id.* at 1120. The governmental interests of preventing violence, including suicide, that impacts an individual, families, and community, are powerful and compelling. *Id.* In addition, the evidence of increased risk of suicides from those released from involuntary commitment (about 39 times the risk of those not previously committed), is significant. *Id.*

Indeed, there does not appear to be any caselaw within this Circuit in which a court, in determining whether *any* section 922(g) prohibition was constitutional, considered the dangerousness of an individual following a prohibiting event. *See, e.g., Vongxay*, 594 F.3d at 1118 (felony conviction); *United States v. Chovan*, 735 F.3d 1127, 1141 (9th Cir. 2013) (domestic violence misdemeanor conviction) (upholding section 922(g)(9) against as-applied Second Amendment challenge and rejecting the plaintiff's argument that "§ 922(g)(9) is unconstitutional as applied . . . because his 1996 domestic

---

[6] For the purposes of the Motion only, Federal Defendants assume that Plaintiff's assertions that he is currently mentally fit are correct. (Complaint at ¶ 29).

violence conviction occurred fifteen years before his § 922(g)(9) conviction, he is unlikely to recidivate, and he has in fact been law-abiding for those fifteen years"). As such, even where, as here, a plaintiff is unable to challenge his section 922(g)(4) prohibition under federal law, "the prohibition on those who have been involuntarily committed to a mental institution is a reasonable fit for the important goal of reducing gun violence." *Mai*, 952 F.3d at 1121.

Federal Defendants recognize that Plaintiff asserts that he is currently "mentally fit and not a danger to himself or others." Complaint at ¶ 29. As the Ninth Circuit held, however, the Second Amendment inquiry requires an assessment of "congressional judgment about a category of person, not about Plaintiff himself." *Mai*, 952 F.3d at 1119. "[T]he Second Amendment does not demand an individualized hearing to assess Plaintiff's own personal level of risk." *Id.* (internal citations and quotations omitted). There is plainly a substantial fit between the compelling government interests of preventing firearms violence, including suicide, and protecting public safety, and Congress' choice to address the problem of gun violence through a prohibition on firearm possession by individuals who have suffered from such severe mental illness that they were committed to a mental institution. As such, Federal Defendants are entitled to summary judgment on Plaintiff's Second Amendment claims.

### E. Plaintiff's Due Process And Equal Protection Claims Are Without Merit

In his second cause of action, Plaintiff argues that his due process and equal protection rights have been violated. First, Plaintiff maintains that the "ban on a certain class of individuals – those who have been involuntarily committed – from acquiring a firearm without providing for a means to seek review and relief from such ban violates Plaintiff's right to equal protection of the laws guaranteed under the Due Process Clause of the Fifth Amendment." Complaint at ¶ 50. Second, Plaintiff alleges that he "has been deprived of his Second Amendment right to keep and bear firearms without being afforded notice and an opportunity to be heard on the matter prior to the deprivation and/or through a post-deprivation proceeding to seek review and relief from the deprivation." Complaint at ¶ 51. Because Plaintiff's due process and equal protection claims are without merit, Federal Defendants are entitled to summary judgment on these claims.

First, to the extent Plaintiff is seeking to attack his previous commitment in this proceeding on due process grounds, it is well established that a federal proceeding is an improper venue to attack a section 922(g) disqualifying event. *Heller* does not entitle a plaintiff "to a collateral attack in federal court on a commitment he did not – and has not in any way – challenged in the state court." *United States v. McIlwain*, 772 F.3d 688, 698 (11th Cir. 2014). Here, Plaintiff admits that he did not avail himself of the judicial review procedures available under California law (Cal. Welf. & Inst. Code § 5275, et seq.) to challenge his commitment. Complaint at § 25. As such, he may not challenge that procedure here. *See also United States v. Leuschen*, 395 F.3d 155, 158-59 (3d Cir. 2005) (holding that because section 922(g)(1) is triggered by the fact rather than the validity of a felony conviction, a defendant "cannot collaterally attack his predicate conviction in defense of his prosecution under § 922(g)(1)"); *United States v. Reese*, 627 F.3d 792, 804-05 (10th Cir. 2010) (collecting cases for the proposition that "a defendant may not challenge the validity of the underlying state court protective order in a § 922(g)(8) prosecution").

Second, because Plaintiff cannot show that his Second Amendment rights have been violated, he cannot assert a due process claim premised on the deprivation of those substantive rights. Plaintiff's argument that section 922(g)(4) deprives him of firearm rights without due process has repeatedly been dismissed by federal courts. As the Ninth Circuit has stated, "although the right to keep and bear arms for self-defense is a fundamental right, that right is more appropriately analyzed under the Second Amendment." *Nordyke v. King*, 644 F.3d 776, 794 (9th Cir. 2011) (internal citation omitted), vacated by 681 F.3d 1041 (9th Cir. 2012) (en banc) (affirming the district court's decision to dismiss the Second Amendment claim). In *Nordyke*, the Ninth Circuit referred to the Supreme Court's opinion in *Albright v. Oliver*, which stated, "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor*, 480 U.S. 386, 395 (1989)). Similarly, the Sixth Circuit has specifically declined to consider claims that "conflate the enumerated Second Amendment

right with Equal Protection and Due Process protections under the Fifth Amendment." *United States v. Carey*, 602 F.3d 738, 741 n.2 (6th Cir. 2010) (reviewing appellant's Second Amendment argument but refusing to consider his more general due process and equal protection claims); *see also Keyes v. Lynch*, 195 F. Supp. 3d 702, 723 (M.D. Pa. 2016); *Bell v. United States*, No. 13-5533, 2013 WL 5763219, at *3 (E.D. Pa. Oct. 24, 2013), *aff'd*, 574 F.App'x 59 (3d Cir. 2014).

In *Bell*, the Third Circuit rejected a procedural due process challenge to 18 U.S.C. § 922(g)(1), which prohibits firearms possession by felons. In so doing, it "conclude[d], for the reasons stated by the District Court, that [the plaintiff]'s procedural due process claim . . . [is] without merit." *Bell*, 574 F. App'x at 61. The plaintiff had claimed that section 922(g)(1) violated due process because the statute had allegedly "deprive[d] [plaintiff] of the ability to possess a firearm without providing him a hearing to determine his future dangerousness." *Bell*, 2013 WL 5763219, at *3 (citation omitted). As the Court explained, "[t]he plain language of [that statute] makes clear Congress' decision to bar all convicted felons (not merely those with violent tendencies or who otherwise present an ongoing danger to society) from possessing firearms." *Id.* (quoting *Black v. Snow,* 272 F. Supp. 2d 21, 34 (D.D.C. 2003), *aff'd,* 110 F. App'x 130 (D.C. Cir. 2004)). Consequently, the plaintiff's procedural due process claim failed because "due process does not entitle [a felon] to a hearing to determine whether he is currently dangerous because the result of such a hearing would have no bearing on whether he is subject to the disability imposed by § 922(g)(1)." *Id.* (quoting *Black*, 272 F. Supp. 2d at 35).

Because the same is true with respect to section 922(g)(4), the same result follows. *See Keyes v. Lynch*, 195 F. Supp. 3d 702, 723 (M.D. Pa. 2016) (applying logic of *Bell* to reject the plaintiff's "contention that he deserved some kind of hearing before or after being subjected to the disability under § 922(g)(4)"). In enacting section 922(g)(4), Congress was aware that "a person committed to a mental institution later may be deemed cured and released[;]" nevertheless, "[t]he past commitment disqualifies. Congress obviously felt that such a person [who had previously been adjudicated as a mental defective or committed to a mental institution], though unfortunate, was too much of a risk to be allowed firearms privileges." *Dickerson*, 460 U.S. at 116-17. As a result, due process principles do not require that

Plaintiff be "afforded notice and an opportunity to be heard on the matter prior to the deprivation and/or through a post-deprivation proceeding to seek review and relief from the deprivation." Complaint at ¶ 51. The only matter relevant to section 922(g)(4) is whether Plaintiff was previously committed to a mental institution, and it is undisputed that he was. *See Conn. Dep't. of Pub. Safety v. Doe*, 538 U.S. 1, 4 (2003) (finding that "due process does not require an opportunity to prove a fact that is not material to the State's statutory scheme."); *Black*, 272 F. Supp. 2d at 35 (applying *Doe* and concluding that "due process does not entitle plaintiff to a hearing to determine whether he is currently dangerous because the result of such a hearing would have no bearing on whether he subject to the disability imposed by § 922(g)(1)"). Here, Plaintiff concedes, as he must, that he has been involuntarily committed. Complaint at ¶¶ 25, 50. Consequently, his Fifth Amendment due process claims must fail.

Finally, Federal Defendants are entitled to summary judgment regarding Plaintiff's claim for violation of his equal protection rights under the Fifth Amendment. As discussed *supra,* claims that "conflate the enumerated Second Amendment right with Equal Protection and Due Process protections under the Fifth Amendment" should not be considered. *Carey*, 602 F.3d 738 at 741 n.2 (reviewing appellant's Second Amendment argument but refusing to consider his more general due process and equal protection claims). Furthermore, Plaintiff has not alleged he is a member of any suspect class, but rather a member of a class of individuals who have been involuntarily committed. Complaint at ¶ 50. The Supreme Court has consistently applied rational basis review to cases involving persons who are mentally retarded or who suffer from mental illness. *See Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432 (1985); *Schweiker v. Wilson*, 450 U.S. 221 (1981); *Heller v. Doe by Doe*, 509 U.S. 312 (1993). Under this standard of review, "a classification must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Id.* at 320 (internal quotations and citations omitted). Here, this standard is easily met. The discussion, *supra* Sec. V. D., detailing the important governmental interests served by prohibiting firearms possession by individuals who have been involuntarily committed, demonstrates that section 922(g)(4) undoubtedly survives rational basis review.

**CONCLUSION**

For the foregoing reasons, Federal Defendants should be granted summary judgment on all of Plaintiff's claims.

Respectfully submitted,

DATED: September 10, 2020        DAVID L. ANDERSON
                                United States Attorney

                                By:    /s/ Julie Bibb Davis
                                JULIE BIBB DAVIS
                                Assistant United States Attorney
                                Attorneys for Federal Defendants

**[PROPOSED] ORDER**

For good cause shown, and pursuant to Federal Rule of Civil Procedure 56(a), Federal Defendants' motion for summary judgement is GRANTED.

IT IS SO ORDERED.

Date: _____, 2020

                                _____
                                HON. WILLIAM H. ALSUP
                                United States District Judge