Timothy Kelly, SBN 304840
1403 Spyglass Parkway
Vallejo, CA 94591
 (707) 570-7507

Attorney for Plaintiff

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DISTRICT

| | |
|---|---|
| EASTON STOKES | Case No.: C-19-cv-4613 WHA |
| Plaintiff, | |
| vs. | |
| UNITED STATES DEPARTMENT OF JUSTICE, et al. | **PLAINTIFF'S OPPOSITION TO FEDERAL DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| Defendants. | Judge: Hon. William Alsup<br>Date: October 22, 2020<br>Time: 8:00 a.m.<br>Location: Remote |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ………………………………………………………… 3

MEMORANDUM OF POINTS OF AUTHORITIES

    I.     INTRODUCTION:…………………………………………………………...4

    II.    FEDERAL STATUTE AND REGULATORY BACKGROUND: ………………4

    III.   FACTUAL BACKGROUND: ……………………………………………….5

    IV.   LEGAL STANDARD……………………………………………………….....6

    V.    ARGUMENT ………………………………………………………………...7
        A. Plaintiff's Second Amendment Claim is not foreclosed by *Mai*………………7

        B. The Plaintiff's claims fall within the protections of the
           2nd Amendment. ………………………………………………………………9

        C. Even if the court applies Intermediate Scrutiny to consider
           this issue, it should determine that 18 U.S.C. § 922(g)(4)
           is unconstitutional as applied to Mr. Stokes. …………………………………11

        D. Mr. Stokes has also been denied Due Process and Equal Protection…………..12

        E. State Defendant's Motion for Summary Judgment should be rejected ……….13

    VI.   CONCLUSION ……………………………………………………………14

**TABLE OF AUTHORITIES**

Cases                                                                                                         Page(s)

Beers v. Attorney General,
927 F.3d 150 (3rd Cir. 2019) ...............................................................................8

District of Columbia v. Heller,
554 U.S. 570 (2008). ......................................................................................9, 10

*Davis v. United States*,
854 F.3d 594, 598 (9th Cir. 2017). ...........................................................................7

Ex Parte Young, 29 U.S. 123 (1908) ……………………………………………..
*Mai v. United States*,
952 F.3d 1106 (2020) ...................................................................................7 - 12

*Poller v. Columbia Broad. Sys., Inc.*
368 U.S. 464, 467 (1962) ................................................................................ 6, 7

Tyler v. Hillsdale County Sheriff's Dep't, 837 F.3d 678 (6th Cir. 2016)……………….9, 10

*Va. Office for Prot. & Advocacy v. Stewart*,
 563 U.S. 247, 255 (2011) ……………………………………………………….. 13

*Verizon Md. Inc v. Public Serv. Comm'n of Md.*,
535 U.S. 635, 645 (2002)). ……………………………………………………..13

Rules

Federal Rule of Civil Procedure 56(a) ………………………………………………….. 6

Statutes

18 U.S.C. § 922(g)……………………………………………………………….4, 7, 9, 11, 12

Cal. Welf. & Inst. Code § 5250 ……………………………………………………….5, 6, 8, 11,12

43 U.S.C. section 40915 ………………………………………………………………. 12

Cal. Welf. & Inst. Code § 8104

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  INTRODUCTION:**

This case considers whether an individual who has a single brief episode of psychological distress should have their rights limited perpetually to the same extent as someone who is diagnosed as mentally ill, particularly where that individual voluntarily sought treatment and was never found by any court to be mentally ill and dangerous. This case also considers whether an individual's right to appeal and complete and total removal of their fundamental rights should hinge on the state where they live.

**II.  FEDERAL STATUTE AND REGULATORY BACKGROUND:**

Plaintiff generally acknowledges the federal statute and regulatory background listed by the defendants as accurate. The federal restrictions barring certain individuals from possessing firearms are set forth in 18 U.S.C. § 922(g). Under section 922(g)(4), an individual "who has been committed to a mental institution" may not possess a firearm. Specifically, section 922(g)(4) states:

> It shall be unlawful for any person . . . who has been adjudicated as a mental defective or who has been committed to a mental institution . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate commerce.

Id.1 Regulations issued by the ATF define these terms as follows:

> Adjudicated as a mental defective.
> (a) A determination by a court, board, commission, or other lawful authority that a person, as a result of marked subnormal intelligence, or mental illness, incompetency, condition, or disease;
> (1) Is a danger to himself or to other; or
> (2) Lacks the mental capacity to contract or manage his own affairs.
> (b) The term shall include –
> (1) A finding of insanity by a court in a criminal case; and

> (2) Those persons found incompetent to stand trial or found not guilty by reason of lack of mental responsibility pursuant to articles 50a and 72b of the Uniform Code of Military Justice, 10 U.S.C. § 850a, 876b. . . . . Committed to a mental institution. A formal commitment of a person to a mental institution by a court, board, commission, or other lawful authority. The term includes a commitment to a mental institution involuntarily. The term includes commitment for mental defectiveness or mental illness. It also includes commitments for other reasons, such as drug use. The term does not include a person in a mental institution for observation or a voluntary admission to a mental institution. 17 C.F.R. § 478.11.

The final line in this regulation deserves particular attention. The term *does not* include a person in a mental institution for observation or a voluntary admission to a mental institution. (Emphasis added.)

### III. FACTUAL BACKGROUND:

In the spring of 2002, Easton Stokes was 18 and a senior at High School. As was common in his peer group at that time, he would occasionally attend parties. After one of these parties, during which he had consumed alcohol and cannabis, Mr. Stokes felt psychologically unwell. Out of concern for himself and others. Mr. Stokes decided to check himself in to a mental institution for examination.

His entrance into this facility was voluntary as a factual matter. Mr. Stokes initially checked himself into Kaiser. Mr. Stokes was told by personnel that Kaiser decided to label him as "5150" so that they could transport him to the mental health facility for care. Mr. Stokes remained at the mental health facility voluntarily, and therefore did not challenge the 5250 certification that followed when he stayed past the initial 72 hour hold. Because Mr. Stokes was voluntarily seeking care, he did not seek any type of judicial review of the 5250 certification. Therefore, no court ever evaluated whether Mr. Stokes at the time in fact met the requirements for a 5250 commitment. Had a court in fact reviewed Mr. Stokes's case, it would have been difficult

for a judge to continue to hold Mr. Stokes pursuant to WIC Section 5250, as that section requires that the patient be not voluntarily seeking treatment.

Mr. Stokes stayed at the facility for a brief 16 days, undergoing observation and examination. At the end of this time, he was given a clean bill of health and dismissed. The incident was ruled a drug induced psychotic episode. He was given anti-psychotic medication that was quickly diminished over the next few months and then discontinued entirely. At no time before, during or after his visit to the institution did Mr. Stokes exhibit any violent actions or threats to himself or others. By all accounts he is, and always has been, a peaceful and well-grounded individual.

In the intervening 14 years, Mr. Stokes has not suffered any further mental issues of any sort. He has never returned to a facility. He is widely respected by his community, and considered to be intelligent, forthright, humorous and personable. A recent psychiatric examination confirmed the findings of previous examinations, that he is both physiologically and psychologically fit.

Mr. Stokes, like many United States citizens, would like to lawfully own a firearm in a safe and responsible manner. If Mr. Stokes lived in one of the 30 states that provided a forum for citizens to seek relief from the federal firearm disability he could have a judicial body review his fitness to possess firearms. However, Mr. Stokes has no such recourse in the State of California.

## IV. LEGAL STANDARD

Summary judgment is not a substitute for the trial of disputed fact issues. Pursuant to Federal Rule of Civil Procedure 56(a), summary judgement is only appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. Section 56; see *Poller v. Columbia Broad. Sys., Inc.* 368 U.S.

464, 467 (1962). "[T]he purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try." *Poller*, *supra*, at 467.

In considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party. *Davis v. United States*, 854 F.3d 594, 598 (9th Cir. 2017). "On summary judgment, the moving party bears the burden of establishing the basis for its motion and identifying evidence that demonstrates the absence of a genuine issue of material fact." *Id.*

V. ARGUMENT

A. Plaintiff's Second Amendment Claim is not foreclosed by *Mai*

Mr. Stokes's Second Amendment claim is not foreclosed by *Mai*. In *Mai v. United States*, 952 F.3d 1106 (2020), the Ninth Circuit held that a similar Second Amendment claim involving the deprivation of federal firearm rights was correctly denied because the deprivation passed intermediate scrutiny. However, *Mai* is distinguishable. The plaintiff in *Mai* was committed to a mental institution for a period of nine months by a Washington state court after he threatened himself and others. *Mai*, *supra*, at 1110. "The state court determined that the plaintiff was *both* mentally ill *and* dangerous." *Id.*

*Mai*'s holding was specific:

> We hold that, assuming (without deciding) that § 922(g)(4)'s prohibition burdens Second Amendment rights, intermediate scrutiny applies. We also hold that the prohibition on the possession of firearms by persons, like Plaintiff, whom a state court has found to be both mentally ill and dangerous is a reasonable fit with the government's indisputably important interest in preventing gun violence.

*Id.* at 1109-10.

Mr. Stokes acknowledges that his case has *some* similarity to Mr. Mai's. Like Mr. Mai, Mr. Stokes maintains that section 922(g)'s permanent ban on firearm possession by those who

7
PLAINTIFF'S OPPOSITION TO FEDERAL DEFENDANT'S MOTION TO DISMISS; C-19-4613 WHA

were previously committed involuntarily to a mental institution, regardless of their present situation, violates the Second Amendment. To this end, Mr. Stokes insists that *Mai* was wrongly decided.

However, even assuming that *Mai* is correct, Mr. Stokes's case contains a legally and factually distinct on a central point - specifically, the voluntariness of the 5250 commitment. Mr. Stokes has alleged in his complaint and supporting affidavits that he sought treatment voluntarily. Witnesses to the incident confirm this is the case. Mr. Stokes has thus far been unable to obtain complete medical records of the incident due to the significant time that has passed at the fact that the medical institution in which he was treated has subsequently shut down. However, he asserts that if further records were discovered, they would confirm the fact that he voluntarily chose to extend his examination. Mr. Stokes never challenged the commitment precisely because he was willing to engage in treatment and was not provided any notice of the long term impact sufficient to support a permanent implied waiver of his fundamental rights.

The Federal Defendants misstate the facts of this case in the first sentence by stating that it is 'undisputed that Mr. Stokes was involuntarily committed'. This fact is very much in dispute and their claim is factually inaccurate. Unlike in *Mai*, no state court reviewed Mr. Stoke's commitment and made any finding that he was in fact mentally ill or dangerous, and no state court made any determination about Mr. Stokes's willingness to engage in treatment. Likewise, there was no specific action that supported a finding that Mr. Stokes was dangerous. This differentiates the case at issue from *Beers,* the third circuit case which was relied on by the Mai court. *See* Beers v. Attorney General, 927 F.3d 150 (3rd Cir. 2019). In that case, Plaintiff put a gun in his mouth and threatened suicide. Here, Mr. Stokes merely said that he felt strange and wanted to get a psychological examination. Mr. Stokes did not do any specific act that could be construed as

8
PLAINTIFF'S OPPOSITION TO FEDERAL DEFENDANT'S MOTION TO DISMISS; C-19-4613 WHA

dangerous to himself or others. Accordingly, Mr. Stokes's complaint does present a genuine issue of material fact, and the federal defendants' motion for summary judgement should be denied.

### B. The Plaintiff's claims fall within the protections of the 2nd Amendment.

Mr. Stokes's claims fall within the protections of the Second Amendment, and the federal government has failed to show that there is no genuine issue of disputed fact related to this issue and that they are entitled to judgment as a matter of law.

*Heller* holds that individuals have the right to bear arms under the Second Amendment. See *District of Columbia v. Heller*, 554 U.S. 570 (2008). While *Heller* discusses the longstanding prohibition against the possession of firearms by the mentally ill, *Heller* does not answer the question of whether a person who once checked themselves into a mental institution should, after years of mental fitness and stability, have some form of Second Amendment rights. In *Mai*, the Court assumed but did not evaluate whether the plaintiff's claim involved conduct protected by the Second Amendment. Meanwhile, the Sixth Circuit in *Tyler* held that an individual who was once committed to a mental institution but is currently mentally fit should not be forever denied the right to possess a firearm and should have protected rights under the Second Amendment. See *Tyler v. Hillsdale Cty. Sheriff's Dep't*, 837 F.3d 678, 687-88.

Here, Mr. Stokes claim that section 922(g) burdens conduct protected by the Second Amendment is genuinely at issue. A person who at one part of their lives suffered a bout of depression or other mental health symptoms is historically not banned from owning firearms for life. There are a huge number of individuals who had psychological struggles at some point of their lives. To assume that they all should be designated as "mentally ill" is preposterous. The sole underlying fact that has given rise to Mr. Stokes' lifetime ban is his decision to extend his stay

beyond 72 hours out of an abundance of caution. If anything, Plaintiff's decision is evidence of his determination to ensure he is safe and does not pose a risk to himself or others. Presumably, the federal Defendants would not seek a lifetime firearm ban on someone who chose to attend an anger management class, called a suicide prevention hotline or participate in a meditate retreat. It is ludicrous that the mere act of once seeking professional psychological health would result in a permanent stripping of rights.

While *Heller* discussed the ban on the "mentally ill," *Tyler* specifically found that "[p]rior involuntarily commitment is not coextensive with current mental illness." *Tyler* thus held that a prior involuntary commitment did not deprive a person from all Second Amendment protections. Moreover, in this case, where the plaintiff asserts that he sought treatment voluntarily as a factual matter, the argument that the conduct falls within the scope of Second Amendment protections is even more persuasive. Accordingly, the federal government has not established that there is no genuine issue of material fact and that they are entitled to summary judgment as a matter of law.

Federal Defendant's contend that there is a substantial nexus between the legitimate goal of preventing gun violence, and the total prohibition on firearm right by anyone who stayed at a mental health facility for more than 3 days. This assertion is rendered dubious and called into question by the fact that the US Congress has created, through 34 U.S.C. § 40915, an opportunity for such individuals to regain their rights. It is merely the fact that Plaintiff is a CA resident that prevents him from exercising this option.

### C. Even if this Court applies intermediate scrutiny, the government cannot meet its burden to show that section 922 as applied to Mr. Stokes meets such scrutiny.

Mr. Stokes previously asserted that strict scrutiny is the proper test to apply given total deprivation of his right to bear arms. However, even if this Court applies the intermediate scrutiny test, there is a colorable and genuine claim that section 922(g)(4) as applied to Mr. Stokes fails to meet that level of scrutiny.

The federal government claims that as applied to Mr. Stokes section 922(g)(4)'s firearm ban serves two important interests in preventing suicide and protecting violent crime, and that a substantial relationship exists between those interests and the ban. However, as applied to Mr. Stokes, this "substantial relationship" does not exist. The federal government assumes that because the record of the 5250 exists, that Ms. Stokes was "involuntarily committed" as a factual matter when, in actuality he submitted himself to treatment. However, the record is undisputed that Mr. Stokes sought help from Kaiser and agreed to be treated by Oakcrest. Mr. Stokes, therefore, does not fall within the class of persons who are involuntarily committed for purposes of the intermediate scrutiny analysis.[1] In deciding that section 922(g)(4) satisfied intermediate scrutiny in *Mai*, the Ninth Circuit specifically relied upon the fact that the prohibition "applies only to those who were found, through procedures satisfying due process, *actually* dangerous in the past." *Mai*, at 1121. *Mai* emphasized that the findings came from a *state court* who found him dangerous 3 times in the past. *Id.* at 1121, fn. 11. Here, no state court ever made such findings regarding Mr. Stokes. Quite the contrary, Mr. Stokes is widely regarded as a stable and reliable

---

[1] Mr. Stokes maintains that even if he had been "involuntarily committed" as a factual matter, section 922(g)(4)'s lifetime prohibition violates his rights under the Second Amendment and that the extent to which *Mai* holds to the contrary, that decision was wrongly decided.

individual, and he would welcome any opportunity to submit to a judicial review of his capacity to responsibly possess a firearm.

The relationship between public safety and a ban on firearms for Mr. Stokes, who sought treatment voluntarily and should never have been certified as 5250 in the first place, is highly tenuous.

For the above reasons, the federal government's claim that no genuine issue of fact exists related to Mr. Stokes's Second Amendment claim and that they are entitled to summary judgment as a matter of law should be denied.

### D. The federal government has failed to meet its burden to show that Mr. Stokes's Due Process and Equal Protection claims should be dismissed on summary judgement.

The *Mai* Court specifically noted that the plaintiff had not raised claims on appeal related to Equal Protection or Due Process due to the fact that persons in thirty other states benefit from the relief from disabilities program set out in 43 U.S.C. section 40915. *Mai*, at 1113.

Here, Mr. Stokes makes those claims. As discussed above, Mr. Stokes has raised a cognizable claim that the government has violated his Second Amendment rights and accordingly he has been deprived of a fundamental right under substantive due process. Additionally, the lack of forum to address his fitness to possess firearms in the State of California violates his rights to procedural due process.

Furthermore, Mr. Stokes's rights to Equal Protection under the law are violated by the fact that his fundamental right to own a firearm is being denied by the federal government based on his state of residence. Congress has authorized a program for individuals to challenge their designation under Section 922(g)(4), but it currently requires states to create a relief-from-

PLAINTIFF'S OPPOSITION TO FEDERAL DEFENDANT'S MOTION TO DISMISS; C-19-4613 WHA

disabilities programs. California is one of the 14 states that has not implemented such a program. This creates an unacceptable situation: plaintiff's ability to receive even a hearing on his fundamental rights is entirely dependent on what state he lives in. This unequal treatment is based on an entirely arbitrary distinction and therefore cannot withstand any level of scrutiny.

### E. The Eleventh Amendment does not require a grant of immunity to CA State Attorney General Xavier Becerra and there is a justiciable controversy between Plaintiff and State Defendants.

Mr. Stokes faces the dilemma at the heart of this case (the denial of his fundamental rights) explicitly because of the interplay between CA law and Federal law as it applies to him. If Plaintiff only faced the consequences of State law, his second amendment rights would have revived more than 13 years ago. Likewise, if Plaintiff was only concerned with federal prohibition, he could theoretically seek redress because Congress has indicated, through 43 U.S.C. section 40915, a belief that individuals in his situation should have an avenue for relief from disability. Either system, by itself, would give plaintiff a chance to restore his rights, either by waiting or by petition. Together however, the amalgamation of these two systems have created a more absolute deprivation of rights than either intended and left Mr. Stokes with no other recourse beyond a petition to this course. As such, the State of California and Attorney General Becerra are integral defendants who should not be dismissed from the case.

With regards to the claim that the Eleventh Amendment grants immunity to the state defendants, *Ex parte Young* provides a narrow exception to the Eleventh Amendment bar to suit when the "'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 255 (2011) (quoting *Verizon Md. Inc v. Public*

13
PLAINTIFF'S OPPOSITION TO FEDERAL DEFENDANT'S MOTION TO DISMISS; C-19-4613 WHA

*Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). Here, Plaintiff does allege an ongoing violation of federal law and seeks prospective relief. California law directs the State Department of Hospitals to make records of section 5250 determinations available to the DOJ. Cal. Welf. & Inst. Code § 8104. In order to abide by federal law, CA has a responsibility to make certain that the 5250 determinations that are reported do not include individuals, such as plaintiff Stokes, who sought treatment voluntarily and exhibited no dangerous behavior. CA's failure to make certain that 5250 reporting omits such individuals violates federal law because it means that a class of citizens will lose their rights under federal law without an appropriate factual basis for that result.

## CONCLUSION

For the reasons explained above, Plaintiff asks that this Court denies the motions of both state and Federal Defendants and issue an order rejecting the motions for Summary Judgment.

Dated: September 24, 2020          Respectfully Submitted,


_____/s/_____
TIMOTHY KELLY
Attorney for Mr. Stokes