DAVID L. ANDERSON (CABN 149604)
United States Attorney

SARA WINSLOW (DCBN 457643)
Chief, Civil Division

JULIE BIBB DAVIS (CABN 184957)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7066
    FAX: (415) 436-7169
    Julie.davis@usdoj.gov

Attorneys for Federal Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| EASTON STOKES, | CASE NO. 19-cv-4613 WHA |
| Plaintiff, | **FEDERAL DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| UNITED STATES DEPARTMENT OF JUSTICE, et al. | Judge: Hon. William Alsup<br>Date: October 22, 2020<br>Time: 8:00 a.m. |
| Defendants. | Place: Remote |

**INTRODUCTION**

Federal law prohibits an individual who "has been committed to a mental institution" from possessing a firearm. 18 U.S.C. § 922(g)(4). The Ninth Circuit has recently held, in a published opinion, both that section 922(g)(4) is constitutional under the Second Amendment, and that the *continued* prohibition on the possession of firearms by a plaintiff who, like Plaintiff Stokes, was committed some years ago, survives an as applied challenge to section 922(g)(4). *Mai v. United States*, 952 F.3d 1106, 1120-1121 (9th Cir. 2020), *pet. for rehearing en banc denied* (September 10, 2020, Case. No. 18-35071, Dkt. No. 42). Moreover, the Ninth Circuit also held that section 922(g)(4)'s prohibition is constitutional where, as here, a plaintiff has no potential avenues for relief from the section 922(g)(4) prohibition under federal law. *Id.* The undisputed facts, and the controlling authority in this Circuit, foreclose Plaintiff's claims that he should now be allowed to own firearms under the Second Amendment.

Plaintiff's arguments to the contrary are without merit. With regard to his Second Amendment claim, Plaintiff does not cite to any controlling caselaw, and his attempts to argue that *Mai* is distinguishable from his case are specious. Furthermore, Plaintiff attempts to rely on assertions that are not in the record, nor even pled in Plaintiff's Complaint. Discovery is closed in this matter; more importantly, the Ninth Circuit has held that the Second Amendment inquiry requires an assessment of "congressional judgment about a category of person, not about Plaintiff himself" and "does not demand an individualized hearing to assess Plaintiff's own personal level of risk." *Mai*, 952 F.3d at 1119.

Plaintiff's equal protection and due process claims are also without merit. Plaintiff has not cited to a single case, from any court, that supports his equal protection and due process claims. In addition, as Federal Defendants discussed in their opening brief, the Ninth Circuit has indicated that firearm rights are more appropriately analyzed under the Second Amendment. *Nordyke v. King*, 644 F.3d 776, 794 (9th Cir. 2011). Accordingly, judgment should be entered in favor of Federal Defendants on all of Plaintiff's claims.

///

///

FEDERAL DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
C-19-4613 WHA

1

**ARGUMENT**

## I. FEDERAL DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S SECOND AMENDMENT CLAIM

Plaintiff makes a number of arguments in support of his claim that section 922(g)(4) is unconstitutional as applied to him. All of them are without merit, as discussed below.

### A. Plaintiff Was Involuntarily Committed Under California Law

Section 922(g)(4) prohibits an individual who, like Plaintiff, "has been committed to a mental institution" from possessing a firearm. 18 U.S.C. § 922(g)(4). Plaintiff mistakenly argues that Federal Defendants "assume[] . . . that Mr. Stokes was "involuntarily committed as a factual matter when, in actuality, he submitted himself to treatment." Dkt. No. 63 at p. 11. This is not a factual dispute; as a matter of law, and as he avers in his Complaint, Plaintiff's commitment to Oakcrest was pursuant to a "5250 certification," (Complaint at ¶ 25), which specifically applies to people who have "not been willing or able to accept, treatment on a voluntary basis," and thus constitutes an involuntary commitment under California law. Cal. Welf. & Inst. Code. § 5250; *see also* Ex. 1, Certification of Firearms Prohibition from the California Department of Justice.[1] Such commitments are limited to people who are "a danger to others, or to himself or herself, or gravely disabled." Cal. Welf. & Inst. Code § 5250(a).

Plaintiff argues – without citation to *any* record evidence – "that Mr. Stokes sought help from Kaiser and agreed to be treated by Oakcrest." Dkt. No. 63 at p. 11. According to Plaintiff, that assertion alone establishes that he should not have been involuntarily committed, even though not even Plaintiff's Complaint states that he "agreed" to be treated. Nonetheless, these assertions do not change the undisputed fact that under California law, Plaintiff was involuntarily committed pursuant to Cal. Welf. & Inst. Code § 5250. Complaint at ¶ 25; *see also* Exhibit 1. Plaintiff admits that he did not seek judicial review of the 5250 certification, which he was entitled to do under California law (Cal. Welf. & Inst. Code § 5275, et seq.) in order to challenge his commitment. Complaint at ¶ 25. Plaintiff further

---

[1] Although this document is stamped "Confidential," all parties have agreed it is suitable for filing on the public docket.

FEDERAL DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
C-19-4613 WHA

2

admitted in his opposition to Federal Defendants' previous motion to dismiss that he was informed he was subject to a 5250 hold. Dkt No. 45 at p. 7.

Therefore, as a matter of law, Plaintiff was involuntarily committed under the applicable state provisions, regardless of his current unsupported attempts to establish that at the time, he agreed to be committed. Because of his involuntary commitment, he is properly subject to the restrictions on gun possession contained in section 922(g)(4). *Mai*, 952 F.3d at 1111-1119; *see also Heller v. Bedford Cent. Sch. Dist.* 665 F. App'x 49, 54 (2d Cir. 2016); *United States v. McRobie*, No. 08-4632 WL 82715 (4th Cir. Jan. 14 2009) (per curiam).

### B. Plaintiff Failed To Challenge His Commitment Under State Law

The bulk of Plaintiff's opposition focuses on his unsupported allegations that his involuntary commitment under California law should have been classified as voluntary. Plaintiff had an opportunity to challenge this designation, however, and failed to do so. Plaintiff admits that he did not seek judicial review of the 5250 certification, which he was entitled to do under California law (Cal. Welf. & Inst. Code § 5275, et seq.), in order to challenge his commitment. Complaint at ¶ 25. Plaintiff also admits that he was informed that he was subject to a 5250 hold at the time of his commitment. Dkt. No. 45 at p. 7. The fact that Plaintiff opted not to take advantage of the procedures available to him at the time to challenge his commitment does not entitle him to now challenge that designation. Moreover, Plaintiff can cite to no authority establishing that his failure many years ago to use the procedures available to him via state law somehow entitles him to now enlist a federal court in determining whether his commitment should have been considered involuntary under state law.

### C. Under the Circumstances, There is No Requirement of a Court Adjudication For Section 922(g)(4) To Apply

Plaintiff also attempts to argue that because his involuntary commitment was not pursuant to a court proceeding, he is somehow not subject to the section 922(g)(4) prohibition. Plaintiff is incorrect. First, Plaintiff's interpretation ignores the plain text of the statute. Section 922(g)(4) requires that a person be "adjudicated as a mental defective" *or* "committed to a mental institution." Only the first of these phrases could be read to require a judicial proceeding, and, "[a]s a general rule, the use of a

FEDERAL DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
C-19-4613 WHA

3

1  disjunctive in a statute indicates alternatives and requires that they be treated separately." *Azure v. Morton*, 514 F.2d 897, 900 (9th Cir. 1975). Further, Plaintiff acknowledges that the reason a court proceeding did not take place at the time of his involuntary commitment is because he *chose* "not [to] seek any type of judicial review of the 5250 certification." Dkt. No. 63 at p. 5. Plaintiff's failure to use the procedures available to him under California law at the time can hardly create a constitutional problem now, particularly where, as noted above, there is no evidence in the record that Plaintiff's commitment was anything other than involuntary. *See* Ex. 1 (confirming that Plaintiff was subject to a section 5250 involuntary commitment at a psychiatric hospital because of his status as "DTSO" (danger to self or others) or "gravely disabled").

Second, the *Mai* Court did not state that in order for section 922(g)(4) to apply, the involuntary commitment need be via court order. Such a holding would have ignored the distinction Congress created between "adjudicated" and "committed" in section 922(g)(4), and would have implicitly cast into doubt a portion of the implementing regulations that define "committed to a mental institution" as "[a] formal commitment . . . by a court, board, commission, or other lawful authority." 27 C.F.R. § 478.11. There is no indication that the Ninth Circuit intended to do so. Indeed, the Ninth Circuit repeatedly made it clear that section 922(g)(4) as a whole was "a reasonable fit for the congressional goal of reducing gun violence" and that the statute itself was limited to "those who were found, through procedures satisfying due process, *actually* dangerous in the past." *Mai*, 952 F.3d at 1121. Furthermore, in assessing its constitutionality, the Ninth Circuit found section 922(g)(4) to be more narrowly tailored than other lifetime prohibitions, and confirmed that its holding addressed section 922(g)(4)'s "prohibition on those who [like Plaintiff] 'have been committed to a mental institution.'" *Id.* Here, pursuant to procedures detailed in California law, Plaintiff was found to be subject to an involuntary commitment, which applies only to those persons who are "a danger to others, or to himself or herself, or gravely disabled." Cal. Welf. & Inst. Code § 5250(a). California law provided Plaintiff with an opportunity to obtain a judicial proceeding as part of that involuntary commitment, which he declined. Nothing in *Mai* suggests that Plaintiff Stokes should be treated differently than Plaintiff in that case.

///

FEDERAL DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
C-19-4613 WHA

4

### D. The Absence Of A Forum To Challenge The Prohibition Does Not Render Section 922(g)(4) Unconstitutional As Applied To Plaintiff

Plaintiff continues to argue that, because he does not have a forum to demonstrate current fitness to possess firearms, section 922(g)(4) is unconstitutional as applied to him.[2] Complaint at ¶ 45. Such an argument was squarely addressed and rejected by the Ninth Circuit in *Mai*, where the plaintiff also did not have an avenue for relief from the prohibition under federal law. 952 F.3d at 1111, 1120-1121. As the Court held, even in the absence of an avenue of relief from a categorical, lifetime ban, "§ 922(g)(4) nevertheless remains a reasonable fit for the congressional goal of reducing gun violence." *Id.* at 1120. The governmental interests of preventing violence, including suicide, that impacts an individual, families, and community, are powerful and compelling. *Id.* at 1120-21. In addition, the evidence of increased risk of suicides from those released from involuntary commitment (about 39 times the risk of those not previously committed), is significant. *Id.* at 1121.

Moreover, Plaintiff's reliance on the 2008 enactment of 34 U.S.C. § 40915, where Congress authorized (but did not mandate) states to create their own "relief from disabilities" program, is misplaced. Dkt. No. 63 at p. 10. Plaintiff argues that the lifetime prohibition on gun possession to which he is subject is called into question by the Congressional authorization to states to develop such programs. *Id.* The Ninth Circuit, however, squarely addressed and rejected this argument as follows:

> Congress enacted § 40915 as part of the NICS Improvement Amendments Act of 2007 ("NIAA"), 34 U.S.C. §§ 40902-40941. As its name suggests, the NIAA aimed to improve the National Instant Criminal Background Check System ("NICS"), the federal background-check system that includes a database listing persons who have been disqualified from possessing firearms. *Id.* § 40902. Congress passed the NIAA in response to horrible acts of gun violence by those with a history of mental illness. *Id.* § 40902(8)-(9). All of the NIAA's substantive provisions other than § 40915 seek to improve the information contained in the federal database. . . .
>
> The NIAA was a political compromise that included § 40915's avenue for relief for some of the least dangerous only in exchange for greatly improved enforcement as to all the rest, including the most dangerous. Congress' statutory extension of grace to some persons as part of a political compromise aimed at preventing gun violence does not affect our constitutional analysis. We do not read the NIAA as disturbing the

---

[2] For the purposes of the Motion only, Federal Defendants assume that Plaintiff's assertions that he is currently mentally fit are correct. (Complaint at ¶ 29).

FEDERAL DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
C-19-4613 WHA
5

> longstanding congressional judgment -- supported by scientific evidence –
> that those who were involuntarily committed to a mental institution pose
> an increased risk of violence even years after their release.

*Mai*, 952 F.3d at 1119-20 (footnotes omitted).

Accordingly, Plaintiff's Second Amendment challenge is without merit, and Federal Defendants are entitled to summary judgment on this claim.

## II. FEDERAL DEFENDANTS ARE ENTITLED TO JUDGMENT ON PLAINTIFF'S DUE PROCESS AND EQUAL PROTECTION CLAIMS

Plaintiff cites to no caselaw supporting his argument that his due process and equal protection claims are cognizable here, and does not address Federal Defendants' detailed discussion demonstrating why they are entitled to judgment on those claims. Dkt. No. 60 at pp. 19-22. While Federal Defendants need not repeat those arguments, they note briefly that to the extent Plaintiff is seeking to attack his previous commitment in this proceeding on due process grounds, it is well-established that a federal proceeding is an improper venue to attack a section 922(g) disqualifying event. *Heller* does not entitle a plaintiff "to a collateral attack in federal court on a commitment he did not – and has not in any way – challenged in the state court." *United States v. McIlwain*, 772 F.3d 688, 698 (11th Cir. 2014). Here, Plaintiff admits that he did not utilize the judicial review procedures available under California law (Cal. Welf. & Inst. Code § 5275, et seq.) to challenge his commitment. Complaint at § 25. As such, he may not challenge that procedure here.

In addition, because Plaintiff cannot show that his Second Amendment rights have been violated, he cannot assert a due process claim premised on the deprivation of those substantive rights. Plaintiff's argument that section 922(g)(4) deprives him of firearm rights without due process has repeatedly been dismissed by federal courts. As the Ninth Circuit has stated, "although the right to keep and bear arms for self-defense is a fundamental right, that right is more appropriately analyzed under the Second Amendment." *Nordyke v. King*, 644 F.3d 776, 794 (9th Cir. 2011) (internal citation omitted), vacated by 681 F.3d 1041 (9th Cir. 2012) (en banc) (affirming the district court's decision to dismiss the Second Amendment claim); *see also Bell v. United States*, No. 13-5533, 2013 WL 5763219, at \*3 (E.D. Pa. Oct. 24, 2013), *aff'd*, 574 F. App'x 59 (3d Cir. 2014).

FEDERAL DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
C-19-4613 WHA

6

Plaintiff also cannot state a claim for violation of his equal protection rights under the Fifth Amendment. Claims that "conflate the enumerated Second Amendment right with Equal Protection and Due Process protections under the Fifth Amendment" should not be considered. *United States v. Carey*, 602 F.3d 738, 741 n.2 (6th Cir. 2010) (reviewing appellant's Second Amendment argument but refusing to consider his more general due process and equal protection claims). To the extent Plaintiff has alleged he is a member of any class, that class comprises individuals who have been involuntarily committed, Complaint at ¶ 50, and the Supreme Court has consistently applied rational basis review to cases involving persons who are mentally retarded or who suffer from mental illness. *See Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432 (1985); *Schweiker v. Wilson*, 450 U.S. 221 (1981); *Heller v. Doe by Doe,* 509 U.S. 312 (1993). Thus, for the same reasons that *Mai* held that section 922(g)(4) survives constitutional challenge under the Second Amendment, 952 F.3d 1116-19, the statute does not violate equal protection.

## CONCLUSION

For the foregoing reasons, Federal Defendants should be granted summary judgment on all of Plaintiff's claims.

Respectfully submitted,

DATED: October 1, 2020            DAVID L. ANDERSON
                                  United States Attorney

                                  By:    /s/ *Julie Bibb Davis*
                                  JULIE BIBB DAVIS
                                  Assistant United States Attorney
                                  Attorneys for Federal Defendants

FEDERAL DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
C-19-4613 WHA

7