1  Timothy Kelly, SBN 304840
   1403 Spyglass Parkway
2  Vallejo, CA 94591
   (707) 570-7507
3
   Attorney for Plaintiff
4

5              UNITED STATES DISTRICT COURT

6            NORTHERN DISTRICT OF CALIFORNIA

7               SAN FRANCISCO DISTRICT

8  EASTON STOKES                    )  Case No.:
                                    )  3:19-cv-04613-WHA
9              Plaintiff,           )
                                    )
10       vs.                        )
                                    )  PLAINTIFF'S RESPONSE TO OCTOBER
11 UNITED STATES DEPARTMENT OF      )  22ND ORDER
   JUSTICE, et al.                  )
12                                  )
               Defendants.          )
13                                  )
                                    )
14                                  )

15

16

17

18

19

20

21

22

23

24

                                1
PLAINTIFF'S RESPONSE TO OCTOBER 22ND ORDER

1

2

The following filing is made in response to the courts order on October 22.

3

In adherence to the direction of the court, plaintiff has initiated an action in Sonoma
4    County Superior Court seeking review of his 5250 status.

5    This has been assigned case number SCV267326.

6    Plaintiff also submits his expanded declaration, a declaration made by Nancy Barker
and copies of the military records of his grandfather, all of which were requested by the
7    court. Additional relevant materials have also been attached.

8    At the courts direction, we have made further attempts to acquire the medical records
related to the 2002 incident and will provide an update as soon as possible.

9
If defendants or the court wishes any additional evidence or testimony,  We will seek to
10   comply as quickly and completely as possible.

11

12

13
Dated:         11/05/2020                    Respectfully Submitted,
14

15

16
TIMOTHY KELLY
17   Attorney for Mr. Stokes

18

19

20

21

22

23

24

2
**PLAINTIFF'S RESPONSE TO OCTOBER 22ND ORDER**

## DECLARATION OF EASTON STOKES

I Easton Stokes, under the penalty of perjury, declare that the following responses are true and correct to the best of my knowledge.

Date: 11-4-20

Easton Stokes

| | |
|---|---|
| The specific firearms in question, associated accessories such as magazines, grenade launchers, telescopic sights and ammunition. | (A) Ithaca 1911 , .45 caliber APC , 7 round magazine (x2) , zero ammunition , (B) Winchester 1894 , .30 caliber , 8 round tube magazine , Zero ammunition |
| The full employment history of plaintiff. | See attached. |
| Any arrests and/or convictions of plaintiff. | Yes, city ordinance "illegal transportation of a firearm" misdemeanor.See line 5, Can Provide more details upon request. |
| Plaintiff's litigation history, including civil cases. | I testified against Saleh Khazaly in court. This was to renew a restraining order for Razia Shaikh , my girlfriend from 2003-2008 . Saleh Khazaly is violent and mentally unbalanced. He threatened to kill me after I testified against him. Razia lived with her Mother, stepfather, and little brother. They were next door neighbors to the Khazaly family. I would stay at Razias home on the weekends while working out of town between August 2005 and May 2007 |
| The names and addresses of persons plaintiff believes could vouch for his mental and emotional stability with respect to possession of firearms. | John Kincheloe and Kari Kincheloe P.O. Box 1556 Windsor, Ca 95492....See full list on subsequent attachment. |
| The full educational resume of plaintiff. | Harmony Grade School K-5 (1988-1995) , Salmon Creek Middle School 6-8 (1995-1998), El Molina High-school (1998-2002), Santa Rosa Junior College (2002-2005) graduated with an Associates Degree , Sonoma State University (2008-2010) Graduated with Bachelor of Arts in Environmental Studies, Water Quality and Hazardous Materials. |
| The extent to which, if at all, any employer, neighbor or other person has ever suggested to plaintiff that he is mentally or emotionally ill. | My friends asked me how I was feeling in March of 2002. I was not feeling well and I asked for help. After this one time incidence of a "drug induced psychotic episode " nobody has ever suggested or insinuated that I am mentally or emotionally ill. |

1

| | |
|---|---|
| The full extent to which there has been any history of mental illness in his family. | On the Stokes side My grandfather and grandmother were emotionally and mentally stable their entire lives, they had four children. Two of which developed bi-polar disorder in their mid 40's. My full sister Marie is bi-polar. Grandpa and Grandma Stokes had 12 grandchildren, 1 of which is mentally and emotionally unstable. My grandfather John Wayne Shepard was mentally and emotionally stable his entire life , he was a police officer in Edna Minnesota for 25 years. His wife, Jean Audrey Shepard was diagnosed mentally ill in 1960, she had three children. My mother is the only of three to be without mental illness. Her brother Mike Shepard is Mentally ill. Her other brother Ray Shepard suffered from extreme depression which led to his suicide by carbon monoxide poisoning . My family does have a history of mental illness , my family also has a greater history of mental and emotional stability including military combat veterans, public servants including teachers , police service, federal and state hunting, and many more lifetimes of productive stable Americans. |
| The full extent to which, if at all, plaintiff has had any connection with gangs or persons convicted of any felony. | Zero connection with any gangs or any felons. |
| The full extent to which plaintiff has ever undergone medical or professional treatment for any form of mental or emotional problems. | Only my voluntary commitment to Oak Crest in 2002 and seeing the psychologist at Kaiser for the following four months. Xyprexa was my only outpatient prescription, my does was reduced every appointment until I was completely off of all medication in July of 2002. On my final visit to the psychologist when I was completely taken off of medication I asked "what is wrong with me?, am I bipolar"? The psychologist responded "No, this looks like a drug induced psychotic episode to me." Other than this one time incident I have never undergone any medical or professional treatment for any form of mental or emotional problems. |
| The extent to which, if at all, plaintiff has ever been accused of domestic violence, including by a spouse, child, or a partner. This part of the declaration may be submitted under seal for the time being. | I have never been accused of any kind of violence. |
| The extent to which plaintiff seeks to possess firearms in question for hunting, versus resale, versus target practice, versus self-protection, versus any other use. This should be done on a firearm-by-firearm basis. | The Ithaca 1911 is my Grandfather's service pistol. He was a P-38 fighter pilot whose primary objective was long rang bomber escort over Central Europe. His service pistol will be a family heirloom. The Winchester 1894 belonged to my great grandfather Harry Clark Stokes, this rifle is a family heirloom. Harry Clark Stokes was a federal and state hunter out of Grants Pass Oregon. His career was to track down and kill predators that attacked and killed livestock. This Winchester 1894 was his primary rifle. I would like to be responsible for keeping these two firearms in excellent condition and make sure that they both stay with the Stokes ranch for generations to come. I would like to keep them in working order without using them. |
| Any other circumstances that bear upon the mental or emotional stability of the plaintiff. | I do not believe there is any other evidence that has a major effect on my mentakl or emotiona stability,. It is possible my cancer treatment would be deemed relevant so I have included some of my medical records in relation to that. |

2

**Full Employment History:**

| | | | | | |
|---|---|---|---|---|---|
| June 1998 | August 1999 | Bassignani Nursery | Landscaper | Kurt Bassignani | |
| January 2000 | May 2001 | Union Hotel | Buss Boy | Barbara Gonnella | |
| June 2001 | August 2001 | YMCA Summer Camp | Camp Counselor | Brad | |
| September 2001 | March 2002 | Long's Drugs | Cashier and Stock Boy | | |
| May 2002 | October 2002 | Sauter Construction | Part-time laborer | Josh Sauter | |
| May 2002 | October 2002 | Jeremy Allen | Part-time laborer | Jeremy Allen | |
| May 2002 | July 2002 | Private home owner | Handyman | Crigler | |
| August 2002 | May 2005 | SRJC | Student | John Daly | |
| December 2002 | June 2003 | SRJC Art Gallery | Gallery Assistant | | |
| July 2003 | November 2003 | Dave's Landscaping | Landscaper | Dave | |
| January 2004 | May 2005 | SRJC Faculty Copy Center | Copy Assitant | John Silveira | |
| June 2005 | August 2005 | Lucas Warf | Buss Boy | | |
| August 2005 | August 2008 | Western Water | Laborer, Mechanic, Carpenter Assistant, Pipe fitting, Spotter | Luke McGarva | |
| August 2008 | August 2010 | SSU | Student | Steve Norwick | |
| October 2010 | December 2017 | Self Employed | Agricultural Farmer | | |
| July 2014 | January 2016 | Funny Farms Hydroponics | Part time Cashier, Assistant | Pierre Philippe | |
| July 2016 | July 2017 | 19 Hampton Rd, 95465 | Carpenter | Brad Truline | Owner builder permit. Complete rebuild after two large redwood trees crushed this home |
| August 2016 | December 2016 | C. Mullins Building | Carpenter | Brad Truline | |
| October 2018 | May 2019 | 5401 La Dia Court | Carpenter | Brad Truline | Owner builder permit |

3

| June 2019 | | Evans construction | Carpenter | Brian Evans | |
|---|---|---|---|---|---|
| June 2018 | July 2018 | Hiked from Horse Shoe Meadows to Lake Tahoe on the Pacific Crest Trail | | | |

Declaration by Nancy:

In Spring of 2002, Easton Stokes was staying with my family. One evening, my son Donny came to my husband Don and I and said Easton needed help because he was speaking incoherently and didn't seem at all like his normal self. After we went out and talked to the teens, it became apparent that he had gone several days without sleep and might need professional help. Since Easton was not our child, we erred on the side of safety and asked him if he wanted to go into the medical clinic.

We suggested to Easton might benefit from treatment and he agreed that was appropriate. We drove in as a group: Micah Black, Mike O'Brien, Donny Barker (my son), myself and Easton. At the hospital, Easton voluntarily went into the evaluation interview himself.

Once there, I believe we were advised by the hospital to hand over his decision making authority to me. I don't recall whether he gave me power of attorney to sign for him or whether he signed himself. I remember he left in an ambulance to be transported from Kaiser to Oakcrest.

I do not recall whether I signed any further paperwork on Easton's behalf or was involved in the decision to extend his stay. I believe that he made that decision himself. I was glad that he sought treatment and he seemed much more his normal self at the completion of it.

I have known Easton in the two decades since this incident and he remains a close friend of my family. I consider him a reliable, even-keeled and responsible young man and have not seen any actions or behavior from him since that incident that would give me cause for concern.

I support Easton's efforts to restore his constitutional rights and would not feel this way if I considered him a danger to himself or others.

I declare under the penalty or perjury that the foregoing is true and correct to the best of my recollection.

Nancy Barker, 10-29-2020

October 30, 2020


To Whom It May Concern:

I have known Easton Stokes since January 2000 when he was a classmate of our daughter's at El Molino High School in Forestville, California. For the past twenty years he has been an extended member of our family (we have five children) and we have shared many of life's joys and challenges together. He is one of the most loyal and resilient people I have ever met.

When we first met, Easton shared with us a bit of his life. As the years progressed we learned more of the trials of his upbringing. He grew up in poverty, living in a small house that was falling apart and lacking basic services. When Easton was ten, his mother left the family and the country. Easton and his sister, Marie, were left with their father who struggled and failed to provide. His oldest sister, Christine, moved to Montana, causing another traumatic abandonment.

In the 8th grade Easton was taken in by a family in Occidental, Don and Nancy Barker, who had a son Easton's age and three other children. They provided Easton with stable housing and some familial structure. This is where Easton was living when we met him. Although during this time he had a stable living environment, there was no true parental oversight over his comings and goings or accountability on his whereabouts. A less than desirable scenario for a teenage boy.

In the spring of 2002, we received a call that Easton had been admitted to Oak Crest Psychiatric facility in Santa Rosa, California. He had apparently been with friends and tried hallucinogenic mushrooms and had a bad reaction. We went to see him numerous times while he was admitted and he was a bit disoriented and appeared very subdued. Upon discharge, he was much better and when my husband picked him up, requested that the two of them go to the beach and kayak surf. We did not see any long lasting effects of the drug interaction.

When Easton was admitted, I recall a conversation that I had with Nancy Barker regarding the hospital admitting paperwork. She mentioned that had Easton answered some questions a certain way, he would have been responsible for all the hospital charges during his stay. After this was explained to him, he chose to answer in the way that would ensure him not being responsible for any of the charges, not realizing that there may be long term consequences for that action.

Easton returned to high school and graduated in June 2002. He got a job and began attending Santa Rosa Junior College. In June 2006, he received his Associate's Degree and transferred to

Sonoma State University where he went on to earn a Bachelor's Degree. His advanced education was all self-motivated, untreated dyslexia and without any parental support. Quite an accomplishment for someone with his background.

In 2011, Easton was diagnosed with Familial adenomatous polyposis (FAP), a rare, inherited condition that caused hundreds of cancerous polyps to grow in his large intestine. In an extensive surgery, Easton's entire colon was removed and reconstructed. I was with him for almost every doctor's appointment and surgery and he never once complained or lamented his fate. He endured numerous rounds of chemotherapy with the same positive attitude. I have never seen such a young person handle adversity with such grace and resilience.

Thankfully, today he is cancer free and living the life of a responsible adult. He has a full time job in the construction industry he loves, volunteers at local nonprofits and spends as much time as he can with his 101 year old grandpa whom he adores.   He has worked hard and overcome much adversity in his young life and should be afforded all rights any responsible adult is entitled to in this country.

Please feel free to contact me if you have any questions or would like further explanation of any of the above. Easton is a valued member of our family and I will do anything I can to help restore his rights.

Best regards,

Kari Kincheloe
P.O. Box 1556
Windsor, CA  95492
(707)484-2274
Email: jkkinch@comcast.net



October 30, 2020

RE:  Mr. Easton Stokes

To Whom it May Concern,

Easton Stokes worked for Western Water Constructors, Inc. from August 2005 through August 2008. During his employment his duties included supporting various trades including laborers, capernters, millwrights and operators.  While employed with Western Water Mr. Stokes was an exemplary employee who conducted himself in a curtieous and professional manner.

Based on my experience with Mr. Stokes I consider him to be trustworthy, calm and dependable.  In the event that Easton was interested and able to return to Western Water for employment we would be thrilled to have him back on our team.

Sincerely,

Luke McGarva
Vice President
Western Water Constructors, Inc.

707 Aviation Boulevard
Santa Rosa, CA 95403
License #188068  Est. 1959

t. 707.540.9640
f. 707.540.9641

westernwater.com

To the Court and Whom it May Concern,

I make this statement about Easton Stokes regarding an incident that happened 17 years ago. My name is Jonathan Bassignani. I am currently a general engineer and Chief of Projects who works for the Department of Veteran Affairs in the Engineering Department. I currently supervise a staff of nine project managers overseeing $225M dollars of design and construction projects.

In regards the incident, I believe it was a Saturday night in 2002 that a group of five of us got together to celebrate a Birthday. Easton Stokes, Micah Black, Michael Santiago, myself Jon Bassignani, and driver James Cardwell took a drive out to Bodega Bay. We wanted to hang out at a camping area in the Bodega Bay Salmon Creek area. All five of us met up in Occidental to drive out together in one small car.

When we reached a tight turn in Bodega Bay, our driver missed the almost U turn and slammed his brakes on. We hit the guardrail on the right shoulder; Mr. stokes was in the front passenger seat closest to the point of impact. We got out to look and saw there was limited damage to the car. This is the major turn past the Boat House and Bodega store on route up the coast. In standard teenage fashion, we acted uncaring and unperturbed about the fact that we almost were involved in a very serious car accident, and we continued on to our destination in a festive mood. I cannot fully remember the time but it was dark almost pitch black and must have been around 9pm - 10pm. Our plan was to stay out a few hours, party and return back home.

We found our beach destination and a short while later noticed Mr. Stokes had started acting a little strange. He was talking about our relationships with current girlfriends and about one girlfriend he had been dating. When we made our way down to the beach, Mr. Stokes ran down and disappeared away from us. We noticed that Mr. Stokes was not acting as himself and seemed to have been in shock and panicked. We thought maybe he had been drinking. We found a group of people who had made a large bon fire on the beach and we introduced ourselves as they asked us to hang out with them at the fire if we wanted to.

We spent time around the fire for a good 30 minutes or and Mr. Stokes had disappeared. He came back and tossed his shirt and a pocket item into the fire. At this point we knew we had to take Mr. Stokes home because he didn't seem like himself and we did so. Mr. Stokes asked us to bring him back home to Barker families house where he had been staying for the past year as a guest and very close friend to the family.

While driving home, Mr. Stokes stated that he felt that he wanted to go to a doctor to make sure he was ok and that he was not feeling like himself. I offered to take him to the hospital the next day.

The next day I got a call from the Barker family – I believe their son Don Barker told me that Mr. Stokes wanted to check himself in to the local Mental Health hospital in Santa Rosa that he still wanted help and did not feel like himself. Mr. Barker said that he and

his mother Nancy Barker would drive him. I told the Barker's that I would meet them there.

I arrived at the Mental Hospital in Santa Rosa the next day shortly after Mr. Stokes checked himself into the clinic.

In my view and experience at the time, I felt that Mr. Stokes had a very bad panic attack probably due to the near death experience and accident we had the night before. Looking back, I think we all in our youthful exuberance brushed off the close encounter when we really should have been feeling the same as Mr. Stokes. Mr. Stokes did voluntarily seek treatment and had even asked me to drive him to the hospital the day before he went. From my perspective, this was the act of a responsible person who was in shock and scared from recent events who had a psychological issue but had enough mental capacity to voluntarily know that something within himself was not right and ask for help.

I declare under the penalty of perjury that the above is true and correct to the best of my recollection.

11/1/20
Date:

Jonathan Bassignani:

November 3, 2020

Micah Black
8944 Bowers Street
Graton, CA 95444

The Superior Court of California - County of Sonoma

Your Honor,

I am writing this letter in support of restoring the Second Amendment rights of Easton Stokes. It is my understanding that this right was taken away from him seventeen years ago due to an isolated incident in which I was a witness to. To the best of my recollection and understanding, the incident in question was a minor incident. It was devoid of any form of threat or violence, and I feel that Mr. Stokes' right to keep and bear Arms should not be infringed upon because of it.

I know Mr. Stokes as well as anyone. We have known each other for about thirty years, spent almost every weekend of our childhood together, and I was honored to have him as my best man in my wedding. During all this time together, I have never witnessed any event that would cause me to consider him a dangerous person, including the event in question.

The event in question occurred on a weekend night during our senior year of high school. It was a typical weekend evening for us. A group of five, including myself, drove out to the coast to hang out on the beach for the evening. The evening became atypical when our group noticed that Easton was not his usual self. He began talking about concepts that seemed very deep and meaningful, even spiritual. However, much of this did not make any sense to me. Over the next couple hours, his condition became more concerning. It seemed that he might be having some hallucinations, and kept talking about seeing a blue light, which nobody else saw. When he threw his jacket into a bonfire we knew that we had to get him home. Understandably, we were all a little shaken up, as we had never experienced anything like this before. But the next morning it was Easton, above everyone else, who understood that he should seek some medical help. With help from friends, he admitted himself to a mental health facility out of an abundance of caution.

At no time during the event in question did I witness any violent or threatening act from Easton Stokes, or feel that he was capable of any such behavior. He had a small and short-lived mental breakdown, and was well enough to want to seek help as a precaution. I feel that this event should not dictate that any of his constitutionally-given rights be taken away from him.

I declare under penalty of perjury that the above statement is true and correct to the best of my recollection.

Micah Black



**SONOMA**
STATE UNIVERSITY

1801 East Cotati Avenue
Rohnert Park, CA 94928-3609

**STUDENT AFFAIRS AND ENROLLMENT MANAGEMENT**
707.664.2838 • Fax 707.664.3133
www.sonoma.edu/saem/

September 24, 2010

Easton Atwood Stokes
Po Box 109
Bodega, CA 94922

Dear Easton,

Congratulations on the achievement of a major accomplishment in your life. I am pleased to inform you on behalf of Sonoma State University that you have fulfilled all requirements for your Bachelor of Arts degree.

All of us in the division of Student Affairs and Enrollment Management recognize the effort that goes into such an accomplishment. We hope that your experiences at Sonoma State University and the attainment of your degree will open up new opportunities and enrich your life.

Enclosed is your diploma indicating that your Bachelor of Arts in Environmental Studies was conferred on August 20, 2010. If you need an official transcript reflecting your degree, you can request it at any time from the Office of Admissions and Records.

Please accept the University's heartiest congratulations on the attainment of your degree and our best wishes for the future.

Sincerely,

*Matthew Lopez-Phillips*

Matthew Lopez-Phillips
Acting Vice President

**THE CALIFORNIA STATE UNIVERSITY**
Bakersfield • Channel Islands • Chico • Dominguez Hills • East Bay • Fresno • Fullerton • Humboldt • Long Beach • Los Angeles • Maritime Academy
Monterey Bay • Northridge • Pomona • Sacramento • San Bernardino • San Diego • San Francisco • San Jose • San Luis Obispo • San Marcos • Sonoma • Stanislaus

# Santa Rosa Junior College

Upon recommendation of the Faculty,
The Board of Trustees of Sonoma County Junior College District
has conferred upon

## Easton Atwood Stokes

the Degree of

## Associate in Arts
Liberal Arts & Sciences, General

with all Rights, Benefits, Privileges and Responsibilities appertaining thereto.
Given this twenty-first day of May, two thousand and five.



_Robert F. Agrella_
Superintendent/President

_Donald H. Zumwalt_
President of the Board

_Kimberlee A. Messina_
Academic Senate President

_Joseph J. Palla_
Clerk of the Board

# STATE OF CALIFORNIA
## CERTIFICATION OF VITAL RECORD

# COUNTY OF SONOMA
### SANTA ROSA, CALIFORNIA
### CERTIFICATE OF DEATH
STATE OF CALIFORNIA
USE BLACK INK ONLY / NO ERASURES, WHITEOUTS OR ALTERATIONS
VS-11 (REV 1/04)

3-2006-49-000350

STATE FILE NUMBER / LOCAL REGISTRATION NUMBER

**DECEDENT'S PERSONAL DATA**

| 1. NAME OF DECEDENT — FIRST (Given) | 2. MIDDLE | 3. LAST (Family) | |
|---|---|---|---|
| BURTON | ATWOOD | STOKES JR. | |

AKA, ALSO KNOWN AS — Include full AKA (FIRST, MIDDLE, LAST)

| 4. DATE OF BIRTH mm/dd/ccyy | 5. AGE Yrs. | IF UNDER 1 YEAR Months / Days | IF UNDER 24 HOURS Hours / Minutes | 6. SEX |
|---|---|---|---|---|
| 02/18/1949 | 56 | | | M |

| 9. BIRTH STATE/FOREIGN COUNTRY | 10. SOCIAL SECURITY NUMBER | 11. EVER IN U.S. ARMED FORCES? | 12. MARITAL STATUS (at Time of Death) | 7. DATE OF DEATH mm/dd/ccyy | 8. HOUR (24 Hour) |
|---|---|---|---|---|---|
| WA | 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 | YES / NO / UNK [X] | Divorced | 01/28/2006 | 0430 |

| 13. EDUCATION — Highest Level/Degree (see worksheet on back) | 14/15. WAS DECEDENT HISPANIC/LATINO(A)/SPANISH? | 16. DECEDENT'S RACE — Up to 3 races may be listed (see worksheet on back) |
|---|---|---|
| Some College | YES / NO [X] | White |

| 17. USUAL OCCUPATION — Type of work for most of life. DO NOT USE RETIRED | 18. KIND OF BUSINESS OR INDUSTRY (e.g., grocery store, road construction, employment agency, etc.) | 19. YEARS IN OCCUPATION |
|---|---|---|
| Home Health Care Provider | Health Care | 1 |

**USUAL RESIDENCE**

| 20. DECEDENT'S RESIDENCE (Street and number or location) | | | |
|---|---|---|---|
| 600B Salmon Creek Rd. | | | |

| 21. CITY | 22. COUNTY/PROVINCE | 23. ZIP CODE | 24. YEARS IN COUNTY | 25. STATE/FOREIGN COUNTRY |
|---|---|---|---|---|
| Bodega | Sonoma | 94922 | 25 | CA |

**INFORMANT**

| 26. INFORMANT'S NAME, RELATIONSHIP | 27. INFORMANT'S MAILING ADDRESS (Street and number or rural route number, city or town, state, ZIP) |
|---|---|
| Marie Stokes – Daughter | P.O. Box 109, Bodega, CA 94922 |

**SPOUSE AND PARENT INFORMATION**

| 28. NAME OF SURVIVING SPOUSE — FIRST | 29. MIDDLE | 30. LAST (Maiden Name) | |
|---|---|---|---|
| | | | |

| 31. NAME OF FATHER — FIRST | 32. MIDDLE | 33. LAST | 34. BIRTH STATE |
|---|---|---|---|
| Burton | Atwood | Stokes | OR |

| 35. NAME OF MOTHER — FIRST | 36. MIDDLE | 37. LAST (Maiden Name) | 38. BIRTH STATE |
|---|---|---|---|
| Marjorie | Elizabeth | Easton | CA |

**FUNERAL DIRECTOR/LOCAL REGISTRAR**

| 39. DISPOSITION DATE mm/dd/ccyy | 40. PLACE OF FINAL DISPOSITION | |
|---|---|---|
| 02/01/2006 | RES: Marie Stokes, 600 B Salmon Creek Rd., Bodega CA 94922 | |

| 41. TYPE OF DISPOSITION(S) | 42. SIGNATURE OF EMBALMER | 43. LICENSE NUMBER |
|---|---|---|
| CR/RES | Not Embalmed | |

| 44. NAME OF FUNERAL ESTABLISHMENT | 45. LICENSE NUMBER | 46. SIGNATURE OF LOCAL REGISTRAR | 47. DATE mm/dd/ccyy |
|---|---|---|---|
| Adobe Creek Funeral Home | FD-1646 | MARY MADDUX-GONZALEZ, M.D. | 01/31/2006 |

**PLACE OF DEATH**

| 101. PLACE OF DEATH | | 102. IF HOSPITAL, SPECIFY ONE | | | 103. IF OTHER THAN HOSPITAL, SPECIFY ONE | | | |
|---|---|---|---|---|---|---|---|---|
| Own Residence | | IP / EP/OP / DOA | | | Hospice / Nursing Home/LTC / Decedent's Home [X] / Other | | | |

| 104. COUNTY | 105. FACILITY ADDRESS OR LOCATION WHERE FOUND (Street and number or location) | 106. CITY |
|---|---|---|
| Sonoma | 600 B Salmon Creek Rd. | Bodega |

**CAUSE OF DEATH**

| 107. CAUSE OF DEATH Enter the chain of events — diseases, injuries, or complications — that directly caused death. DO NOT enter terminal events such as cardiac arrest, respiratory arrest, or ventricular fibrillation without showing the etiology. DO NOT ABBREVIATE. | | Time Interval Between Onset and Death | 108. DEATH REPORTED TO CORONER? |
|---|---|---|---|
| IMMEDIATE CAUSE (Final disease or condition resulting in death) (A) → METASTATIC LUNG CANCER | | (A) 6 wks. | YES / NO [X] REFERRAL NUMBER |
| Sequentially, list conditions, if any, leading to cause on Line A. Enter UNDERLYING CAUSE (disease or injury that initiated the events resulting in death) LAST (B) | | (B) | 109. BIOPSY PERFORMED? YES [X] / NO |
| (C) | | (C) | 110. AUTOPSY PERFORMED? YES / NO [X] |
| | | | 111. USED IN DETERMINING CAUSE? YES / NO |

| 112. OTHER SIGNIFICANT CONDITIONS CONTRIBUTING TO DEATH BUT NOT RESULTING IN THE UNDERLYING CAUSE GIVEN IN 107 |
|---|
| None |

| 113. WAS OPERATION PERFORMED FOR ANY CONDITION IN ITEM 107 OR 112? (If yes, list type of operation and date) | 113A IF FEMALE, PREGNANT IN LAST YEAR? YES / NO |
|---|---|
| Transbronchial Biopsy 12/01/2005 | |

**PHYSICIAN'S CERTIFICATION**

| 114. I CERTIFY THAT TO THE BEST OF MY KNOWLEDGE DEATH OCCURRED AT THE HOUR, DATE, AND PLACE STATED FROM THE CAUSES STATED. | | 115. SIGNATURE AND TITLE OF CERTIFIER | 116. LICENSE NUMBER | 117. DATE mm/dd/ccyy |
|---|---|---|---|---|
| Decedent Attended Since | Decedent Last Seen Alive | Wayne Keiser | G28436 | 01/30/2006 |
| (A) mm/dd/ccyy 12/29/2005 | (B) mm/dd/ccyy 01/24/2006 | 118. TYPE ATTENDING PHYSICIAN'S NAME, MAILING ADDRESS, ZIP CODE Wayne Keiser MD, 3555 Round Barn Cir., Santa Rosa CA 95403 | | |

**CORONER'S USE ONLY**

| 119. I CERTIFY THAT IN MY OPINION DEATH OCCURRED AT THE HOUR, DATE, AND PLACE STATED FROM THE CAUSES STATED | | | 120. INJURED AT WORK? | 121. INJURY DATE mm/dd/ccyy | 122. HOUR (24 Hour) |
|---|---|---|---|---|---|
| MANNER OF DEATH: Natural / Accident / Homicide / Suicide / Pending Investigation / Could not be Determined | | | YES / NO / UNK | | |

| 123. PLACE OF INJURY (e.g., home, construction site, wooded area, etc.) |
|---|
| |

| 124. DESCRIBE HOW INJURY OCCURRED (Events which resulted in injury) |
|---|
| |

| 125. LOCATION OF INJURY (Street and number, or location, and city and ZIP) |
|---|
| |

| 126. SIGNATURE OF CORONER / DEPUTY CORONER | 127. DATE mm/dd/ccyy | 128. TYPE NAME, TITLE OF CORONER / DEPUTY CORONER |
|---|---|---|
| | | |

**STATE REGISTRAR**

| A | B | C | D | E | FAX AUTH. # | CENSUS TRACT |
|---|---|---|---|---|---|---|
| | | | | | 4828 | |

CERTIFIED COPY OF VITAL RECORDS    **02/06/2006**

STATE OF CALIFORNIA
COUNTY OF SONOMA } SS    DATE ISSUED

*000491821*

This is a true and exact reproduction of the document officially registered and placed on file in the Vital Statistics office, Sonoma County Department of Health Services.

This copy not valid unless prepared on engraved border displaying the date, seal and signature of Registrar

LOCAL REGISTRAR
SONOMA COUNTY, CALIFORNIA

ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE

**City of Petaluma Police Department**
**Sonoma County**                    ☒ MISDEMEANOR        407064
**NOTICE TO APPEAR**  ☐ Traffic    ☐ Non-Traffic                    (Citation No.)

| Date of Violation | Time | | Day of Week | Case No. |
|---|---|---|---|---|
| 11-20-06 | 2047 | ☐ AM ☒ PM | S M T W T F S | 06 - 8249 |

Name (First, Middle, Last)    ☐ Owner's Responsibility (Veh. Code, § 40001)
EASTON   ATWOOD   STOKES

Address
P.O. BOX   109

| City | State | ZIP Code | Phone No. |
|---|---|---|---|
| BODEGA | CA | 94922 | (707) 332-9679 |

| Driver Lic. No. | State | Class | Comm. | Birth Date |
|---|---|---|---|---|
| D2703056 | CA | C | Yes (No) | 7 / 26 / 83 |

| Sex | Hair | Eyes | Height | Weight | Race | Other Description |
|---|---|---|---|---|---|---|
| M | BRN | HZL | 5'7 | 155 | W | |

| Veh. Lic. No. | State |
|---|---|
| 6E70080 | CA |

☐ COMMERCIAL VEHICLE (Veh. Code, § 15210(b))

| Yr. of Veh. | Make | Model | Body | Color |
|---|---|---|---|---|
| 2000 | TOYOTA | TACOMA | P/u | WH |

☐ HAZARDOUS MATERIAL (Veh. Code, § 353)

Evidence of Financial Responsibility          Y

Registered Owner or Lessee                    ☒ Same as Driver

Address                                       ☒ Same as Driver

City                          State      ZIP Code

Correctable Violation (Veh. Code, § 40610)   ☐ Booking Required     Misdemeanor or Infraction (Circle)

| Yes | No | Code and Section | Description | | |
|---|---|---|---|---|---|
| ☐ | ☒ | 12025 (a)(1) PC- CARRY CONCEALED | | (M) | I |
| ☐ | ☐ | FIREARM IN VEHICLE | | M | I |
| ☐ | ☐ | | | M | I |
| ☐ | ☐ | | | M | I |

| Speed Approx. | P.F./Max Spd. | Veh. Lmt. | Safe | | Radar | Yes | No |
|---|---|---|---|---|---|---|---|
| ➤ | — | — | — | | | Yes | (No) |

| Location of Violation (s) | Beat |
|---|---|
| 2096 LAKEVILLE HWY | I |

| Traffic Conditions | Road | Direction of Travel | | | |
|---|---|---|---|---|---|
| Light   Medium   Heavy | Dry   Wet | NB | SB | EB | WB |

☐ Violations not committed in my presence, declared on information and belief.
I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct.

R. COX

| Arresting or Citing Officer | I.D. No. |
|---|---|
| / / | |
| Date | Name of Arresting Officer, if different from Citing Officer | I.D. No. |

WITHOUT ADMITTING GUILT, I PROMISE TO APPEAR AT THE TIME AND PLACE INDICATED BELOW.
X Signature _[signature]_

WHEN: Date: 12/12/06      Time: 0830   ☒ AM ☐ PM

WHAT TO DO:  FOLLOW THE INSTRUCTIONS ON THE REVERSE.
WHERE: ☒ SUPERIOR COURT
          OF SONOMA COUNTY
          600 ADMINISTRATION DR.
          SANTA ROSA CA 95403
          (707) 565-1100

☐ TRAFFIC COURT
   600 ADMINISTRATION DR
   RM 109J
   SANTA ROSA CA 95403
   (707) 565-2300

☐ JUVENILE COURT
   111 PYTHIAN ROAD NORTH
   SANTA ROSA CA 95409
   (707) 537-6229
   (YOU MUST BRING YOUR PARENTS)

☐ JUVENILE TRAFFIC COURT
   600 ADMINISTRATION DR, RM 109J
   SANTA ROSA CA 95403
   (707) 565-2360

☐ TO BE NOTIFIED
**VIOLATOR COPY**                    SEE REV

Notice to Appear form approved by the Judicial Council of California
Rev. 04-24-05 (Veh. Code, §§ 40500(b), 40513(b), 40522, 40600 Pen. Code, § 853.9)



**STUDENT AFFAIRS AND ENROLLMENT MANAGEMENT**

707.664.2838 • Fax 707.664.3133
www.sonoma.edu/saem/

1801 East Cotati Avenue
Rohnert Park, CA 94928-3609

September 24, 2010

Easton Atwood Stokes
Po Box 109
Bodega, CA 94922

Dear Easton,

Congratulations on the achievement of a major accomplishment in your life. I am pleased to inform you on behalf of Sonoma State University that you have fulfilled all requirements for your Bachelor of Arts degree.

All of us in the division of Student Affairs and Enrollment Management recognize the effort that goes into such an accomplishment. We hope that your experiences at Sonoma State University and the attainment of your degree will open up new opportunities and enrich your life.

Enclosed is your diploma indicating that your Bachelor of Arts in Environmental Studies was conferred on August 20, 2010. If you need an official transcript reflecting your degree, you can request it at any time from the Office of Admissions and Records.

Please accept the University's heartiest congratulations on the attainment of your degree and our best wishes for the future.

Sincerely,

*Matthew Lopez-Phillips*

Matthew Lopez-Phillips
Acting Vice President

**THE CALIFORNIA STATE UNIVERSITY**

Bakersfield • Channel Islands • Chico • Dominguez Hills • East Bay • Fresno • Fullerton • Humboldt • Long Beach • Los Angeles • Maritime Academy
Monterey Bay • Northridge • Pomona • Sacramento • San Bernardino • San Diego • San Francisco • San Jose • San Luis Obispo • San Marcos • Sonoma • Stanislaus



**U.S. Department of Justice**

Federal Bureau of Investigation

Clarksburg, WV 26306
May 4, 2016

Mr. Easton Atwood Stokes
2014 Illinois Avenue
Santa Rosa, CA  95401

SUBJECT:  Firearm Appeal
National Instant Criminal Background Check
System (NICS)

Dear Mr. Stokes:

This letter is in response to your inquiry concerning the denial of your Personal Firearms Eligibility Check (PFEC). Please be advised the state of California does not utilize the NICS system to conduct PFEC.  Therefore, the Appeal Services Team of the FBI Criminal Justice Information Services (CJIS) Division's NICS Section is not required to consider appeals of denials by state or local agencies that does not utilize the NICS system.

Consequently, the AST is unable to process your appeal request.  Any challenges to state or local denials must be directed to the appropriate state or local agency and pursued in accordance with state and local law.  To request the reason for your denial, you may contact the agency listed below:

California Department of Justice
Telephone:  916-227-3749

We apologize for any inconvenience this may have caused.

NICS Section
CJIS Division

# SUBPOENA
## SUPERIOR COURT OF CALIFORNIA, COUNTY OF SONOMA

The People of the State of California to:

EASTIN STOKES                              RE: Peo. v. SALEH KHAZALY
1480 NORTH ST                              D.A. No: DAR-484589
SANTA ROSA, CA 95403

YOU ARE HEREBY COMMANDED to appear before the Superior Court in and for the County of Sonoma
as a witness for the prosecution in the above-entitled action on

May 2, 2005, at 1:00PM                     Purpose:   Jury Trial
                                           Courtroom 7

Please report at this time to the

Office of the District Attorney
Hall of Justice, 600 Administration Drive, Room 212J
Santa Rosa, CA 95403

Additional instructions:

**The date/time for your appearance is subject to change. To avoid inconvenience, please
call (707) 565-2739 anytime after 5 p.m. of the working day prior to the court hearing for a
taped recording of the cases that are canceled.**

NOTICE:  Failure to attend court in response to this subpoena, or in compliance with any agreement
to appear in court at another time or upon such notice as may have been agreed upon with a
representative of the Office of the District Attorney, may be punished as contempt (Section 1331.5 PC).

DATE:  March 2, 2005                       STEPHAN R. PASSALACQUA, DISTRICT ATTORNEY

                                           Sharmalee Rajakumaran
                                           Deputy District Attorney

## IMPORTANT INSTRUCTIONS

1.  Please contact the District Attorney's Office immediately upon receipt of your subpoena.
    BE PREPARED TO GIVE THE CLERK YOUR DATE OF BIRTH AND DRIVER'S LICENSE
    NUMBER. Call the Subpoena Clerk at (707) 565-2059 weekdays between 9 a.m.-noon and
    1:30-5 p.m. Failure to do so may result in personal service of a subpoena.

2.  You may be entitled to witness fees and mileage. Information on claims procedure will be
    available to you at the District Attorney's Office on the date of the court hearing.

3.  Long-term parking is available in the lot north and east of the Hall of Justice on Ventura Avenue.
    Witnesses who park in the 30-, 90-minute or 2 hour zones in the area immediately surrounding the
    Hall of Justice may receive a citation.

4.  Please bring this subpoena with you. Dress appropriately for court: no shorts or tank tops.



SONOMA
STATE UNIVERSITY
1801 East Cotati Avenue
Rohnert Park, CA 94928-3609

SCHOOL OF SOCIAL SCIENCES
Office of the Dean
707.664.2112

Elaine Leeder
MSW, MPH, Ph.D.
Dean of Social Sciences
Stevenson Hall #2078

January 15, 2009

Easton Stokes
1932 Malano court
Santa Rosa, CA  95401

Dear Easton,

Congratulations on achieving the distinction of Dean's List for the **Fall 2008** semester. I know
that making a grade point average of 3.5 or better, while taking a full schedule at the University,
requires not only intelligence, but also hard work and dedication on your part.  In fact, this
semester, only a small percentage of all **Environmental Studies** majors did so.  We are proud of
you for this accomplishment.  If you would like a Dean's List certificate please contact my
assistant Holly Sautner at holly.sautner@sonoma.edu or call her at (707) 664-2112.

The Office of the Dean of Social Sciences is here to give you support if, and when, you
need it. You can find me at Stevenson Hall 2078. Please drop by. I would like to meet
you.

Sincerely,

*Elaine Leeder*

Elaine Leeder
Dean

EL: hms

**THE CALIFORNIA STATE UNIVERSITY**
Bakersfield • Channel Islands • Chico • Dominguez Hills • East Bay • Fresno • Fullerton • Humboldt • Long Beach • Los Angeles • Maritime Academy
Monterey Bay • Northridge • Pomona • Sacramento • San Bernardino • San Diego • San Francisco • San Jose • San Luis Obispo • San Marcos • Sonoma • Stanislaus



|||||| FRONT LINE          ANCONA                    FOGGIA
                          REFUEL IF                 HOME
                          NECESSARY                 BASE

# COMBAT MISSIONS FLOWN
## 1st Lt. BURTON A. STOKES

| Date | Target | Sorties | Time |
|---|---|---|---|
| 12-28-44 | Regensburg, Germany | 1 | 5:30 |
| 12-29-44 | Innsbruck, Austria | 2 | 10:45 |
| 1-20-45 | Linz, Austria | 3 | 17:00 |
| 1-31-45 | Mousbierbaum, Austria | 4 | 22:55 |
| 2-1-45 | Mousbierbaum, Austria | 5 | 27:55 |
| 2-7-45 | Vienna, Austria | 6 | 33:35 |
| 2-9-45 | Circhina, Yugoslavia | 7 | 37:45 |
| 2-14-45 | Vienna, Austria | 8 | 43:25 |
| 2-16-45 | Regensburg, Germany | 9 | 50:25 |
| 2-21-45 | Vienna, Austria | 10 | 55:25 |
| 2-23-45 | Zwiesiel, Germany | 11 | 62:40 |
| 2-27-45 | Augsburg, Germany | 12 | 68:25 |
| 3-1-45 | Mousbierbaum, Austria | 13 | 74:25 |
| 3-8-45 | Verona, Italy | 14 | 79:05 |
| 3-12-45 | Knittelfeld, Austria | 15 | 84:05 |
| 3-14-45 | Ptuj, Yugoslavia | 16 | 88:20 |
| 3-15-45 | Corsica, | 17 | 92:45 |
| 3-19-45 | Landshut, Germany | 18 | 98:45 |
| 3-21-45 | Vienna, Austria | 19 | 104:45 |
| 3-22-45 | Linz, Austria | 20 | 110:15 |
| 3-26-45 | Ybbs, Austria | 21 | 116:00 |
| 4-2-45 | Vienna, Austria | 22 | 122:45 |
| 4-3-45 | Tannach-Stein, Austria | 23 | 126:55 |
| 4-7-45 | Tannach-Stein, Austria | 24 | 131:10 |
| 4-9-45 | Rosenheim, Germany | 25 | 136:20 |
| 4-11-45 | Munich, Germany | 26 | 142:20 |
| 4-12-45 | Arnoldstein, Austria | 27 | 146:35 |
| 4-20-45 | Innsbruck, Rosenheim RR | 28 | 151:50 |
| 4-22-45 | Padova, Area | 29 | 157:20 |
| 4-24-45 | Verona, Italy | 30 | 161:30 |
| 5-1-45 | Salzburg, Austria | 31 | 166:40 |

This is to certify that the above is a true summary of the combat missions flown by BURTON A. STOKES, 1st Lt. Air Corps, while assigned to this Squadron.

Total Combat Missions Flown:  166:40

BURTON A. STOKES
1st Lt. Air Corps
Operations Officer

# Chronology of significant events for Burton Atwood Stokes Sr.

| Year | | |
|---|---|---|
| 1919 | Mar. | 2, Estacadas, OR, Born 11:45 a.m. |
| 1921 | | Gold Hill, OR |
| 1922 | | Medford, OR |
| 1927 | | little brother, Roger died 8/17/27, Grants Pass OR |
| 1929 | | Grants Pass, OR |
| ☆ 1934 | Jun. | mother, Jennette Rainous Stokes died |
| 1936 | | graduated high school |
| 1937 | | McCloud CA, working |
| 1938 | | Salinas, CA, attend Junior College |
| 1940 | - June '41 , San Jose, CA, attend San Jose State College |
| 1941 | Oct. | Salinas CA, drafted |
| | | Missouri, Jefferson Barracks |
| 1941 | Dec. | Denver CO, Armament Training |
| 1942 | Jan. | San Antonio TX, Pre-flight (chicken pox, ex.1 mo.) |
| | Mar. | Chickasha, OK, Primary PT 19 |
| | May | San Antonio, TX, Basic BT14 |
| ☆ | Jun. | San Antonio, TX, Married Marjorie Elizabeth Easton |
| | Jul. - Aug., San Antonio, TX, Advanced AT6 |
| | Sep. | Mather AFB, Sacramento CA, Instructor School |
| | Oct. | Chico, CA, Instructing Basic BT13 |
| 1943 — | Jun. | Chico, CA, Helen born |
| 1944 | May | Ephrata AFB, WA, P39 |
| | Jul. | Van Nuys Airfield. So. CA, P38 |
| | Sep. | Foggia, Italy, until... |
| | Dec. | Salinas, CA, Nancy (Lusana) born |
| 1945 | Sep. | Foggia, Italy, leaving for home          Oct. Arr. Home Salinas |
| 1946 | Jan. | Lukefield, AZ in transition |
| | Mar. | Wright Field, Dayton, OH |
| | Jul. | Dayton, OH, Barbara (Bobbie) (Elaina) born |
| 1947 | | Independance, KA, Operations Officer |
| 1947 - 1948 Chanute AFB, Champaigne, IL, Weather School |
| 1948 - 1950 McChord AFB, A.W.S., AT6 - C47 |
| 1949 | Feb. | Tacoma, WA, Burton Jr. born |
| 1950 - 1952 Elmendorf AFB, Anchorage, AK, C47 - C54 |
| 1952 - 1954 Ent AFB, Colorado Springs, CO, |
| | | A.W.S., Jet Transition T-33, C47 |
| 1954 - 1957 McClellan AFB, Carmichael, CA, A.W.S. RC121, C47 |
| 1957 | | Received college degree, BA in Social Science, Sacramento State |
| 1957 May - 1959 Jun. Kadena AFB, Okinawa, A.W.S. C47 - C54 |
| 1959 | Jun. - 1964 Dec. McGuire AFB, Mt Holly NJ, C47, |
| 1964 | Nov. | 31, Retired from Air Force |
| 1964 | Dec. - 1981 United Air Lines, Aurora, CO |
| 1978 | | drove up the Al-Can Highway with Aunt Helen |
| 1980 | Oct. | 12, Grants Pass, OR, father, Harry Clarke Stokes, died |
| 1981 | Nov. | 31, Retired from United Air Lines |
| 1982 | Nov. | Indian Valley, San Miguel, CA, final move. |
| 1983 | | drove up the Al-Can Highway with Weavers |
| ⟨1985⟩ | | Circled the U.S., driving the perimiter mostly, 2 months |
| 1988 | Apr. | 4, Anchorage, AK, sister Louise DeVoe died. |
| 1988 | Jul. | to Alaska to get Motorhome, drove back. |
| xxxx | | dates of travel Ireland with Lusana, Simon, |
| 1992 | Jul. | carravaned from IV to Inuvick, 4 weeks, with family |

1989 ?

progressing rank:

| Year | Rank | | |
|---|---|---|---|
| 1942 | Sept. | 2nd LT, | San Antonio Texas |
| 1943 | | 1st LT, | Chico |
| 1945 | | Capt. | Italy |
| 1951 | | Major | Alaska, Elmendorf AFB |
| 1963 | | Lt Col. | New Jersey, McGuire AFB |

2005 - Feb 18 marjie died

2006 - B A died Burton died



SHIELD *of* FREEDOM

# NOUNCEMENT OF RETIREMEI

## FROM THE UNITED STATES AIR FORCE

ouncement is made of the retirement of LIEUTENANT COLONEL BURTON A. STOKES, A06635
e 30 November 1964, after 23 years Active Federal Military Service.

tenant Colonel Stokes was born 2 March 1919 at Estacada, Oregon. He received hi
on after completion of Aviation Cadet training on 6 September 1942. During Worl
he served in the European Theater of Operation as a P-38 pilot. He completed 31
issions with 167 combat hours from November 1944 to April 1945. He also has ser
in Alaska from October 1950 to August 1952 and in Okinawa from May 1957 to July

g his military service, Lieutenant Colonel Stokes has received the following
ons and Awards:

        Distinguished Flying Cross with 3 Bronze Oak Leaf Clusters
        Air Medal with 2 Bronze Oak Leaf Clusters
        American Defense Service Medal
        American Campaign Medal
        European-African-Middle Eastern Campaign Medal with 3 Bronze
           Service Stars
        World War II Victory Medal
        National Defense Service Medal
        Air Force Longevity Service Award Ribbon with 1 Silver Oak
           Leaf Cluster

ghout his military service, Lieutenant Colonel Stokes has given faithful and
ious service to his country. His standard of conduct and leadership has prov
ent example for those who have been associated with him during his military







# The Younger Set



**Bright-Eyed Heartbreaker**—It's plain to see in the family of Air Force Capt. Burton [?] Stokes, top right, Burton Jr. holds the highest rank. Captain Stokes, who is stationed at McChord Field, holds daughter, Barbara, 2½. At center is pig-tailed Helen, 5½, Nancy, 4, and Mrs. Stokes. Below, [?]½-week-old Diane Ruth Lyster, daughter of Mr. and Mrs. H. D. Lyster, gravely inspects the toy co[?] [?] daddy holds up for her approval. Mrs. Lyster and Mrs. Kraucunas (opposite) are sisters. Lowe[?] [?] Kathryn Lynn, 8 weeks old, flirts with her fond parents, the Frank W. Farrons.—Photos by Rich[?]

## Receives Wings







from this region class of military st training center. ard F. Heym, Port- kes, Grants Pass; , Eugene; below, Sergeant John M. t Donald W. Hed- sh.

Lt. Burton A. Stokes received his silver wings from Kelly field on August 28. Assignment to active duty will follow. Seven advanced flying schools of the Gulf Coast Army air forces training center that day graduated the largest class of military pilots since their inception. Lt. Stokes is the son of Mr. and Mrs. Harry Stokes of this city. Following student pilot tradition, mothers, wives and sweethearts of the graduating pilots were named "honorary members" of the class and were mailed miniature silver wings. (Courier Engraving)





St.JosephHealth

Annadel Medical Group

SJH-Fountaingrove

3555 Round Barn Circle
Santa Rosa, California 95403
7075281050 t
7075253874 f

Page **1** of **2**

Progress Note

Patient: STOKES, EASTON
Account#: 107093
DOB: 07/26/1983

Mr. Stokes returns for a continued followup of locally-advanced colon cancer in the setting of familial adenomatous polyposis (FAP), here to review recent PET/CT scan. The study from 03/21/12 was taken as a restaging/baseline study having completed 12 cycles of adjuvant FOLFOX. The scan shows several patchy areas of mild labeling in the periportal region of the liver that is likely artifact from the adjacent duodenal loop. Since the appearance does appear different from a prior study, a followup diagnostic CT scan is recommended. On the CT portion of study, however, there were no significant interval changes, including benign presacral postoperative scarring and stable soft tissue changes in the suture lines. Diffuse subthreshold labeling was diminished to an SUV of 2.3 compared to 3.2 at a prior study. A right lower quadrant ostomy is again noted, as well as a Port-A-Cath.

From a clinical standpoint, Mr. Stokes feels fairly well and denies any new significant changes to his health. He does admit to some mild tingling/numbness of his fingertips; however, these are not inhibiting him from completing all activities of daily living. He denies headaches, fever, chills, night sweats, new lumps or bumps, new pains or aches or intercurrent febrile illness. A 34-point review of systems was noted and discussed. Finally, he inquires as to when he might be able to undergo ileostomy takedown. He tentatively has operation scheduled for April 20th.

PHYSICAL EXAMINATION:
GENERAL: He is a well-appearing, pleasant, cheerful gentleman, in no acute distress. Performance status is 90%.
VITAL SIGNS: Temperature 97.4, blood pressure 113/63, heart rate of 68.
HEENT: Unremarkable.
CHEST: Clear to auscultation bilaterally.
HEART: Regular rate and rhythm. No gallops, murmurs, or rubs.
LYMPH NODES: No palpable peripheral adenopathy.
ABDOMEN: Soft, nontender without hepatosplenomegaly or mass. A right lower quadrant ostomy is present and intact and functioning.
EXTREMITIES: No clubbing, no cyanosis, or edema.
NEUROLOGIC: He is alert and oriented x 3 with a nonfocal examination.
SKIN: Warm, clear, and dry without evidence of wound, rash, or infection.

IMPRESSION AND PLAN:
A pleasant 28-year-old gentleman in previously excellent health, now diagnosed with a stage IIIA (T2, N1b, Mx) colon cancer, status post total colectomy and temporary ileostomy for innumerable polyps, consistent with familial adenomatous polyposis, status post treatment with adjuvant FOLFOX x 12.

I am very pleased that Mr. Stokes is able to complete 12 cycles of adjuvant of FOLFOX without significant complications, despite his last cycle administered in the setting of relative thrombocytopenia. He experienced no significant bleeding/bruising. I discussed with him the results of his recent restaging/baseline PET/CT scan demonstrating no obvious evidence of recurrent/residual disease. There are some patches of mild labeling in the periportal region of the liver that on fused images appears to be an artifact from an adjacent duodenal loop. Nevertheless, because the appearance is different from prior study, a followup diagnostic CT scan is recommended with IV contrast. Upon discussing this option with Mr. Stokes, he politely declines the followup study. Instead, he will undergo followup CT of the chest, abdomen and pelvis with IV contrast in 6 months' time. We also discussed his upcoming operation for ileostomy takedown. I believe he is healthy enough to undergo this procedure. Upon his next

Electronically signed by Dr. Wes Lee

EASTON A STOKES
MRN: 1810137
DOB: Jul 26, 1983
DOS: Apr 12, 2012

Page **2** of **2**

visit, I will inquire whether or not he wishes to have his Port-A-Cath removed as well. Return to clinic in 6 months' time after a CT scan featuring quadphasic scan of the liver.

Dictated by: LEE, WES

cc:     CARLO FERRARONE PA
         EDWARD KIM MD
         PAUL HORNBERGER MD

Electronically signed by Dr. Wes Lee



St.JosephHealth ✚   SJH-Fountaingrove

Annadel Medical Group

3555 Round Barn Circle
Santa Rosa, California 95403
7075281050 t
7075253874 f

Page **1** of **2**

progress note

STOKES, EASTON A
Patient Acct.: 107093
DOB: 07/26/1983

01/10/2012:

SUBJECTIVE
Mr. Stokes returns for continued follow-up of locally-advanced colon cancer in the setting of familial adenomatous polyposis, here to initiate cycle 10 adjuvant FOLFOX. He was last seen in clinic on 12/27/11 at which time he underwent cycle 9 treatment despite a relatively low platelet count of 69. He was able to undergo therapy without any issues. He specifically denies any bleeding/bruising. Overall, he feels improved and continues to have excellent appetite and gain weight. He otherwise denies headaches, fevers, chills, night sweats, new lumps or bumps, new pains or aches, or intercurrent febrile illness. He still has pain involving his left finger. This has spread to another finger in his left hand. There is however no obvious swelling. He is not taking any pain medicines or antiinflammatories. The 34-point review of systems was noted and discussed.

PHYSICAL EXAMINATION
GENERAL: He is a well appearing, pleasant gentleman in no acute distress.
VITAL SIGNS: Performance status is 90-95 percent. Temperature is 98.1 degrees, blood pressure 99/60, heart rate 65, and weight is 69.4 kg.
HEENT: Unremarkable.
CHEST: Clear to auscultation bilaterally.
CARDIAC: Heart has a regular rate and rhythm with no gallops, murmurs, or rubs.
NODES: No palpable peripheral adenopathy.
ABDOMEN: Soft and non-tender without hepatosplenomegaly or masses.
EXTREMITIES: No clubbing, cyanosis, or edema.
NEUROLOGIC: Alert and oriented x 3 with a non-focal examination.
SKIN: Warm, clear, and dry without evidence of wound, infection, or rash.

LABORATORY
WBC 3.4, ANC 2.12, H&H 14.6 and 43.2, and platelets are 46.

IMPRESSION & PLAN
Pleasant 28-year-old gentleman in previously excellent health, now with diagnosis of stage IIIA (T2, N1b, Mx) colon cancer status post total colectomy with temporary ileostomy for innumerable polyps, consistent with familial, adenomatous polyposis, undergoing treatment with adjuvant FOLFOX.

Overall, I am pleased with how well Mr. Stokes has tolerated FOLFOX to date, although he is exhibiting signs of bone marrow stress by progressive thrombocytopenia. With a platelet count of 46, I will delay cycle 10 adjuvant FOLFOX by one week. He understands to call me should he develop any significant bleeding/bruising. I do not believe his thrombocytopenia is due to any other cause then cytotoxic effects on his bone marrow from chemotherapy. My hope is that his platelet count will arise to number higher than 60 to allow administration of cycle 10 chemotherapy next week. I will try my best to deliver 12 cycles overall of FOLFOX even if the cycles need to be lengthened to once every three weeks. If the cycles need to be lengthened to once every four weeks, I will omit the remaining further cycles.

Electronically signed by Dr. Wes Lee

EASTON A STOKES
MRN: 1810137
DOB: Jul 26, 1983
DOS: Jan 10, 2012

Page 2 of 2

cc:  Edward Kim, M.D.
Carlo Ferrarone, PA
Paul Hornberger, M.D.

Dictated by:  Wes S Lee, M.D. on 01/10/2012 15:52:23
Transcribed by:  lr on 01/11/2012 06:41:18
Job ID:  323525Electronically signed by: Wes S. Lee, M.D. on 01/16/2012 17:26:12.

Electronically signed by Dr. Wes Lee



St.JosephHealth

Annadel Medical Group

SJH-Fountaingrove

3555 Round Barn Circle
Santa Rosa, California 95403
7075281050 t
7075253874 f

Page 1 of 2

progress note

STOKES, EASTON A
Patient Acct.: 107093
DOB: 07/26/1983

02/21/2012:

SUBJECTIVE
Mr. Stokes returns for continued follow-up of locally-advanced colon cancer in the setting of familial adenomatous polyposis, here to initiate cycle 12 of adjuvant FOLFOX.  He was last seen in clinic on 02/07/12 at which time he underwent cycle 11 treatment.  This treatment had been held one week due to relative thrombocytopenia.  His platelet count however improved from 70 to 115.  In the interim, he denies any new significant changes to his health.  He does admit to periodic epistaxis, though he describes these episodes of bleeding as non-severe.  It tends to happen mostly only when he blows his nose.  He also complains of feeling "poorly" for a few days with his initial infusion.  He also complains of cold sensitivity, but no lingering peripheral neuropathy.  He otherwise denies headaches, fevers, chills, night sweats, new lumps or bumps, new pains or aches, or intercurrent febrile illness.  He recalls that his surgeon, Dr. Kim, plans to see him in the next four or so weeks for ileostomy takedown.  He wonders if he will be ready for this operation by then.
The 34-point review of systems was noted and discussed.  Lastly, he was able to enjoy a triple IPA at the Russian Brewery last visit.

PHYSICAL EXAMINATION
GENERAL:  He is a well appearing, pleasant gentleman in no acute distress.
VITAL SIGNS:  Performance status is 90 percent.  Temperature is 97.5 degrees, blood pressure 112/60, heart rate 71, and weight is 69.5 kg.
HEENT:  Unremarkable.
CHEST:  Clear to auscultation bilaterally.
CARDIAC:  Heart has a regular rate and rhythm with no gallops, murmurs, or rubs.
NODES:  No palpable peripheral adenopathy.
ABDOMEN:  Soft and non-tender without hepatosplenomegaly or masses.
EXTREMITIES:  No clubbing, cyanosis, or edema.
NEUROLOGIC:  Alert and oriented x 3 with a non-focal examination.
SKIN:  Warm, clear, and dry without evidence of wound, infection, or rash.

IMPRESSION & PLAN
Pleasant 28-year-old gentleman in previously excellent health, now with diagnosis of stage IIIA (T2, N1b, Mx) colon cancer status post total colectomy with temporary ileostomy for innumerable polyps, consistent with familial adenomatous polyposis, undergoing treatment with adjuvant FOLFOX.

Despite a relatively low platelet count of 66, I believe his platelet count is high enough for us to begin his 12th and final cycle infusion.  Part of this is that the platelet count typically does not nadir much more below half of what his starting platelet count is on the FOLFOX regimen.  He understands however that there is some risk involved.  He also understands to stay away from high-risk activities that may lead to trauma or any bumping of his head.  He will call me should he develop any worrisome signs of worsened bleeding, including the presence of petechia/purpura.  Overall however, he wishes to proceed forth rather than wait one more week.  I will have him return after restaging/baseline PET/CT scan in approximately four weeks' time.  He will contact Dr. Kim to reschedule his ileostomy take down for after the PET/CT scan.

Electronically signed by Dr. Wes Lee

EASTON A STOKES
MRN: 1810137
DOB: Jul 26, 1983
DOS: Feb 21, 2012

Page **2** of **2**

cc:  Edward Kim, M.D.
Carlo Ferrarone, PA
Paul Hornberger, M.D.

Dictated by:  Wes S Lee, M.D. on 02/21/2012 11:43:18
Transcribed by:  lr on 02/22/2012 09:02:37
Job ID:  328868Electronically signed by: Wes S. Lee, M.D. on 03/17/2012 09:40:53.

Electronically signed by Dr. Wes Lee



**St.JosephHealth**
**Annadel Medical Group**

SJH-Fountaingrove

3555 Round Barn Circle
Santa Rosa, California 95403
7075281050 t
7075253874 f

Page **1** of **2**

progress note

STOKES, EASTON A
Patient Acct.: 107093
DOB: 07/26/1983

01/31/2012:

SUBJECTIVE
Mr. Stokes returns for continued follow-up of locally-advanced colon cancer in the setting of familial adenomatous polyposis, here to initiate cycle 11 adjuvant FOLFOX. He was last seen in clinic on 1/18/2012 when he received cycle 10 FOLFOX I had delayed 1 week for thrombocytopenia. His chemotherapy went well. He denies any side effects to treatment, including bleeding/bruising, significant fatigue, decreased appetite, or weight loss. He again mentions some nausea/vomiting as well as numbness of his left toe and fingertips.

A 34-point review of systems was noted and discussed.

PHYSICAL EXAMINATION
GENERAL: He is a well-appearing pleasant young gentleman in no acute distress. Performance status is 90%.
VITAL SIGNS: Temperature is 98.0 degrees, blood pressure 100/54, heart rate 66, and weight is 68.8 kg.
HEENT: Unremarkable.
CHEST: Clear to auscultation bilaterally.
HEART: Regular rate and rhythm with no gallops, murmurs, or rubs.
LYMPH NODES: No palpable peripheral adenopathy.
ABDOMEN: Soft and non-tender without hepatosplenomegaly or masses.
EXTREMITIES: No clubbing, cyanosis, or edema.
NEUROLOGIC: He is alert and oriented x 3 with a non-focal examination.
SKIN: Warm, clear, and dry without evidence of wound, rash, or infection.

LABORATORY
WBC 3.4, ANC 2.0, H&H 14.6 and 42.2, and platelets are 70.

IMPRESSION & PLAN
Pleasant 28-year-old gentleman in previously excellent health, now with diagnosis of stage IIIA (T2, N1b, MX) colon cancer status post total colectomy with temporary ileostomy for innumerable polyps, consistent with familial adenomatous polyposis, undergoing treatment with adjuvant FOLFOX.

Although his FOLFOX continues to be fairly well tolerated from a clinical standpoint, hematologically, he again exhibits fairly significant thrombocytopenia with a platelet count of 70. We had an extended discussion regarding the rationale, risks, and benefits of pushing forward with cycle 11 therapy now versus waiting 1 week. In the end, we elected to be conservative and wait 1 week for his platelet count to rise. As such, he will return to clinic in 1 week's time for consideration of cycle #11 FOLFOX. This will likely occur should his platelet count be above 90. My hope, however, is that his platelet count will rise to greater than 100 allowing treatment with cycle 11 and then cycle 12 two weeks later to maintain dose intensity. Since cycle 12 will be his final cycle of chemotherapy, I will be more willing to treat him with a low platelet count in the 70 range.

cc: Edward Kim, M.D.
Carlo Ferrarone, PA

Electronically signed by Dr. Wes Lee

EASTON A STOKES
MRN: 1810137
DOB: Jul 26, 1983
DOS: Feb 03, 2012

Page **2** of **2**

Paul Hornberger, M.D.

Dictated by:  Wes S Lee, M.D. on 02/03/2012 09:17:26
Transcribed by:  sb on 02/06/2012 19:22:14
Job ID:  326997Electronically signed by: Wes S. Lee, M.D. on 02/08/2012 20:50:35.

Electronically signed by Dr. Wes Lee

1   Timothy Kelly, Esq.   SBN: 304840
     1403 Spyglass Parkway
2   Vallejo, CA 94591
     707-570-7507
3   Fax: (888) 828-0728
     tskelliot@gmail.com
4

5   Attorney for Plaintiff
     Easton Stokes
6

7                 **SONOMA COUNTY SUPERIOR COURT**

8

9

| | |
|---|---|
| EASTON STOKES | CASE NO.: |
| vs. | |
| THE UNITED STATES DEPARTMENT OF JUSTICE, WILLIAM BARR, individually and as Attorney General of the United States, THE U.S. BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES (ATF); THOMAS E. BRANDON individually and as Director of ATF; THE FEDERAL BUREAU OF INVESTIGATION; Christopher Wray individually and as Director of the Federal Bureau of Investigation; THE STATE OF CALIFORNIA, Xavier Becerra, individually and acting as Attorney General of the State of California, THE SONOMA COUNTY SHERIFF'S OFFICE, ROB GIORDANO, individually and as Sheriff of Sonoma County, and THE STATE OF CALIFORNIA, GAVIN NEWSOM, individually and as Governor of the State of California, | COMPLAINT/REQUEST FOR A HEARING AND DECLARATORY RELIEF |
| Defendants. | |

1

COMPLAINT/REQUEST FOR A HEARING AND DECLARATORY RELIEF

1   NOW COMES Plaintiff, Easton Stokes, by and through his attorney, Timothy Kelly,

2   requesting the following from the Honorable Court: a decision on whether or not plaintiff can

3   contest a prior 5250 designation that he received 18 years ago. If such a hearing is available,

4   plaintiff requests that the court schedule one at its earliest convenience.

5       A real and present controversy has arisen between Plaintiff Stokes on the one hand and

6   Defendants California Department of Justice and Attorney General Xavier Becerra on the

7   other hand in that Defendants contend there is a state court proceeding available to Plaintiff

8   even after all these years to seek relief from the certification of Plaintiff for intensive

9   treatment pursuant to Welfare and Institutions Code section 5250 and/or accompanying

10  lifetime firearms prohibition pursuant to 18 U.S.C. 922(g).  Plaintiff denies there is an

11  available state court proceeding or, in the alternative, is not aware of such proceeding and has

12  been unable to obtain information thereof from Defendants, leaving Plaintiff no recourse for

13  seeking relief from the lifetime firearms prohibition except for the pending federal case

14  of Stokes v. DOJ, case no. 3:19-CV-04613 in the Northern District of California.

15      The federal judge in the above mentioned case has issued an order on October 22nd, 2020

16  (see attached Exhibit A) instructing plaintiff to seek a hearing in his home county superior

17  court, seeking to clarify the respective rights of the parties, and obtain a hearing regarding the

18  removal of his 5250 designation if possible. A declaration of rights and obligations of the

19  parties is sought by Plaintiff and is appropriate in this action not only to establish the rights

20  and obligations of the parties for the conduct occurring but to enable the parties to know their

21  rights and obligations going forward and with respect to other similarly situated individuals.

22

23

24
                                    2
            COMPLAINT/REQUEST FOR A HEARING AND DECLARATORY RELIEF

## STATEMENT OF FACTS

1. Plaintiff Easton Stokes initiated the action in federal court to uphold the Second Amendment and to ensure that the mentally healthy, whom the federal government bars from firearm possession due to any previous psychiatric hold, have a forum in which they may present evidence of their fitness to have their firearm rights restored, as contemplated under the federal Gun Control Act.

2. Federal law gives persons barred from gun possession from an involuntary psychiatric commitment the right to restore their gun rights if those persons are not a danger to the public and it is in the public interest. The law provides that such individuals can apply to the United States Attorney General, and if he or she denies the application, such persons can seek judicial review of the decision.

3. However, Congress delegated to the states the responsibility to establish "relief from disabilities programs" to restore gun rights to such individuals.  Some states have implemented programs to carry out the federal law to allow persons with a prior involuntary mental health commitment the opportunity to demonstrate their well-being and lack of danger.  Other states have not.

4. California is a state without a relief from disabilities program.  Thus, California citizens, who at any time of their lives were committed to a mental health hospital pursuant to Welfare and Institutions Code section 5250, are forever banned from restoring their Second Amendment rights.

5. Easton Stokes, a citizen of California, sought mental health treatment during his last year of high school.  Although he voluntarily sought care, and numerous witnesses

3

COMPLAINT/REQUEST FOR A HEARING AND DECLARATORY RELIEF

1    can attest to this, his treatment was somehow deemed an involuntary hold under

2    California Welfare and Institutions Code sections 5150 and 5250.  Mr. Stokes

3    continued his treatment past the statutory 14-day hold, waived his right to a judicial

4    hearing, and he was apparently certified under Welfare and Institutions Code section

5    5250 by the attending staff at Oakcrest hospital in Santa Rosa, California.

6.   After being treated for sixteen days, California, Mr. Stokes went on to lead a healthy,
     productive life.  In the past eighteen years, Mr. Stokes has had no further mental
     health episodes. He is gainfully employed, respected in the community and widely
     considered to be a responsible, reliable and upstanding citizen.

7.   Mr. Stokes has a close relationship with his 101 year old grandfather, who is a WWII
     veteran who wishes to leave his service weapon and a family rifle from the 1800s to
     Mr. Stokes after his death. At present, it would be illegal for Mr. Stokes to receive
     these family heirlooms.

8.   Under California law, the Welfare and Institutions Code section 5150, and 5250 holds
     and certification resulted in a 5-year firearm ban. However, the Welfare and
     Institutions Code section 5250 certification rendered Mr. Stokes ineligible under
     federal law for the remainder of his life to possess a firearm.

9.   Mr. Stokes believes that he is currently without a forum or any other recourse to
     apply for restoration under federal law because California has not created a relief
     from disabilities program.  This is a violation of his rights to bear arms under the
     Second Amendment, and his rights to Due Process of law under the Fifth and
     Fourteenth Amendments.

4

COMPLAINT/REQUEST FOR A HEARING AND DECLARATORY RELIEF

10. If the Sonoma County Superior Court is able to hold such a hearing for Plaintiff to seek review and relief from the 5250 designation, Plaintiff would like to schedule such a hearing at the court's earliest opportunity and submit evidence in support of his request for relief.

11. On October 29th, 2020, State of California and Xavier Becerra, Attorney General of California, provided Plaintiff with notice that they do not wish to participate in the state court action contemplated by the Court's order. Plaintiff is willing to dismiss them if the state court rules that they are not a required party.

## **PRAYER FOR RELIEF**

Plaintiff requests:

1) An answer at the court's earliest convenience as to his right to a hearing.

2) Injunctive relief to expunge the 5250 certification on his record due to the fact that his commitment was voluntary.

3) Judicial order to the state DOJ and any other entities to remove the notice of commitment pursuant to a 5250 from plaintiff's record.

4) A declaration that there is no firearms prohibition.

Respectfully Submitted,

11-4-20

Date:

Easton Stokes

Plaintiff

5

COMPLAINT/REQUEST FOR A HEARING AND DECLARATORY RELIEF

11-4-2020

Date:

Timothy Kelly

Attorney for Plaintiff

List of Attachments:

A – Federal Court Order

B – Petition

C – Letter from State Defendants

D – Declaration from Plaintiff's attorney Timothy Kelly and Plaintiff Easton Stokes.

6

COMPLAINT/REQUEST FOR A HEARING AND DECLARATORY RELIEF

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

Exhibit A – Federal Court Order

SUPPORTING EXHIBITS

1

2

3

4

5

6                           UNITED STATES DISTRICT COURT

7

8                          NORTHERN DISTRICT OF CALIFORNIA

9

10   EASTON STOKES,

11            Plaintiff,                                 No.  C 19-04613 WHA

12       v.

13   UNITED STATES DEPARTMENT OF JUSTICE,           **ORDER FOR FURTHER**
                                                    **DISCOVERY AND**
14   WILLIAM BARR, individually and as Attorney General   **DEVELOPMENT OF THE**
     of the United States, THE U.S. BUREAU OF       **RECORD**
15   ALCOHOL, TOBACCO, FIREARMS AND
     EXPLOSIVES (ATF), REGINA LOMARDO,
16   individually and as Acting Director of ATF, THE
     FEDERAL BUREAU OF INVESTIGATION,
17   CHRISTOPHER WRAY, individually and as Director of
     the Federal Bureau of Investigation, STATE OF
18   CALIFORNIA, XAVIER BECERRA, individually and
     acting as Attorney General of the State of California, and
19   THE SONOMA COUNTY SHERIFF'S OFFICE,
     MARK ESSICK, individually and as Sheriff of Sonoma
20   County,

21            Defendants.

22

23

24       This action is probably foreclosed by *Mai v. United States*, 952 F.3d 1106 (9th Cir.

25   2020).  *Mai*, however, involved a state-court adjudication involuntarily committing that

26   would-be gun owner based on a finding of both mental illness and dangerousness.  The instant

27   action never had a state-court adjudication.  Conceivably, this might make a difference.  Our

28   Attorney General of California represents that there appears to be a state court proceeding

1    available to plaintiff even after all these years to seek relief from the consequences of the

2    commitment of our plaintiff eighteen years ago.  He is the Attorney General and he should

3    know.  It is unclear to the undersigned judge whether any such state court proceeding is

4    available, but we should find out.

5        Accordingly, to test out this possibility and give plaintiff the benefit of this relief before

6    ruling on defendants' pending motions, plaintiff shall have **TWO WEEKS** from today to file a

7    petition in California Superior Court for any and all such relief as may be available, including

8    without limitation:

9               • the extent to which the original commitments were involuntary,

10              • the extent to which plaintiff willingly consented to original commitments,

11              • whether relief from any disability should now be granted to plaintiff based on his

12                adult life so that he may possess the firearms in question, and

13              • any other relief or findings which any party in this action has suggested might be

14                available in the superior court.

15       To be clear, this order does not claim that any such relief is available.  But the suggestion

16   that it is available has been spurned and has become an important point in this litigation.  This

17   order requests that the issue be decided as expeditiously as possible by the superior court and

18   directs the parties to assist the superior court judge in expediting the litigation.

19       **WITHIN SEVEN CALENDAR DAYS**, all defendants within this case shall advise plaintiff's

20   counsel, in writing, whether or not they wish to participate in litigation in state court.  If any

21   such party requests participation, then plaintiff's counsel shall join them as a defendant.

22   Plaintiff shall have to figure out who the proper defendants are.  Plaintiff's counsel is not

23   bound by any request to be excluded.

24       **BY NOON ON NOVEMBER 5**, plaintiff's counsel shall file herein a declaration under oath

25   from plaintiff that clarifies with precision the following:

26         1. The specific firearms in question, associated accessories such as magazines,

27            grenade launchers, telescopic sights and ammunition.

28         2. The full educational resume of plaintiff.

United States District Court
Northern District of California

3. The full employment history of plaintiff.

4. Any arrests and/or convictions of plaintiff.

5. Plaintiff's litigation history, including civil cases.

6. The extent to which, if at all, any employer, neighbor or other person has ever suggested to plaintiff that he is mentally or emotionally ill.

7. The full extent to which there has been any history of mental illness in his family.

8. The full extent to which, if at all, plaintiff has had any connection with gangs or persons convicted of any felony.

9. The full extent to which plaintiff has ever undergone medical or professional treatment for any form of mental or emotional problems.

10. The extent to which, if at all, plaintiff has ever been accused of domestic violence, including by a spouse, child, or a partner. This part of the declaration may be submitted under seal for the time being.

11. The names and addresses of persons plaintiff believes could vouch for his mental and emotional stability with respect to possession of firearms.

12. The extent to which plaintiff seeks to possess firearms in question for hunting, versus resale, versus target practice, versus self-protection, versus any other use. This should be done on a firearm-by-firearm basis.

13. Any other circumstances that bear upon the mental or emotional stability of the plaintiff.

WITHIN THREE WEEKS of this declaration, having been served and filed, defense counsel shall depose plaintiff with respect to the declaration and any other related subjects.

All parties shall have until JANUARY 29, 2021, to complete any other discovery. The Court would like to see all records of the fourteen-day commitment as well as the 72-hour commitment. The Court is of the view that even if Oakcrest is closed, those records could be in storage somewhere. Track them down. Do not delay. This search should be started immediately.

3

1    The parties shall supplement the record on the pending motions with respect to all of the

2    foregoing **BY FEBRUARY 11, 2021**. If the superior court proceeding has not been completed by

3    then, please advise.  But still complete the record with respect to everything else.

4    **IT IS SO ORDERED.**

5

6    Dated:  October 22, 2020.

7

8                                                              _____

9                                                              WILLIAM ALSUP
                                                               UNITED STATES DISTRICT JUDGE

10

11

United States District Court
Northern District of California
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                                4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

# B – Petition

SUPPORTING EXHIBITS

STATE OF CALIFORNIA
BOF 4009C (Rev. 01/2020)

DEPARTMENT OF JUSTICE
PAGE 1 of 2





## BUREAU OF FIREARMS
# REQUEST FOR HEARING
## FOR RELIEF FROM FIREARMS PROHIBITION

Upon or after discharge from a mental health facility, any person subject to firearms prohibitions pursuant to Welfare and Institutions Code (WIC) section 8103, subdivision (f)(1), may request a hearing from the superior court of his or her county of residence to determine whether his or her right(s) to own, possess, control, receive, or purchase firearms will be restored by court order. The court shall set a hearing date within 60 days of receipt of this request.

| FOR COURT USE ONLY |
| --- |
| |
| |
| CASE NUMBER: |

TO: _____*Sonoma*_____ COUNTY SUPERIOR COURT.
*County of Residence*

☐  I hereby request a hearing for restoration of my right(s) to own or possess firearms.

☐  I hereby request a confidential private hearing for restoration of my right(s) to own or possess firearms.

Pursuant to WIC section 8103, subdivision (f)(5), you have the right to request a confidential private hearing that is not open to the public. This hearing will only be attended by persons relevant to your case unless the court finds that the public interest would be better served by conducting the hearing in public.

| Stokes | Easton | Atwood | |
| --- | --- | --- | --- |
| Last Name | First Name | Middle Name | |

| 11/26/83 | | | |
| --- | --- | --- | --- |
| Date of Birth | CA Identification or Driver License Number | Social Security Number | |

| 2014 Illonois Ave | Santa Rosa | CA | 95401 |
| --- | --- | --- | --- |
| Address | City | State | Zip Code |

| Oakcrest | | | est. 3/12/2002 |
| --- | --- | --- | --- |
| Mental Health Facility | | | Discharge Date |

| | | | |
| --- | --- | --- | --- |
| Address | City | State | Zip Code |

*I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.*

_____
*Signature of Requestor*

11-4-20
*Date*

## Please forward completed form to the superior court of your county of residence.

*Distribution: (1) Superior Court; (1) Mental Health Facility; and (1) Requestor*

STATE OF CALIFORNIA
BOF 4009C (Rev. 01/2020)

DEPARTMENT OF JUSTICE
PAGE 2 of 2



BUREAU OF FIREARMS
**REQUEST FOR HEARING**
**FOR RELIEF FROM FIREARMS PROHIBITION**



# Privacy Notice

As Required by Civil Code § 1798.17

**Collection and Use of Personal Information:** The Division of Law Enforcement, Bureau of Firearms in the Department of Justice collects the information on this request pursuant to Welfare and Institutions Code section 8103, subdivision (f)(5). The Bureau of Firearms uses this information to establish patient request for hearing relief from firearms prohibition. In addition, any personal information collected by state agencies is subject to the limitations in the Information Practices Act and state policy. The Department of Justice's general privacy policy is available at http://oag.ca.gov/privacy-policy.

**Providing Personal Information:** All personal information on this request is mandatory. Failure to provide the mandatory personal information will result in your request not being processed.

**Access to Your Information:** You may review the records maintained by the Division of Law Enforcement, Bureau of Firearms in the Department of Justice that contain your personal information, as permitted by the Information Practices Act. See below for contact information.

**Possible Disclosure of Personal Information:** In order to establish patient request for hearing relief from firearms prohibition, we may need to share the information you provide us with any Bureau of Firearms representative or any other person designated by the Attorney General upon request. The information you provide may also be disclosed in the following circumstances:

- With other persons or agencies when necessary to perform their legal duties, and their use of your information is compatible and complies with state law, such as for investigations, licensing, certification, or regulatory purposes;

- To another government agency as required by state or federal law.

**Contact Information:** For questions about this notice or access to your records, you may contact the Staff Services Analyst in the Customer Support Center at (916) 227-7527, via email at firearms.bureau@doj.ca.gov, or by mail at P.O. Box 168048, Sacramento, CA 95816-8048.



## CALIFORNIA DEPARTMENT OF JUSTICE
### BUREAU OF FIREARMS



## CERTIFICATION OF FIREARMS PROHIBITION

I, Angel Tuyen, do certify and attest under penalty of perjury that I am the legal custodian of records in the Mental Health Firearm Prohibition System maintained by the California Department of Justice (the Department), Bureau of Firearms. This file contains records of individuals lawfully prohibited from possessing, receiving, owning, or purchasing a firearm.

**On July 31, 2020, a diligent search of the Mental Health Firearms Prohibition System was conducted for STOKES, EASTON (DOB: 07/26/1983)**.

The search revealed the following records:

| **Report Number** | **Date Prohibited** |
|---|---|
| 702063818 | 03/12/2002 |

I certify that the attached records are complete, true and exact copies. This certification was prepared by personnel of the Department in the ordinary course of business on the date stated above.

*Angel Tuy*

ANGEL TUYEN
Custodian of Records
Bureau of Firearms

CALIFORNIA DEPARTMENT OF JUSTICE
BUREAU OF FIREARMS
COMPLETE TRUE AND CORRECT COPY

**JUL 31 2020**

*Angel Tuy*

CUSTODIAN OF FIREARMS RECORDS

4W1WGH9JQ4C.IQ

RE: QP.FCN/1860208400205                    DATE: 2020-07-31 TIME: 14:36:17

******************* FIREARMS PROHIBITION SUMMARY ********************
FCN/1860208400205
PHN/702063818          TYP/M
ENT/2                                   NRI/1519750671
NAM/STOKES,EASTON                       DOB/07-26-1983
SEX/M   RAC/W   HGT/      WGT/      HAI/      EYE/      POB/
*************************PROHIBITION REPORT**************************
ORI/49P001 - SUTTER PSYCHIATRIC UNIT   OCA/1029422
DATE RECEIVED/03-25-2002
DATE PROCESSED/03-25-2002
DATE PROHIBITED/03-12-2002
PROHIBITION/5250 - 5250 WIC - DTSO OR GRAVELY DISABLED
COM/707 5654980 NEW FORM
                PROHIBITION EXPIRATION/LIFETIME

            *   *   *   END OF MESSAGE   *   *   *

CONFIDENTIAL           AG_Stokes-000002

```
4W1WGTAR66O.IQ
RE: R.QDP.CA0349425.NRI/1519750671

CHECKING NCIC

            *   *   *   END OF MESSAGE   *   *   *

4W1WGTAR66O.IJ
CA0349459
ACCEPT MKE/QDP
DATE: 07/31/20   TIME:17:43
A G E N C Y   N I C S   I N D E X   D I S P L A Y   R E S P O N S E
=========================================================
NRI: 1519750671     STATUS: ACTIVE     EXPIRATION DATE: N/A
PCA: D - ADJUDICATED OR COMMITTED MENTAL DEFECTIVE
NAM: STOKES, EASTON
SEX: M RAC: W
HGT: 000 WGT: 0 EYE: XXX HAI: XXX
POB: UNKNOWN PLACE OF BIRTH SOR: N/A
RTV: 0 SST: N/A
SOC: N/A
SMT: N/A
AKA: N/A
MNU: N/A
DOB: 19830726

MIS: N/A
     SST: N/A
     RTV: N/A
     UCN: N/A
     SID: N/A

ORI: CA0349418   OCA: 1029422
DNY: N/A
DATA-SRC: CA
ARI: 702063818
CREATED-BY: CA0349418            CREATED-DATE: 10/02/2007
UPDATED-BY: CA0349418            UPDATED-DATE: 10/02/2007
```

CONFIDENTIAL                    AG_Stokes-000003

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

# C – Letter from State Defendants

SUPPORTING EXHIBITS

**XAVIER BECERRA**
*Attorney General*

*State of California*
**DEPARTMENT OF JUSTICE**

1300 I STREET, SUITE 125
P.O. BOX 944255
SACRAMENTO, CA 94244-2550

Public:  (916) 445-9555
Telephone:  (916) 210-7836
Facsimile:  (916) 324-8835
E-Mail:  Jerry.Yen@doj.ca.gov

October 29, 2020

<u>VIA EMAIL</u>

Timothy Kelly
1403 Spyglass Parkway
Vallejo, CA 94591
tskelliot@gmail.com

RE:    Court's Order for Further Discovery and Development of the Record
       *Stokes v. United States Department of Justice, et al.*
       Case No. 3:19-cv-04613-WHA

Dear Mr. Kelly:

        In compliance with the Court's order dated October 22, 2020 (ECF No. 68), Defendants
State of California and Xavier Becerra, Attorney General of California, provide this notice that
they do not wish to participate in the state court action, if any, contemplated by the Court's order.
Nevertheless, so that we can remain apprised of any proceedings relevant to the Court's order
and this matter in general, please provide us via email with any state court filings by any party,
including any petition filed on or before November 5, 2020.

                        Sincerely,

                        */s/ Jerry T. Yen*

                        JERRY T. YEN
                        Deputy Attorney General

                For    XAVIER BECERRA
                        Attorney General

cc:    Julie Davis, Assistant United States Attorney

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

# D – Declaration from
## Plaintiff's attorney Timothy Kelly

SUPPORTING EXHIBITS

I declare under the penalty of perjury that the facts described in the statement of facts are true and correct upon the best of my knowledge and upon information and belief.

Respectfully Submitted,

11-4-20

Easton Stokes

Date:

Plaintiff

11-4-2020

Timothy Kelly

Date:

Attorney for Plaintiff

SUPPORTING EXHIBITS