STEPHANIE M. HINDS (CABN 154284)
Acting United States Attorney

SARA WINSLOW (DCBN 457643)
Chief, Civil Division

JULIE BIBB DAVIS (CABN 184957)
Assistant United States Attorney

    1301 Clay Street, Suite 340S
    Oakland, California 94612
    Telephone: (510) 637-3680
    FAX: (510) 637-3724
    Julie.davis@usdoj.gov

Attorneys for Federal Defendants

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| EASTON STOKES, | CASE NO. C-19-cv-04613 WHA |
|     Plaintiff, | **SUPPLEMENTAL BRIEFING IN SUPPORT OF FEDERAL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
|   v. | |
| UNITED STATES OF AMERICA DEPARTMENT OF JUSTICE, et al., | |
|     Defendants. | |

SUPPLEMENTAL BRIEFING IN SUPPORT OF FEDERAL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
19-CV-04613 WHA

**INTRODUCTION AND PROCEDURAL BACKGROUND**

Plaintiff Easton Stokes ("Plaintiff") is prohibited from possessing a firearm under 18 U.S.C. § 922(g)(4) because it is undisputed that he was involuntarily committed for mental health treatment pursuant to California law.  Complaint at ¶¶ 25-26 (Dkt. No. 1).  The Ninth Circuit has recently held, in a published opinion, both that section 922(g)(4) is constitutional under the Second Amendment, and that the *continued* prohibition on the possession of firearms by a plaintiff who, like Plaintiff Stokes, was committed some years ago, survives an as applied challenge to section 922(g)(4).  *Mai v. United States*, 952 F.3d 1106, 1120-1121 (9th Cir. 2020), *pet. for rehearing en banc denied* (Sept. 10, 2020, Case. No. 18-35071, Dkt. No. 42).  Moreover, the Ninth Circuit also held that section 922(g)(4)'s prohibition is constitutional where, as here, a plaintiff has no potential avenues for relief from the section 922(g)(4) prohibition under federal law.  *Id.*

Based on this clear authority, Federal Defendants moved for summary judgment in this matter. Dkt. No. 60.  State Defendants moved for judgment on the pleadings (Dkt. No. 61), and Plaintiff opposed both motions.  After oral argument, the Court issued an order for further discovery and development of the record.  Dkt. No. 68.  The Court stated that while "[t]his action is probably foreclosed by *Mai v. United States*," additional evidence was needed before ruling on the pending motions by Federal and State Defendants.  *Id.*

Specifically, the Court ordered Plaintiff to file a petition requesting relief from his involuntary commitment status in a California state court.  Plaintiff was also ordered to submit a declaration regarding various issues, which he did on November 5, 2020.  Dkt. No. 73.  Plaintiff also filed certain medical records.  Dkt. No. 79.  Defendants were ordered to depose Plaintiff, which they did on November 20, 2020.  Deposition of Easton Stokes ("Stokes Depo."), attached here as Exhibit 1.

The Court requested supplemental briefing regarding how the additional evidence might impact the legal analysis.  Dkt. No. 68.  Subsequently, the Court also ordered the briefing to specifically address Plaintiff's "claims for equal protection and due process, in addition to the Second Amendment claim." Dkt. No. 81.  Pursuant to these orders, Federal Defendants now submit this supplemental briefing in support of their motion for summary judgment.  Federal Defendants also incorporate all of their prior

1

briefing.  *See, e.g.*, Dkt. Nos. 60, 65.

## ARGUMENT

## I.      PLAINTIFF'S COMMITMENT WAS NOT VOLUNTARY

Federal Defendants continue to maintain that Plaintiff's commitment was involuntary as a matter of law under the relevant California statute.  *See* Cal. Welf. & Inst. Code § 5250.  This is not a factual dispute; as he avers in his Complaint, Plaintiff's commitment to Oakcrest was pursuant to a "5250 certification," (Complaint at ¶ 25), which specifically applies to people who have "not been willing or able to accept, treatment on a voluntary basis," and thus constitutes an involuntary commitment under California law.  Cal. Welf. & Inst. Code. § 5250.  Furthermore, Plaintiff admits that he never appealed the determination that he was involuntarily committed, even though he was entitled to do so under California law.  Cal. Welf. & Inst. Code § 5275, et seq.[1]  Accordingly, he is prohibited from possessing firearms pursuant to section 922(g)(4).

Furthermore, it is also clear from the additional discovery in this matter that Plaintiff's commitment was in fact involuntary.  For example, Plaintiff's deposition testimony reveals both that the commitment was involuntary and that he was aware of that fact.  Plaintiff states in his deposition that his commitment was due to a "drug-induced psychotic episode" after taking "psilocybin mushrooms." Stokes Depo. at 68, 84, 85.  Plaintiff testified that after he was transferred from Kaiser to Oakcrest, "I gave up my rights to make decisions" in part because "I didn't know what was real, what wasn't real." Stokes Depo. at 106.  When questioned again to clarify whether he "gave up [his] rights to make decisions", Plaintiff testified: "I did.  I believe it was either here at Kaiser or it was at Oakcrest, but I believe it was at Kaiser.  That's when I gave up my decision to make – my consent to make decisions for me."  Stokes Depo. at 107-08.

Plaintiff also stated that during his commitment at Oakcrest, he was told he would have to petition in order to be discharged, which confirms that Plaintiff was aware that he was unable to leave voluntarily.  As Plaintiff testified:

> I do remember an evaluation with a doctor and he let me know that

---

[1] Federal Defendants understand that Plaintiff has now filed a Petition in state court addressing his commitment, and that he expects a hearing on the Petition in April 2021.

SUPPLEMENTAL BRIEFING IN SUPPORT OF FEDERAL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
19-CV-04613 WHA

> I could petition to get out.  And I asked him, I said "I don't really feel
> comfortable making this choice myself.  What are your thoughts?  Am I
> better?"
>
>         And he said "No.  I think you need to stay additional to get more
> treatment."
>
>         So I never questioned getting out or leaving.  I felt like I needed
> help.  And the only way to get it was to follow the advice of the doctors.

Stokes Depo. at 116-17.

Plaintiff also testified that he believed he would need a court hearing to be released, further

confirming both the involuntariness of the commitment and Plaintiff's knowledge of the involuntary

status.  When asked why he did not request a court hearing during his time at Oakcrest, Plaintiff stated:

> A.      I believe that to request a court hearing would be to get out,
> but I didn't have any interest in just getting out.  I wanted to get better.  So
> it just didn't seem – it didn't make sense to try to get out.  I knew that I
> needed help.

Stokes Depo. at 121.

Plaintiff was subsequently questioned:

> Q.      So but was it your understanding that to get out, you would
> have to have a court hearing or something like that to get out as opposed
> to just walking out the door, you're 18, you're an adult you can leave?
>
> A.      Yeah.  I believe there was a process.  My memory to
> knowing it then, I believe it was explained to me that there would be a
> process to make an appeal of some sort, but to get out wasn't just walking
> out the front door.

Stokes Depo. at 121-22.

Under California law, section 5250 commitments are designed for those who are "a danger to

others, or to himself or herself, or gravely disabled." Cal. Welf. & Inst. Code § 5250(a).  The record

confirms that Plaintiff was aware he was subject to an involuntarily commitment; in addition, the record

contains evidence of Plaintiff's self-harm and danger to others that were presumably factors in

Plaintiff's involuntary commitment subsequent to his self-described drug-induced psychosis.  For

example, on his intake form for chemical dependency at Kaiser, his presenting problems included:

> [D]rinking and smoking pot but he "freaked out" b/c of his anger and
> guilt.  "It was a boiling point."  [He] put his hands in a fire (to get out of
> his guilt), punched his biggest friend & apparently kissed a male.  [He]

3

reports "blacking out" from anger.

Dkt. No. 79 at 7.  In addition, Plaintiff's intake form indicated that he reported use of alcohol and marijuana since elementary school, both auditory and visual hallucinations, a significant family history of mental illness and drug use, anger at self, and months of decompensating prior to his initial intake at Kaiser's Chemical Dependency Services.  Dkt. No. 79 at 7-8.  A subsequent Behavioral Medicine Consult Note confirmed a "probable 14 day hold."  *Id.* at 11.[2]

In sum, there is no dispute both that California law treats Plaintiff as having been involuntarily committed and that there was factual support for his involuntary commitment.  Furthermore, Plaintiff's own testimony confirms that he was aware of that determination at the time of his involuntary commitment.  That determination was not appealed, and it is not able to be re-opened collaterally here in federal court.   Because of his involuntary commitment, Plaintiff is properly subject to the restrictions on gun possession contained in section 922(g)(4).  *Mai*, 952 F.3d at 1111-1119; *see also Heller v. Bedford Cent. Sch. Dist.* 665 F. App'x 49, 54 (2d Cir. 2016); *United States v. McRobie*, 2009 WL 82715 (4th Cir. Jan. 14, 2009) (per curiam).

## II.   FEDERAL DEFENDANTS ARE ENTITLED TO JUDGMENT ON PLAINTIFF'S DUE PROCESS AND EQUAL PROTECTION CLAIMS

Plaintiff has not previously cited any caselaw in support of his due process and equal protection claims, and Federal Defendants have briefed in detail why those claims are without merit.  Dkt. Nos. 60, 65.  In addition, Federal Defendants are entitled to judgment on those claims for the following reasons.

///

---

[2] While this issue is not before the Court, there is testimony from Plaintiff that casts doubts on his current fitness for having Second Amendment rights restored for a reason other than his involuntary commitment.  For example, users of controlled substances are banned from firearms possession under 18 U.S.C. § 922(g)(3).  Plaintiff testified extensively as to his marijuana use and work in the marijuana industry, including marijuana cultivation for commercial sale in his home for a number of years, and work at the Funny Farm hydroponics store, which was geared towards marijuana cultivators.  Stokes Depo.at 22-23, 27-30, 42-44.  Marijuana remains a controlled substance under federal law.  While Plaintiff testified that he stopped using marijuana in 2017, he also testified that he would consider using it for pain in the future.  *Id.* at 48-49.  Petitioner has also had a misdemeanor conviction for firearms possession and a citation for unauthorized use of marijuana.  *Id.* at 28-28, 32, 44-45, 52-53.  Finally, Petitioner has not had a mental health screening, evaluation, or treatment since 2002, despite his significant family history of mental illness, and his past drug-induced psychosis.  Stokes Depo. at 62-63, 65-66; Dkt. No. 73 at 5.

4

**A.  Any Substantive Due Process Challenge Is Redundant In The Face of Plaintiff's Second Amendment Challenge**

When, as here, a plaintiff asserts both an enumerated rights challenge and a substantive due process challenge involving that enumerated right, the Supreme Court has typically analyzed the scope of the enumerated right rather than the more general substantive due process claim.  *See, e.g., Graham v. Connor*, 490 U.S. 386, 395 (1989); *Albright v. Oliver,* 510 U.S. 266, 273 (1994).  For example, in a complaint alleging violations of both "the Fourth Amendment and Due Process Clause . . .  we analyzed the constitutionality of the challenged application of force solely by reference to the Fourth Amendment's prohibition . . . and hold that *all* claims that law enforcement officers have used excessive force . . . should be analyzed under the Fourth Amendment and its "reasonableness" standard, rather than under a 'substantive due process' approach." *Graham*, 490 U.S. at 395 (emphasis in original).  The Supreme Court reasoned that "[b]ecause the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process', must be the guide for analyzing these claims." *Id.*  So too here; because the Second Amendment provides "an explicit textual source of constitutional protection" with regards to firearm possession, that Amendment "must be the guide" for analyzing Plaintiff's claims.  *Id.*

The Court affirmed this reasoning in *Albright*, explaining "[i]t was through these [enumerated] provisions of the Bill of Rights that their Framers sought to restrict the exercise of arbitrary authority by the Government in particular situations." *Albright*, 510 U.S. at 273.  Accordingly, a substantive due process challenge is redundant in the face of an asserted enumerated rights challenge, and where an enumerated rights challenge – including a Second Amendment challenge – more specifically addresses a claim, courts have dismissed substantive due process challenges.  *See, e.g., White v. City of New York,* 2018 WL 1545676 at *6 (E.D.N.Y. Mar. 29, 2018) (citing *Albright* and holding that "[t]o the extent that Plaintiff attempts to assert a separate 'due process' claim based on the same conduct that underlies his Fourth Amendment claims for false arrest and malicious prosecution, his claim is dismissed as duplicative"); *Levys v. Shamlin,* 2017 WL 5714027 at *3.  (W.D. Pa. Nov. 28, 2017) (finding that

SUPPLEMENTAL BRIEFING IN SUPPORT OF FEDERAL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
19-CV-04613 WHA

1  because the "Fourth Amendment is the explicit textual source of constitutional protection against

2  unreasonable searches and seizures by the government and its agents . . . Plaintiff's due process claims .

3  . . are dismissed as duplicative to his Fourth Amendment claims"); *Second Amendment Arms v. City of*

4  *Chicago,* 135 F. Supp. 3d 743, 762-63 (N.D. Ill. 2015) (finding no Second Amendment violation, and

5  concluding that because "the right to sell firearms is a Second Amendment concern, . . . Plaintiff's

6  substantive due process challenge is dismissed, as Plaintiff must pursue these theories under his . . .

7  Second Amendment claim[].")

8       The Ninth Circuit has also concluded that substantive due process claims are duplicative of

9  enumerated rights claims.  In *Galbraith v. County of Santa Clara,* 307 F.3d 1119, 1127 (9th Cir. 2002),

10  for example, the Court affirmed a dismissal of due process claims where a Fourth Amendment challenge

11  had also been asserted.  Specifically, the Ninth Circuit agreed with the District Court "that Fourth

12  Amendment principles and not those of due process, govern this case" because "[the Fourth]

13  Amendment, not the more generalized notion of 'substantive due process,' must be the guide for

14  analyzing these claims." *Id.* (citations omitted).  Similarly, in *Hawthorne v. Kernan,* 2020 WL 6891819

15  at *5 (N.D. Cal. Nov. 24, 2020), the court cited *Albright* and held that "Plaintiff's due-process claim

16  arising out of Defendant's . . . alleged use of excessive force is preempted by the Eighth Amendment

17  and should not be analyzed as a substantive due process claim."   Accordingly, Plaintiff's due process

18  claim was dismissed.  *Id.* at *9.

19       Here, because Plaintiff has asserted a Second Amendment claim (which must be denied under

20  *Mai*), any related substantive due process challenge must be denied as duplicative.  The gravamen of

21  Plaintiff's claim is based on an "explicit textual source of constitutional protection" regarding

22  possession of firearms, *Connor*, 490 U.S. at 395, and thus he is pre-empted from asserting a due process

23  claim premised on the deprivation of that substantive right.  *Galbraith,* 307 F.3d at 1127; *see also*

24  *Nordyke v. King*, 644 F.3d 776, 794 (9th Cir. 2011) (finding that "although the right to keep and bear

25  arms for self-defense is a fundamental right, that right is more appropriately analyzed under the Second

26  Amendment" than under the due process clause) (internal citation omitted), *vacated by* 681 F.3d 1041

27  (9th Cir. 2012) (en banc) (affirming the district court's dismissal of the Second Amendment claim); *Bell*

28

6

1  *v. United States*, 2013 WL 5763219, at *3 (E.D. Pa. Oct. 24, 2013), *aff'd*, 574 F. App'x 59 (3d Cir.

2  2014).

3  ### B. Plaintiff's Equal Protection Claim Is Without Merit

4  Plaintiff's equal protection claim is pled as follows:

5          The unconstitutionally broad ban on a certain class of individuals –
        individuals who have been involuntarily committed – acquiring a firearm
6          without providing for a means to seek review and relief from such ban
        violates Plaintiff's right to equal protection of the laws guaranteed under
7          the Equal Protection Clause of the Fourteenth Amendment to the United
        States Constitution.

8
9  Complaint at ¶ 57. Plaintiff also alleges that the same ban on the same class of individuals (individuals

10  who have been involuntarily committed) "violates Plaintiff's right to equal protection of the laws

11  guaranteed under the Due Process Clause of the Fifth Amendment of the United States Constitution."[3]

12  Complaint at ¶ 52.

13  As Federal Defendants have demonstrated, section 922(g)(4) and its application to Plaintiff

14  withstands the intermediate scrutiny standard applied to Second Amendment claims. Dkt. Nos. 60, 65;

15  *Mai*, 952 F.3d 1116-19. In addition, the *Mai* Court specifically held that the absence of a forum to

16  demonstrate current fitness withstood intermediate scrutiny because even without an avenue of relief

17  from a categorical, lifetime ban, "§ 922(g)(4) nevertheless remains a reasonable fit for the congressional

18  goal of reducing gun violence." *Mai*, 952 F.3d at 1120. The governmental interests of preventing

19  violence, including suicide, that impacts an individual, families, and community, are powerful and

20  compelling. *Id.* at 1120-21. The evidence of increased risk of suicides from those released from

21  involuntary commitment (about 39 times the risk of those not previously committed), is significant. *Id.*

22  at 1121.

23  Numerous courts have held that when a law assessed under an enumerated rights challenge

24  withstands strict or intermediate scrutiny, the law will also survive an equal protection challenge

25  applying rational basis review. For example, in *Kwong v. Bloomberg*, 723 F.3d 160, 170 n.19 (2d Cir.

26

27          [3] An equal protection challenge brought under the Fifth Amendment is subject to the same
    analysis as an equal protection challenge under the Fourteenth Amendment. *Golinski v. United States*
28  *Office of Pers. Mgmt.*, 824 F. Supp. 2d 968, 981 (N.D. Cal. 2012).

SUPPLEMENTAL BRIEFING IN SUPPORT OF FEDERAL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
19-CV-04613 WHA

1    2013), the Court explained that where a litigant asserts corresponding Second Amendment and equal

2    protection claims, and the Second Amendment claim fails, "courts have applied 'rational basis' review

3    to Equal Protection claims on the theory that the Second Amendment analysis sufficiently protects one's

4    rights") (citing authority); *see also Jefferies v. Sessions*, 278 F. Supp. 3d 831, 847 (E.D. Pa. 2017)

5    (dismissing Plaintiff's claim that section 922(g)(4) violated his Second Amendment rights, and also

6    dismissing his "equal protection claim under the Fourteenth Amendment."); *Hightower v. City of*

7    *Boston*, 693 F.3d 61, 83 (1st Cir. 2012) ("Given that the Second Amendment challenge fails, the equal

8    protection claim is subject to rational basis review."); *Nordyke v. King*, 681 F.34 1041,1043 n.2 (9th Cir.

9    2012) (en banc) ("As to the Nordykes' equal protection claim, because the ordinance does not classify

10   shows or events on the basis of a suspect class, and because we hold that the ordinance does not violate

11   either the First or Second Amendments, rational basis scrutiny applies.").

12        *National Rifle Association v. McGraw,* 719 F.3d 338, 348-50 (5th Cir. 2013), is also instructive.

13   The Fifth Circuit applied intermediate scrutiny and found that a Texas law prohibiting 18-20 year olds

14   from public carry of a handgun did not violate the Second Amendment.  *Id.*  Furthermore, because the

15   law did not target a suspect class, the plaintiff's equal protection challenge was assessed under rational

16   basis review, which requires only that the law in question "be rationally related to a legitimate

17   government interest to survive an Equal Protection challenge." *Id* at 350.  Given that the law in question

18   "survives the more stringent intermediate scrutiny," the Court also upheld the law "against plaintiffs'

19   equal protection challenge."  *Id; see also SKF USA Inc. v. U.S. Customs & Border Protection*, 556 F.3d

20   1337, 1360 (Fed. Cir. 2009) (holding that because the challenged Byrd Amendment "serves a substantial

21   government interest" and therefore is "valid under the First Amendment", it also is "clearly not violative

22   of equal protection under the rational basis standard"); *Currier v. Potter*, 379 F.3d 716, 731-32 (9th Cir.

23   2004) (holding that, after the Court concluded that the "regulations [at issue] do not violate the First

24   Amendment, [the] equal protection challenge must fail" under a rational basis review).

25        Here, Plaintiff maintains that the class of people impacted by section 922g(4) is "individuals who

26   have been involuntarily committed."  Complaint at ¶¶ 52, 57.  Plaintiff's involuntary commitment was

27   based on his mental status, and the Supreme Court has consistently applied rational basis review to cases

28

8

involving persons who are mentally impaired or intellectually disabled.  *See Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432 (1985); *Schweiker v. Wilson*, 450 U.S. 221 (1981); *Heller v. Doe by Doe,* 509 U.S. 312 (1993).[4]  Because section 922g(4) survives constitutional challenge under the intermediate scrutiny applied to Second Amendment claims, *Mai*, 952 F.3d 1116-19,  it must by definition survive a challenge under the lesser rational basis scrutiny applied to equal protection claims such as Plaintiff's.  *See McGraw*, 719 F.3d at 349-50.

### C.  Plaintiff Cannot Show A Deprivation Of Any Procedural Due Process Right

Plaintiff's Complaint asserts that he "has been deprived of his right to keep and bear firearms without being afforded notice and an opportunity to be heard on the matter prior to the deprivation and/or through a post-deprivation proceeding to seek review and relief from the deprivation." Complaint at ¶¶ 51, 58.  To begin with, Plaintiff is not entitled "to a collateral attack in federal court on a commitment he did not – and has not in any way – challenged in the state court." *United States v. McIlwain*, 772 F.3d 688, 698 (11th Cir. 2014).  Furthermore, Plaintiff has not cited a single case in support of his procedural due process claim, and courts that have considered the issue have confirmed that such a claim is without merit when, as here, it is brought in conjunction with a section 922(g) Second Amendment claim.

In *Jefferies*, for example, the court found that the plaintiff "does not have a Fifth Amendment right to procedural due process before the United States applies § 922(g)(4) to him because of his involuntarily commitment." 278 F. Supp. 3d at 846.  "The statute subsection is clear that anyone who has been committed for mental health is subject to it; thus a hearing on whether the plaintiff is still dangerous is not in fact relevant." *Id.* (internal citation omitted); *see also Culp v. Madigan,* 270 F. Supp. 3d 1038, 1059 (C.D. Ill. 2017) (denying relief on the plaintiffs' procedural due process claim  and holding that "because this Court has found no Second Amendment violation, Plaintiffs have not demonstrated that they were deprived of a property or liberty interest.")

In sum, given that there is no violation of a fundamental, enumerated right, Plaintiff is unable to

---

[4] Plaintiff has not cited and cannot cite any caselaw indicating that laws concerning the class of "individuals who have been involuntarily committed" would be subject to strict scrutiny review.

SUPPLEMENTAL BRIEFING IN SUPPORT OF FEDERAL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
19-CV-04613 WHA

bring either a substantive or a procedural due process claim.  Similarly, given that section 922g(4) survives constitutional challenge under the intermediate scrutiny applied to Second Amendment claims, *Mai*, 952 F.3d 1116-19, it must by definition survive a challenge under the lesser rational basis scrutiny applied to equal protection claims involving those involuntarily committed to a mental institution.  *See McGraw*, 719 F.3d at 349-50.  Judgment should be granted to Federal Defendants on Plaintiff's equal protection and due process claims.

## CONCLUSION

For the foregoing reasons, along with the record in this matter and the previous briefing, Federal Defendants should be granted summary judgment on all of Plaintiff's claims.


Respectfully submitted,


DATED: March 14, 2021                    STEPHANIE M. HINDS
                                         Assistant United States Attorney

                                         By:      /s/ *Julie Bibb Davis*
                                         JULIE BIBB DAVIS
                                         Assistant United States Attorney
                                         Attorneys for Federal Defendants

SUPPLEMENTAL BRIEFING IN SUPPORT OF FEDERAL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
19-CV-04613 WHA