Timothy Kelly, SBN 304840
1403 Spyglass Parkway
Vallejo, CA 94591
(707) 570-7507

Attorney for Plaintiff

**IN THE UNITED STATES DISTRICT COURT FOR THE**

**NORTHERN DISTRICT OF CALIFORNIA**

EASTON STOKES

Plaintiff,

vs.

UNITED STATES DEPARTMENT OF JUSTICE, et al.

Defendants.

Case No.: C-19-cv-4613 WHA

**PLAINTIFF'S SUPPLEMENTAL BRIEF IN OPPOSITION TO FEDERAL DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Judge: Hon. William Alsup
Courtroom 12
Action Filed August 12th, 2019

1

PLAINTIFF'S SUPPLEMENTAL BREIF IN OPPOSITION TO FEDERAL DEFENDANT'S MOTION TO DISMISS; C-19-4613 WHA

**TABLE OF CONTENTS**

TABLE ADDITIONAL POINTS OF AUTHORITIES ……………………………………...3

I. INTRODUCTION:……………………………………………………………...4

II. SUPLEMENTAL STATEMENT OF FACTS: …………………………...……4

III. ARGUMENT ……………………………………………………………….. 6

A. The enhanced factual records supports a finding that plaintiff was voluntarily at the institution OR a finding that the question of whether plaintiff's visit to an institution was voluntary is an open factual dispute that can be decided through additional gathering of evidence. ………………………………………………………… 6

B. Plaintiff's Second Amendment Claim is distinguished from *Mai* because plaintiff's commitment to a mental institute in 2002 lacked robust judicial involvement …………………………………..7

C. The Current Framework of the federal designation is a violation of Equal protection because it treats citizens of California differently from citizens of other states in regards to a fundamental right. …………..………8

D. Mr. Stokes has been denied Procedural Due Process due to his lack of a prejudgment hearing before a 5250 was imposed………………..9

E. Mr. Stokes has also been denied Procedural Due Process due to his lack of an avenue for redress to challenge his designation today …………10

IV. CONCLUSION ……………………………………………………………11

**TABLE OF ADDITIONAL AUTHORITIES**

Cases Page(s)

*Bolling v. Shape*, 347 U.S. 497 ( 1954). .......... 8

*Jackson v. Metropolitan Edison Co*, 419 U.S. 345, 351 (1974). .......... 9

*Mai v. United States*, 952 F.3d 1106 (2020) .......... 7

*Moose Lodge No. 107 v. Irvis*, 407 U.S. 163 (1972). .......... 9

*United States v. Chapman*, 666 F.3d 220, 226 (4th Cir. 2012) .......... 10, 11

*United States v. Rehlander*, 666 F.3d 45, 47–49 (1st Cir. 2012). .......... 7

Constitutional Provisions:

U.S. Const. amend. XIV .......... 9

U.S. Const. amend. V .......... 9

Statutes

18 U.S.C. § 922(g).......... 4 , 7, 8, 10

Cal. Welf. & Inst. Code § 5250 .......... 4 - 10

43 U.S.C. section 40915 .......... 8

3

PLAINTIFF’S SUPPLEMENTAL BREIF IN OPPOSITION TO FEDERAL DEFENDANT’S MOTION TO DISMISS; C-19-4613 WHA

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION:

This supplemental brief examines additional evidence to assess whether an individual who has a single brief episode of psychological distress should have their rights limited perpetually to the same extent as someone who is diagnosed as mentally ill, particularly where that individual voluntarily sought treatment and was never found by any court to be mentally ill and dangerous. This brief illustrates how *Mai*, the case most relied on by defendants in their summary judgment, specifically rules that cases such as this one, where there is little or no judicial involvement in the initial commitment, should not give rise to a 18 U.S.C. § 922(g) prohibition. This brief examines additional case precedents to consider whether sufficient due process was afforded to plaintiff now or in the past. This case also considers whether an individual's right to appeal a complete and total removal of their fundamental rights should hinge on the state where they live.

### II. ADDITIONAL FACTUAL BACKGROUND:

The additional pieces of evidence introduced into the record substantiate Plaintiff's original claims. There are numerous medical records introduced. None show any finding that Plaintiff was designated as a 5250 because he was judged by any clear process to be a threat to himself or others. Testimony of numerous eyewitnesses and the medical records that are available all point to a young man in temporary psychological distress voluntarily seeking professional help and evaluation.

Multiple witnesses were involved in Plaintiff's decision to check in to an institution to seek psychological care. All confirm that plaintiff made this choice voluntarily to seek care and

no one recalls any aggressive or suicidal behavior or any official finding that plaintiff represented a significant danger to himself or others. (See Statement by Nancy Barker, Statement by Kari Kincheloe, Statement by Jon Bassignani, Statement by Micah Black). All four eyewitnesses to Plaintiff's psychological distress and his subsequent journey to seek medical aid have made signed declarations under the penalty of perjury and expressed their willingness to answer additional questions or provide testimony if need be.

Additional documentation has indicated that in the nearly two decades since this single psychological incident, Plaintiff has pursued his own education (See Statement of Matthew Lopez-Phillips – Acting Vice President of Sonoma State University, Diplomas from SRJC and Sonoma State University, Dean's List Letter), been gainfully employed (See Statement of Luke McGarva and Brad Truline), survived cancer (see St. Joseph Health Statement and medical Records) and generally been a pleasant and reliable member of his community (See all documents). Plaintiff is planning to begin a full hike of the Pacific Crest Trail with his long-term girlfriend on April 27th, 2021.

There is some uncertainty about the exact nature of the commitment. Plaintiff stated that he needed medical care and was driven to the Kaiser hospital by the mother of his good friend Nancy Barker. (Plaintiff Deposition, page 104). Plaintiff recalls being scared, and feeling impaired memory and judgment. He remembers handing decision making power to a trusted adult: whom he believes was initially Ms. Barker but later was changed to Ms. Kincheloe. Ms. Barker remembers this (the transfer of decision making power) was being discussed but not whether it actually occurred. Electronic medical records indicate that Plaintiff signed a document in May 2002 (several weeks after leaving the facility) appointing Ms. Kincheloe as his health care agent. (See Medical Records Electronic, pages 13 – 16).

Plaintiff has testified that during the commitment he had the impression that he had the opportunity to ask to leave but decided to rely on the doctor's opinion about when he should leave. (Plaintiff deposition, page 148). Neither Plaintiff or any of the witnesses recall any sort of judicial hearing or any formal decision that he was being designated a 5250 or what that designation was based on.

Extensive efforts by both plaintiffs and defendants to acquire all medical records have not yielded any documentation which clearly shows that plaintiff was informed that a 5250 designation was assigned to Plaintiff or any documents that clarify who would have made such a designation. Plaintiff only learned of the 5250 designation years later when he learned that he failed a background check to possess a firearm. (Plaintiff deposition, page 148). Plaintff has initiated an action in Sonoma County Superior Court seeking a review of his 5250 designation. The action is currently pending; the court has scheduled but not yet held the hearing.

## III. ARGUMENT

### A. The enhanced factual records supports a finding that plaintiff was voluntarily at the institution OR a finding that the question of whether plaintiff's visit to an institution was voluntary is an open factual dispute that can be decided through additional testimony or gathering of evidence.

A common-sense review of the evidence supports the conclusion that Mr. Stokes was in the mental institution voluntarily. Mr. Stokes sought the help of trusted adults to seek treatment and opted to extend his stay when the medical staff asked him if he wanted to leave. Mr. Stokes's statements that 'there was a process' (Plaintiff Deposition, page 122) for leaving does not imply that he did not have the option to pursue that process or imply that he would have been unable to quickly secure his release if he had chosen to do so.

Any individual who participates in a drug treatment program, enlists in boot camp, chooses a middle seat in a crowded movie theater or books passage on a plane, train or boat would recognize that 'there is a process' that is necessary for them to leave the immediate environment. No objective observer would think that a person in any of those other settings should be considered to be there involuntarily just because they could not immediately walk-out. The reasonable conclusion from both Plaintiff's deposition and the numerous declaration of the adults and teenagers who were eyewitnesses to the relevant incident is that Mr. Stokes could have left sooner if he wished to. Plaintiff indicates that he 'opted to go with the doctor's recommendation' (Plaintiff Deposition, page 117) that he get more treatment, indicating that plaintiff saw the decision to extend his stay as an option he was choosing rather than a course that he was compelled to follow.

In the absence of any clear documentation showing if, how, when and why a 5250 was assigned to plaintiff, the most reasonable conclusion is that Plaintiff's commitment was voluntary. If the court disagrees with this conclusion, Plaintiff urges the subpoena of James L. Badiner L.C.S.W. and L Debbold M.D. to seek testimony about whether either of these individuals authorized a 5250. Plaintiff's efforts to establish contact and elicit further testimony with these two medical staff have thus far been unsuccessful.

**B. Plaintiff's Second Amendment Claim is distinguished from *Mai* because plaintiff's commitment to a mental institute in 2002 lacked robust judicial involvement.**

In *Mai v. United States*, 952 F.3d 1106 (2020), the court confirms that: "commitments under state-law procedures that lack robust judicial involvement do not qualify as commitments for purposes of § 922(g)(4)." (See *Mai v. United States*, 952 F.3d 1106 (2020), 6); See also *United States v. Rehlander*, 666 F.3d 45, 47–49 (1st Cir. 2012). It is abundantly clear from the record that no court was involved in issuing a 5250 designation with regards to Mr. Stokes. Nor

was any tribunal or officer of the court involved in any sort of assessment of whether Mr. Stokes was a danger to himself or others. Mr. Stokes testified that he was not even aware of the 5250 designation until years after the incident. If any such designation was formally assigned, there is no record of who did so, what standards they applied or how this process was communicated to plaintiff. Therefore, there was clearly no robust judicial involvement and plaintiff's stay at Kaiser and Oakcrest should not count as a commitment for the purposes of § 922(g)(4).

**C. 34 U.S.C. § 40915 as it currently stands is a violation of Equal protection because it treats citizens of California differently from citizens of other states in regards to a fundamental right.**

The current framework laid out by the federal government in 34 U.S.C. § 40915 for an individual to challenge a designation of having been "committed to a mental institution" under 18 U.S.C. Section 922(g) is a violation of Equal protection because it treats citizens of California differently from citizens of other states in regards to a fundamental right.

34 U.S.C. § 40915 violates the US Constitution's guarantee of Equal protection for citizens of different states. The Fifth Amendment guarantee of Due Process imposes a duty on the federal government to guarantee equal protection under the law. See Bolling v. Shape, 347 U.S. 497 ( 1954). If Plaintiff lived in another state that had implemented a qualifying program under 34 U.S.C. § 40915, he would potentially have an opportunity to dispute this blanket prohibition on his exercising of fundamental rights. It is clearly unequal for citizens of some states to have a right to seek restoration of a fundamental right while citizens of another state are unable to avail themselves of a comparable avenue of relief.

Plaintiff contends that, because persons in thirty other states benefit from programs applying § 40915's substantive standards, he too is entitled to relief or to an opportunity to meet

those standards. He implores the federal government to hold that either 34 U.S.C. § 40915 or the current implementation scheme around this statute violates the Equal Protection Clause of the constitution because it authorizes citizens from some states to be treated differently from citizens of another state with regards to a fundamental right without any rational reason to support that unequal implementation of the law.

**D. Mr. Stokes has been denied Procedural Due Process due to his lack of a prejudgment hearing before a 5250 was imposed.**

Plaintiff's deposition indicates that he voluntarily chose to extend his psychological examination. Mr. Stokes never challenged the commitment precisely because he was willing to engage in treatment and was not provided any notice of the long term impact sufficient to support a permanent implied waiver of his fundamental rights.

The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides, in relevant part: "[N]or shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. The Due Process clause of the Fifth Amendment likewise provides "No person shall … be deprived of life, liberty or property without due process of law." U.S. Const. amend. V.

The Due Process Clause protects individuals from being deprived of life liberty of property without due process. If "there is a sufficiently close nexus between the State and the challenged action of the regulated entity…the action of the latter may be fairly treated as that of the State itself." *Jackson v. Metropolitan Edison Co*, 419 U.S. 345, 351 (1974), citing *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163 (1972).

It is unclear from the record if the 5250 designation that was placed on Plaintiff was given by a specific person or group following guidelines. What is clear is 1) the state somehow

has assigned a 5250 to Mr. Stokes based on his visit to the Sutter Psychiatric Unit in March, 2002 and 2) Plaintiff was not given a hearing or a description of the constitutional consequences when the designation was assigned to him. The window of time in which Mr. Stokes had a foggy memory due to lack of sleep was relatively brief (a few days). If a decision was made that had lifetime consequences for one of Mr. Stokes' fundamental rights, he deserved a reasonable and clear process that produces a clear record, follows discernable standards, and gives him a clear explanation of the consequences and a meaningful chance to appeal. Mr. Stokes was not granted any of this. He did not even know that the 5250 designation was applied to him. This is a clear violation of Due Process.

**E. Mr. Stokes has also been denied Procedural Due Process due to his lack of an avenue for redress to challenge his designation today.**

Due process guarantees that individuals will not be subject to arbitrary exercising of governmental power. In Civil cases, a balancing test is used to determine the specific process that is due. This balancing test evaluates the government's chosen procedure with respect to the private interest affected, the risk of erroneous deprivation of that interest under the chosen procedure, and the government interest at stake. See *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Here there is a fundamental right, there is no meaningful process available for Plaintiff to challenge this lifetime impact on his personal freedom or to even understand the details of who made the decision to constrain his freedom and what evidence they used in support of that decision.

If we examine other provisions of 18 U.S.C. § 922(g), there is a much more reasonable fit between the narrowness of the prohibition and the level of process that has been upheld as necessary. For example, 18 U.S.C. § 922(g)(8), prohibits owning or possessing a firearm by anyone who is subject to a court order that restrains the person from harassing, stalking, or

threatening an intimate partner or child of such intimate partner. In *United States v. Chapman*, the court noted that that applicable protection orders may be issued only after notice and a hearing in which the person has an opportunity to participate, thus satisfying "the fundamental requirements of procedural due process." See *United States v. Chapman* 666 F.3d 220, 226 (4th Cir. 2012). It is clearly illogical for Plaintiff to receive less legal process protection than an individual who is the subject of a court ordered restraining order, yet that is the outcome that Defendants are seeking in their motion for summary judgement.

**CONCLUSION**

For the reasons explained above, Plaintiff asks that this Court denies the motions of both State and Federal Defendants and issue an order rejecting the motions for Summary Judgment.

Dated: March 15, 2021

Respectfully Submitted,

________/s/______________
TIMOTHY KELLY
Attorney for Mr. Stokes