1  Timothy Kelly, SBN 304840
   1403 Spyglass Parkway
2  Vallejo, CA 94591
    (707) 570-7507
3
   Attorney for Plaintiff
4

5  **UNITED STATES DISTRICT COURT**

6  **NORTHERN DISTRICT OF CALIFORNIA**

7  **SAN FRANCISCO DISTRICT**

8  EASTON STOKES                          )   Case No.: C-19-cv-4613 WHA
                                          )
9              Plaintiff,                 )
                                          )
10 vs.                                    )
                                          )   PLAINTIFF'S CROSS-MOTION FOR
11 UNITED   STATES   DEPARTMENT   OF )       SUMMARY JUDGMENT; [PROPOSED]
   JUSTICE, et al.                        )   ORDER
12                                        )
               Defendants.               )
13                                        )   Judge: Hon. William Alsup
                                          )   Date: June 3rd, 2021
14                                        )   Time: 2:00 p.m.
                                          )   Location: Remote
15 _____

16

17

18

19

20

21

22

23

24

PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT; [PROPOSED] ORDER

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES …………………………………………………… 3

MEMORANDUM OF POINTS OF AUTHORITIES

I.      INTRODUCTION:……………………………………………………...4

II.     FEDERAL STATUTE AND REGULATORY BACKGROUND: ………………4

III.    FACTUAL BACKGROUND: ……………………………………………5

IV.     LEGAL STANDARD…………………………………………………..7

V.      ARGUMENT …………………………………………………………..7
        A.  *Mai* establishes precedent that the federal government cannot
            consider the 2002 proceeding against Mr. Stokes to qualify as
            a commitment under § 922(g)(4). …………………………………..7

        B.  Plaintiff's claims fall within the protections of the 2nd Amendment
            and are properly viewed as a fundamental right. ……………………………11

        C.  Mr. Stokes's motion for summary judgement should be
            granted on Equal Protection grounds. **…………**……………………………13


VI.     CONCLUSION ………………………………………………………15

**TABLE OF AUTHORITIES**

<u>Cases</u>                                                                            Page(s)

District of Columbia v. Heller,
554 U.S. 570 (2008).  ....................................................................................12, 13

*Davis v. United States*,
854 F.3d 594, 598 (9th Cir. 2017). ................................................................7

 *Dunn v. Blumstein* (1972) 405 U.S. 330, 335…………………………………………14, 15

*Mai v. United States*,
952 F.3d 1106 (2020) .....................................................................................7 - 12

*Poller v. Columbia Broad. Sys., Inc.*
368 U.S. 464, 467 (1962) .............................................................................. 7

Tyler v. Hillsdale County Sheriff's Dep't, 837 F.3d 678 (6th Cir. 2016)………………..9, 10

*U.S. v. Thoresen (9th Cir. 1970) 428 F.2d 654. ……………………………………………..14, 15*

*Va. Office for Prot. & Advocacy v. Stewart*,
 563 U.S. 247, 255 (2011) …………………………………………….. 13

*Verizon Md. Inc v. Public Serv. Comm'n of Md.,*
535 U.S. 635, 645 (2002)). …………………………………………..13

<u>Rules</u>

Federal Rule of Civil Procedure 56(a) ………………………………………….. 6, 7

<u>Statutes</u>

18 U.S.C. § 922(g)…………………………………………….4, 7, 9, 11, 12

Cal. Welf. & Inst. Code § 5250 & § 5250 …………………………………………….5, 6,
8, 11,12

43 U.S.C. section 40915 ……………………………………………. 12

Cal. Welf. & Inst. Code § 8104 ……………………………………………. 12

PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT; [PROPOSED] ORDER

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      INTRODUCTION:**

This case considers whether an individual who has a single brief episode of psychological distress should have their rights limited perpetually to the same extent as someone who is diagnosed as mentally ill, particularly where that individual voluntarily sought treatment and was never found by any court to be mentally ill and dangerous. This case also considers whether an individual's right to appeal a complete and total removal of their fundamental rights should hinge on the state where they live.

**II.      FEDERAL STATUTE AND REGULATORY BACKGROUND:**

Plaintiff generally acknowledges the federal statute and regulatory background listed by the defendants as accurate. The federal restrictions barring certain individuals from possessing firearms are set forth in 18 U.S.C. § 922(g). Under section 922(g)(4), an individual "who has been committed to a mental institution" may not possess a firearm. Specifically, section 922(g)(4) states:

> It shall be unlawful for any person . . . who has been adjudicated as a mental defective or who has been committed to a mental institution . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate commerce.

Id.1 Regulations issued by the ATF define these terms as follows:

> Adjudicated as a mental defective.
> (a) A determination by a court, board, commission, or other lawful authority that a person, as a result of marked subnormal intelligence, or mental illness, incompetency, condition, or disease;
> (1) Is a danger to himself or to other; or
> (2) Lacks the mental capacity to contract or manage his own affairs.

4

PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT; [PROPOSED] ORDER

(b) The term shall include –
(1) A finding of insanity by a court in a criminal case; and
(2) Those persons found incompetent to stand trial or found not guilty by reason of lack of mental responsibility pursuant to articles 50a and 72b of the Uniform Code of Military Justice, 10 U.S.C. § 850a, 876b. . . . . Committed to a mental institution. A formal commitment of a person to a mental institution by a court, board, commission, or other lawful authority. The term includes a commitment to a mental institution involuntarily. The term includes commitment for mental defectiveness or mental illness. It also includes commitments for other reasons, such as drug use. The term does not include a person in a mental institution for observation or a voluntary admission to a mental institution. 17 C.F.R. § 478.11.

The final line in this regulation deserves particular attention. The term *does not* include a person in a mental institution for observation or a voluntary admission to a mental institution. (Emphasis added.)

## III.     FACTUAL BACKGROUND:

In the spring of 2002, Easton Stokes was 18 and a senior at High School. As was common in his peer group at that time, he would occasionally attend parties. After one of these parties, during which he had consumed alcohol and cannabis, Mr. Stokes felt psychologically unwell and was unable to sleep normally for several subsequent days.  Out of concern for himself and others. Mr. Stokes decided to check himself in to a mental institution for examination.

His entrance into this facility was voluntary as a factual matter.  Mr. Stokes initially checked himself into Kaiser.  Mr. Stokes was told by personnel that Kaiser decided to label him as "5150" so that they could transport him to the mental health facility for care.  Mr. Stokes remained at the mental health facility voluntarily, and therefore did not challenge the 5250 certification that followed when he stayed past the initial 72 hour hold.  Because Mr. Stokes was voluntarily seeking care, he did not seek any type of judicial review of the 5250 certification. Therefore, no court ever evaluated whether Mr. Stokes at the time in fact met the requirements for

PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT; [PROPOSED] ORDER

a 5250 commitment.    Had a court in fact reviewed Mr. Stokes's case, it would have been difficult for a judge to continue to hold Mr. Stokes pursuant to WIC Section 5250, as that section requires that the patient be not voluntarily seeking treatment.

Mr. Stokes stayed at the facility for a brief 16 days, undergoing observation and examination.  At the end of this time, he was given a clean bill of health and dismissed. The incident was ruled a drug induced psychotic episode. He was given anti-psychotic medication that was quickly diminished over the next few months and then discontinued entirely. At no time before, during or after his visit to the institution did Mr. Stokes exhibit any violent actions or threats to himself or others. By all accounts he is, and always has been, a peaceful and well-grounded individual.

Mr. Stokes has a generally clear memory of his visit to a mental health institute in 2002 and does not believe that he received any form stating that he was certified as a 5250. He only found out about this designation years later. Extensive discovery requests and pursuits by both plaintiffs and defendants have not revealed any notice of certification or any evidence stating who made the certification or what grounds they based it on.

In the intervening 18 years, Mr. Stokes has not suffered any further mental issues of any sort.  He has never returned to a facility. He is widely respected by his community, and considered to be intelligent, forthright, humorous and personable.

Mr. Stokes, like many United States citizens, would like to lawfully own a firearm in a safe and responsible manner. In particular, Mr. Stokes would like to be able to grant the wish of his 102 year old grandfather and inherit his grandfather's WWII service weapon and a hunting rifle that belonged to his great grandfather. If Mr. Stokes lived in one of the 30 states that provided a forum for citizens to seek relief from the federal firearm disability he could have a judicial body

PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT; [PROPOSED] ORDER

1   review his fitness to possess firearms.  However, Mr. Stokes, to the best of his knowledge, has no

2   such recourse in the State of California. Mr. Stokes has filed a claim in Sonoma County Superior

3   Court months ago, but has yet to receive a hearing or even been informed whether or not he has

4   the right to a hearing.

5

6

7   **IV.     LEGAL STANDARD**

8       Pursuant to Federal Rule of Civil Procedure 56(a), summary judgement is only appropriate

9   where "the movant shows that there is no genuine dispute as to any material fact and the movant

10  is entitled to judgment as a matter of law."  Fed. R. Civ. Pro. Section 56; see *Poller v. Columbia*

11  *Broad. Sys., Inc.* 368 U.S. 464, 467 (1962).   It is appropriate when the moving party "shows that

12  there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

13  matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" only if there is sufficient evidence for

14  a reasonable fact finder to find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477

15  U.S. 242, 248-249 (1986).

16      A fact is "material" if it might affect the outcome of the case. Id. at 248. In considering a

17  motion for summary judgment, the court must view the evidence in the light most favorable to the

18  non-moving party. *Davis v. United States*, 854 F.3d 594, 598 (9th Cir. 2017). "On summary

19  judgment, the moving party bears the burden of establishing the basis for its motion and identifying

20  evidence that demonstrates the absence of a genuine issue of material fact." *Id.*

21

22

23

24

7

PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT; [PROPOSED] ORDER

**V.    ARGUMENT**

    **A. *Mai* establishes precedent that the federal government cannot consider the 2002 proceeding against Mr. Stokes to qualify as a commitment under § 922(g)(4).**

In *Mai v. United States*, 952 F.3d 1106 (2020), the Ninth Circuit held that a Second Amendment claim involving the deprivation of federal firearm rights was correctly denied because the deprivation passed intermediate scrutiny.   However, *Mai* involved a plaintiff who was committed  by a Washington state court after he threatened himself and others. "The state court determined that the plaintiff was *both* mentally ill *and* dangerous." *Mai*, *supra*, at 1110.  The court in *Mai* explicitly stated that "commitments under state-law procedures that lack robust judicial involvement do not qualify as commitments for purposes of § 922(g)(4)." *Id.* In doing so, the *Mai* court clearly ruled that a court must be involved in order for a commitment to trigger § 922(g)(4)."

It is undisputed that no court was involved in any way with Mr. Stoke's 2002 psychological visit. Mr. Stokes voluntarily sought treatment and voluntarily agreed to extend his stay to make sure that the examination and assessment of his psychological well-being was sufficiently thorough. Defendant have not alleged that there was any court ruling that found Mr. Stokes to be a danger or to be mentally ill. Defendants have not alleged any facts that would suggest any sort of court involvement whatsoever. The lack of dispute around the absence of any judicial involvement supports a summary judgment ruling in favor of the plaintiff. Under the guidance from Mai, this court should rule that the 2002 to proceeding against Mr. Stokes does not qualify as a commitment under § 922(g)(4)."

Not only do the 2002 proceedings lack any *judicial* involvement, but there is no clear documentation of who issued a 5250 to Mr. Stokes or what basis. See Cal. Welf. & Inst. Code §

1   5150(l)(i) states that a 5150 designation must be accompanied by written information that is

2   substantially in the following form:

3

4   My name is .

5   My position here is .

6   You are being placed into this psychiatric facility because
    it is our professional opinion that, as a result of a mental
7   health disorder, you are likely to (check applicable):

8   ☐ Harm yourself.
    ☐ Harm someone else.
9   ☐ Be unable to take care of your own food, clothing, and
    housing needs.
10  We believe this is true because

11

12  (list of the facts upon which the allegation of dangerous
    or gravely disabled due to mental health disorder is based,
    including pertinent
13  facts arising from the admission interview).

14  You will be held for a period up to 72 hours. During the 72
    hours you may also be transferred to another facility. You
15  may request to be evaluated or treated at a facility of your
    choice. You may request to be evaluated or treated by a
16  mental health professional of your choice. We cannot
    guarantee the facility or mental health professional you
17  choose will be available, but we will honor your choice if
    we can.

18  During these 72 hours you will be evaluated by the facility
    staff, and you may be given treatment, including
19  medications. It is possible for you to be released before
    the end of the 72 hours. But if the staff decides that you
20  need continued treatment you can be held for a longer
    period of time. If you are held longer than 72 hours, you
21  have the right to a lawyer and a qualified interpreter and a
    hearing before a judge. If you are unable to pay for the
22  lawyer, then one will be provided to you free of charge.

23  If you have questions about your legal rights, you may
    contact the county Patients' Rights Advocate at _____

24

9
PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT; [PROPOSED] ORDER

1

> (phone number for the county Patients' Rights Advocacy office) _____ .
>
> Your 72-hour period began _____ (date/time) _____ .

The required documentation for a 5250 hold is even more explicit and demanding. Under Cal. Welf. & Inst. Code § 5152, a notice of certification is to be prepared and delivered to anyone designated as a 5250. This notice should be substantially in the following form:

> The authorized agency providing evaluation services in the County of _____ has evaluated the condition of:
>
> Name
>
> Address
>
> Age
>
> Sex
>
> Marital status
>
> We the undersigned allege that the above-named person is, as a result of mental disorder or impairment by chronic alcoholism:
>
> (1) A danger to others.
> (2) A danger to himself or herself.
> (3) Gravely disabled as defined in paragraph (1) of subdivision (h) or subdivision (l) of Section 5008 of the Welfare and Institutions Code.
>
> The specific facts which form the basis for our opinion that the above-named person meets one or more of the classifications indicated above are as follows:
>
> (certifying persons to fill in blanks)
> [Strike out all inapplicable classifications.]
>
> The above-named person has been informed of this evaluation, and has been advised of the need for, but has not been able or willing to accept treatment on a voluntary basis, or to accept referral to, the following services:
>
> We, therefore, certify the above-named person to receive intensive treatment related to the mental disorder or impairment by chronic alcoholism beginning this _____ day of (Month) , 19___, in the intensive treatment facility herein named _____.
>
> (Date)

Signed
Signed
Countersigned _____ (Representing facility) _____

I hereby state that I delivered a copy of this notice this day to the above-named person and that I informed him or her that unless judicial review is requested a certification review hearing will be held within four days of the date on which the person is certified for a period of intensive treatment and that an attorney or advocate will visit him or her to provide assistance in preparing for the hearing or to answer questions regarding his or her commitment or to provide other assistance. The court has been notified of this certification on this day.

_____ Signed

It is clear from the record that no such forms were ever prepared for Mr. Stokes's 2002 proceeding or presented to him. Despite the explicit direction of the Cal. Welf. & Inst. Code that such notices are essential, the Defendants do not allege that any such notice was actually delivered or even generated in Mr. Stokes's case. The lack of dispute over the absence of any notice of the 5250 certification, or the identity of the person making that designation OR the factual basis that they are making the designation on supports a ruling of summary judgment in plaintiff's favor.

Defendants instead apparently argue for a clumsy misreading to dodge around clear guidance from the *Mai* court and apparently argue that statement in *Mai* that 'robust judicial involvement' is needed refers to general state law procedures rather than a particular commitment. Such an assertion violates common sense, public policy and established legal precedent. The language is quite clear: "Additionally, commitments under state-law procedures that lack robust judicial involvement do not qualify as commitments for purposes of § 922(g)(4)." Mai v. United States, 952 F.3d 1106, 1110 (9th Cir. 2020) It is clear that the meaning of the sentence is that a specific commitment needs to have robust judicial involvement to qualify for the purposes of 922(g)(4). Even if the court were to agree with Defendants that the robust judicial involvement is

11
PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT; [PROPOSED] ORDER

1    only needed for the general state court procedures, it is clear that those procedures were not

2    followed in this case.

3

4         **B.  The Plaintiff's claims fall within the protections of the 2nd Amendment and are
              properly viewed as a fundamental right.**

5

6         Mr. Stokes's claims fall within the protections of the Second Amendment, and are properly

7    viewed as fundamental rights.  *Heller* holds that individuals have the right to bear arms under the

8    Second Amendment. See *District of Columbia v. Heller*, 554 U.S. 570 (2008).  While *Heller*

9    discusses the longstanding prohibition against the possession of firearms by the mentally ill, *Heller*

10   does not answer the question of whether a person who once checked themselves into a mental

11   institution should, after years of mental fitness and stability, have some form of Second

12   Amendment rights.  In *Mai*, the Court assumed but did not evaluate whether the plaintiff's claim

13   involved conduct protected by the Second Amendment.  Meanwhile, the Sixth Circuit in *Tyler*

14   held that an individual who was once committed to a mental institution but is currently mentally

15   fit should not be forever denied the right to possess a firearm and should have protected rights

16   under the Second Amendment. See *Tyler v. Hillsdale Cty. Sheriff's Dep't*, 837 F.3d 678, 687-88.

17        Here, Mr. Stokes claim that section 922(g) burdens conduct protected by the Second

18   Amendment is genuinely at issue. A person who at one part of their lives suffered a bout of

19   depression or other mental health symptoms is historically not banned from owning firearms for

20   life. There are a huge number of individuals who had psychological struggles at some point of

21   their lives. To assume that they all should be designated as "mentally ill" is preposterous. The sole

22   underlying fact that has given rise to Mr. Stokes' lifetime ban is his decision to extend his stay

23   beyond 72 hours out of an abundance of caution. If anything, Plaintiff's decision is evidence of his

24   determination to ensure he is safe and does not pose a risk to himself or others. Presumably, the

PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT; [PROPOSED] ORDER

1    federal Defendants would not seek a lifetime firearm ban on someone who chose to attend an anger

2    management class, called a suicide prevention hotline or participate in a meditation retreat. It is

3    ludicrous that the mere act of once seeking professional psychological health would result in a

4    permanent stripping of fundamental rights.

5         While *Heller* discussed the ban on the "mentally ill," *Tyler* specifically found that

6    "[p]rior involuntarily commitment is not coextensive with current mental illness."  *Tyler* thus

7    held that a prior involuntary commitment did not deprive a person from all Second Amendment

8    protections.  Moreover, in this case, where the plaintiff asserts that he sought treatment

9    voluntarily as a factual matter, the argument that the conduct falls within the scope of Second

10   Amendment protections is even more persuasive. Defendants have not alleged any facts that

11   would indicate that

12        Federal Defendant's contend that there is a substantial nexus between the legitimate goal

13   of preventing gun violence, and the total prohibition on firearm right by anyone who stayed at a

14   mental health facility for more than 3 days. This assertion is rendered dubious and called into

15   question by the fact that the US Congress has created, through 34 U.S.C. § 40915, an opportunity

16   for such individuals to regain their rights. It is merely the fact that Plaintiff is a CA resident that

17   prevents him from exercising this option.

18

19        **C. Mr. Stokes's motion for summary judgement should be granted on Equal
             Protection grounds.**

20

21        Mr. Stokes's motion for summary judgement should be granted because the denial of an

22   administrative avenue to appeal his loss of a fundamental right hinges on his state of residence,

23   and this is an impermissible violation of his rights to Equal Protection under the law. The *Mai*

24   Court specifically noted that the plaintiff had not raised claims on appeal related to Equal

PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT; [PROPOSED] ORDER

Protection or Due Process due to the fact that persons in thirty other states benefit from the relief from disabilities program set out in 43 U.S.C. section 40915. *Mai*, at 1113.

Here, Mr. Stokes makes those claims. As discussed above, Mr. Stokes has raised a cognizable claim that the government has violated his Second Amendment rights and accordingly he has been deprived of a fundamental right under substantive due process. Additionally, the lack of forum to address his fitness to possess firearms in the State of California violates his rights to procedural due process.

Furthermore, Mr. Stokes's rights to Equal Protection under the law are violated by the fact that his fundamental right to own a firearm is being denied by the federal government based on his state of residence. Congress has authorized a program for individuals to challenge their designation under Section 922(g)(4), but it currently requires states to create a relief-from-disabilities programs. California is one of the 14 states that has not implemented such a program. This creates an unacceptable situation: plaintiff's ability to receive even a hearing on his fundamental rights is entirely dependent on what state he lives in. This unequal treatment is based on an entirely arbitrary distinction and therefore cannot withstand any level of scrutiny.

The fundamental right to equal protection protects persons of a similarly situated class from being treated differently by either federal or state law. The Equal Protection clause of the Fourteenth Amendment provides that "[n]o state shall… deny to any person within its jurisdiction the equal protection of the laws." "The Due Process Clause of the Fifth Amendment provides essentially the same safeguard against invidious and unjustifiable discrimination in federal laws as the Equal Protection Clause of the Fourteenth Amendment does in the case of state laws." *U.S. v. Thoresen (9th Cir. 1970) 428 F.2d 654.*

PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT; [PROPOSED] ORDER

1    To decide whether a law violates the Equal Protection Clause, we look, in essence, to

2 three things: the character of the classification in question; the individual interests affected by the

3 classification; and the governmental interests asserted in support of the classification." *Dunn v.*

4 *Blumstein* (1972) 405 U.S. 330, 335. "When legislative classifications threaten basic civil rights,

5 the Equal Protection Clause requires 'some overriding statutory purpose,' and the lines drawn in

6 such statutes are subject to 'the most rigid scrutiny." *United States v. Thoresen* (9th Cir. 1979)

7 428 F.2d 654, 658.  For example, in *Dunn*, the Supreme Court concluded that a state "must show

8 a substantial and compelling reason for imposing durational residence requirements" for voting.

9

10    Here, the individual interests affected by the classification are fundamental second

11 amendment rights, and the character of the classification is the superficial difference of a

12 citizen's state of residence. There is no stated or easily cognizable government interest for

13 treating citizens of different states differently with regards to their rights to seek restoration of

14 their right to own a firearm. Mr. Stokes has been denied his right to equal protection under the

15 laws with regards to his ability to access a post 5250 process to challenge the designation and

16 remove it from his record or to obtain access to a court of law.

17    Furthermore, this matter exhibits an equal protection violation in another manner based

18 on unequal access to the court and due process at the initial proceeding. Mr. Stokes was denied

19 equal protection under the laws because he did not receive the robust judicial evaluation that

20 federal law requires vis-à-vis other persons who are similarly situated

21    The government has not alleged any facts that provide a rationale to support this arbitrary

22 distinction in who is given access to a fundamental right, and the court should therefore grant

23 plaintiff's motion for summary judgment.

24

PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT; [PROPOSED] ORDER

1

**CONCLUSION**

2       For the reasons explained above, Plaintiff asks that this Court grants the attached motions

3   for Summary Judgment in favor of the Plaintiff.

4

5

6   Dated:          April 29, 2021              Respectfully Submitted,

7

8                                              _____/s/_____

9                                              TIMOTHY KELLY
                                               Attorney for Mr. Stokes

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT; [PROPOSED] ORDER

1   [PROPOSED] ORDER For good cause shown, and pursuant to Federal Rule of Civil Procedure
2   56(a), Plaintiff's motion for summary judgement is GRANTED.

    IT IS SO ORDERED.
3
    Date: _____, 2021
4
                                                    _____
5                                                   HON. WILLIAM ALSUP
                                                    United States District Judge
6

PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT; [PROPOSED] ORDER