Timothy Kelly, SBN 304840
1403 Spyglass Parkway
Vallejo, CA 94591
 (707) 570-7507

Attorney for Plaintiff

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DISTRICT**

| | |
|---|---|
| EASTON STOKES | Case No.: C-19-cv-4613 WHA |
| Plaintiff, | |
| vs. | |
| UNITED STATES DEPARTMENT OF JUSTICE, et al. | PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT; [PROPOSED] ORDER |
| Defendants. | Judge: Hon. William Alsup<br>Date: June 3rd, 2021<br>Time: 2:00 p.m.<br>Location: Remote |

1
PLAINTIFF'S RESPONSE TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ………………………………………………………………… 3

MEMORANDUM OF POINTS OF AUTHORITIES

    I.    INTRODUCTION:…………………………………………………………………...4

    II.    FEDERAL STATUTE AND REGULATORY BACKGROUND: ………………..4

    III.    FACTUAL BACKGROUND: ……………………………………………………….5

    IV.    LEGAL STANDARD…………………………………………………………………..7

    V.    ARGUMENT …………………………………………………………………………..7

        A. *Mai* establishes precedent that a commitment under § 922(g)(4) requires robust judicial involvement that is related to that commitment.   ………………...……………..7

        B. The facts of the record show that the 5250 certification for Mr. Stokes was not supported by the required process, and was therefore issued in error.   ………………...……………..8

        C. The government's argument encourages a policy that would ignore common sense and justice, and increase the harm that mental health issues have on society.   .……………..9

        D. The Denial Of A Forum To Demonstrate Fitness To Possess Firearms Unconstitutionally Denies Mr. Stokes Equal Protection of the law based on his state of residence.   ……..……….. 10

    VI.    CONCLUSION ……………………………………………………………………11

# TABLE OF AUTHORITIES

Cases                                                                                                    Page(s)

*Davis v. United States*,
854 F.3d 594, 598 (9th Cir. 2017). ........................................................................7

*Mai v. United States*,
952 F.3d 1106 (2020) ..............................................................................................7 - 8

*Poller v. Columbia Broad. Sys., Inc.*
368 U.S. 464, 467 (1962) ........................................................................................ 7

*Tyler v. Hillsdale County Sheriff's Dep't*, 837 F.3d 678 (6th Cir. 2016)……………..9, 10

*U.S. v. Thoresen* (9th Cir. 1970) 428 F.2d 654. ……………………………………..14, 15

*Va. Office for Prot. & Advocacy v. Stewart*,
 563 U.S. 247, 255 (2011) …………………………………………………………….. 13

*Verizon Md. Inc v. Public Serv. Comm'n of Md.*,
535 U.S. 635, 645 (2002)). ……………………………………………………………..13

Rules

Federal Rule of Civil Procedure 56(a) …………………………………………….. 6, 7

Statutes

18 U.S.C. § 922(g)……………………………………………………….…4, 7, 9, 11, 12

Cal. Welf. & Inst. Code § 5250 & § 5250 ……………………………………………..5, 6, 8, 11,12

43 U.S.C. section 40915 …………………………………………………………. 12

Cal. Welf. & Inst. Code § 8104 …………………………………………………. 12

PLAINTIFF'S RESPONSE TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION:

This Opposition addresses and responds to a number of arguments raised by state and federal defendants in their recent cross-motion for summary judgment.

### II. FEDERAL STATUTE AND REGULATORY BACKGROUND:

The federal restrictions barring certain individuals from possessing firearms are set forth in 18 U.S.C. § 922(g). Under section 922(g)(4), an individual "who has been committed to a mental institution" may not possess a firearm. Specifically, section 922(g)(4) states:

> It shall be unlawful for any person . . . who has been adjudicated as a mental defective or who has been committed to a mental institution . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate commerce.

Id.1 Regulations issued by the ATF define these terms as follows:

> Adjudicated as a mental defective.
> (a) A determination by a court, board, commission, or other lawful authority that a person, as a result of marked subnormal intelligence, or mental illness, incompetency, condition, or disease;
> (1) Is a danger to himself or to other; or
> (2) Lacks the mental capacity to contract or manage his own affairs.
> (b) The term shall include –
> (1) A finding of insanity by a court in a criminal case; and
> (2) Those persons. . . . Committed to a mental institution. A formal commitment of a person to a mental institution by a **court, board, commission, or other lawful authority**. The term includes a commitment to a mental institution involuntarily. The term includes commitment for mental defectiveness or mental illness. It also includes commitments for other reasons, such as drug use. The term does not include a person in a mental institution for observation or a voluntary admission to a mental institution. 17 C.F.R. § 478.11.

The Emphasis added by the bold text reflects the importance placed on having a lawful authority make the designation in order for it to qualify as a commitment under 922(g)(4).

### III.   FACTUAL BACKGROUND:

In the spring of 2002, Easton Stokes was 18 and a senior at High School. As was common in his peer group at that time, he would occasionally attend parties. After one of these parties, during which he had consumed alcohol and cannabis, Mr. Stokes felt psychologically unwell and was unable to sleep normally for several subsequent days.  Out of concern for himself and others, Mr. Stokes decided to check himself in to a mental institution for examination.

His entrance into this facility was voluntary as a factual matter.  Mr. Stokes initially checked himself into Kaiser.  Mr. Stokes was told by personnel that Kaiser decided to label him as "5150" so that they could transport him to the mental health facility for care.  Mr. Stokes remained at the mental health facility voluntarily, and therefore did not challenge the 5250 certification that followed when he stayed past the initial 72 hour hold.  Because Mr. Stokes was voluntarily seeking care, he did not seek any type of judicial review of the 5250 certification. Therefore, no court ever evaluated whether Mr. Stokes at the time in fact met the requirements for a 5250 commitment.   Had a court in fact reviewed Mr. Stokes's case, it would have been difficult for a judge to continue to hold Mr. Stokes pursuant to WIC Section 5250, as that section requires that the patient be not voluntarily seeking treatment.

Mr. Stokes stayed at the facility for a brief 16 days, undergoing observation and examination.  At the end of this time, he was given a clean bill of health and dismissed. The incident was ruled a drug induced psychotic episode. He was given anti-psychotic medication that was quickly diminished over the next few months and then discontinued entirely. At no time

before, during or after his visit to the institution did Mr. Stokes exhibit any violent actions or threats to himself or others. By all accounts he is, and always has been, a peaceful and well-grounded individual.

Mr. Stokes has a generally clear memory of his visit to a mental health institute in 2002 and does not believe that he received any form stating that he was certified as a 5250. He only found out about this designation years later. Extensive discovery requests and pursuits by both plaintiffs and defendants have not revealed any notice of certification or any evidence stating who made the certification or what grounds they based it on. In the intervening 18 years, Mr. Stokes has not suffered any further mental issues of any sort. He has never returned to a facility. He is widely respected by his community, and considered to be intelligent, forthright, humorous and personable.

Mr. Stokes, like many United States citizens, would like to lawfully own a firearm in a safe and responsible manner. In particular, Mr. Stokes would like to be able to grant the wish of his 102 year old grandfather and inherit his grandfather's WWII service weapon and a hunting rifle that belonged to his great grandfather. If Mr. Stokes lived in one of the 30 states that provided a forum for citizens to seek relief from the federal firearm disability he could have a judicial body review his fitness to possess firearms. However, Mr. Stokes, to the best of his knowledge, has no such recourse in the State of California. Mr. Stokes has filed a claim in Sonoma County Superior Court months ago, but has yet to receive a hearing or even been informed whether or not he has the right to a hearing.

PLAINTIFF'S RESPONSE TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

### IV. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgement is only appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. Section 56; see *Poller v. Columbia Broad. Sys., Inc.* 368 U.S. 464, 467 (1962). It is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-249 (1986).

A fact is "material" if it might affect the outcome of the case. Id. at 248. In considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party. *Davis v. United States*, 854 F.3d 594, 598 (9th Cir. 2017). "On summary judgment, the moving party bears the burden of establishing the basis for its motion and identifying evidence that demonstrates the absence of a genuine issue of material fact." *Id.*

### V. ARGUMENT

**A. *Mai* establishes precedent that a commitment under § 922(g)(4) requires robust judicial involvement that is related to that commitment.**

In *Mai v. United States*, 952 F.3d 1106 (2020), the Ninth Circuit held that a court must be involved in order for a commitment to trigger § 922(g)(4). It is undisputed that no court was involved in any way with Mr. Stokes' 2002 psychological visit. Mr. Stokes voluntarily sought treatment and voluntarily agreed to extend his stay to make sure that the examination and

7
PLAINTIFF'S RESPONSE TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

assessment of his psychological well-being was sufficiently thorough. Defendant have not alleged that there was any court ruling that found Mr. Stokes to be a danger or to be mentally ill. Defendants have not alleged any facts that would suggest any sort of court involvement whatsoever, nor have they alleged that the requisite forms required by Cal. Welf. & Inst. Code § 5152 to support a 5250 certification were ever produced. The lack of dispute around the absence of any judicial involvement supports a summary judgment ruling in favor of the plaintiff.

Defendants argue that statement in *Mai* that 'robust judicial involvement' is needed refers to general state law procedures rather than a particular commitment. Such an assertion is contrary to the clear language: "Additionally, commitments under state-law procedures that lack robust judicial involvement do not qualify as commitments for purposes of § 922(g)(4)." Mai v. United States, 952 F.3d 1106, 1110 (9th Cir. 2020) The second repetition of the word 'commitment' makes it clear that it is the specific commitment needs to have robust judicial involvement to qualify for the purposes of 922(g)(4). This reading is further supported by the Mai court's reliance on *United States v. Rehlander*, 666 F.3d 45, 47–49 (1st Cir. 2012), which states: "a permanent or prolonged loss of a constitutional liberty or property interest, an adjudicatory hearing, including a right to offer and test evidence if facts are in dispute, is required." The First Circuit, relied on by the Mai court, makes it clear that a theoretical 'right to an adjudicatory hearing' is not an acceptable substitute for a hearing.

**B. The facts of the record show that the 5250 certification for Mr. Stokes was not supported by the required process, and was therefore issued in error.**

Congress enacted section 922(g)(4) to address the problem of firearm deaths by people who are not criminals but who commit sudden premeditated crimes with firearms as a result of mental disturbances. There is not a reasonable nexus between this group of people and the subset

PLAINTIFF'S RESPONSE TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

of people who sought out mental health support at any time in their life. Federal defendants argue that section 922(g)(4) is targeted at: "Individuals who by their previous conduct or mental condition or irresponsibility have shown themselves incapable of handling a dangerous weapon in the midst of an open society." 114 Cong. Rec. 21,809-10 (statement of Rep. Tenzer), such as "persons with a history of mental disturbances." *Id.* at 21,784 (statement of Rep. Celler). However, the extensive record established in this case does not include any evidence that suggests Mr. Stokes was irresponsible or that he presented a significant danger to himself or anyone else.

Nothing in Mr. Stokes's testimony, the medical records, or the statements of multiple eyewitnesses would support an objective assessment that Mr. Stokes presented a grave danger to himself or anyone else during the 2002 incident, or in the nearly two decades since then. Instead of alleging any such facts, Defendants support a tautology: arguing that plaintiff' 5250 is somehow self-justifying, regardless of the underlying facts or process used to assign it.

### C. The government's argument encourages a policy that would ignore common sense and justice, and increase the harm that mental health issues have on society.

Mr. Stokes's actions, even those when he was a teenager, would likely be considered responsible by any objective observer. It is healthy human behavior to seek out support. Natural sciences teach us that any living thing develops its most important survival skill early on. Infant deer can run a few hours after they are born, baby snakes have potent venom immediately. Human babies cry. The first thing we do is ask for help. In this situation, the plaintiff sought help when he was a teenager going through a tough time.

The government argues that Mr. Stokes, if he wished to have any hope to ever regain his rights, should have declined to extend his own medical treatment and sought judicial review. This is absurd on its face; to suggest that Mr. Stokes should have appealed his presence in an institution he decided to visit, and that his 'failure' to do so should result in a forfeiture of rights. The government's argument apparently supports a perverse incentive; suggesting that people suffering from mild psychological distress should be reticent to seek help, because they must weigh their immediate needs for treatment against their long term hope to be granted full freedom under the laws.

### D. The Denial Of A Forum To Demonstrate Fitness To Possess Firearms Unconstitutionally Denies Mr. Stokes Equal Protection of the law based on his state of residence.

One of the central principles of the Constitution of the United States is that "[t]he Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." U.S. CONST. art. IV, § 2, cL 1. This principle is of maximum strength when it relates to a fundamental right, such as the core second amendment right to possess a firearm.

However, the reality of the current state of the laws with respect to Mr. Stokes is that the mere fact that he is a citizen of California means that he does not have a mechanism to dispute a permanent denial of his fundamental rights. If he lived in a different state, Mr. Stokes would have a process to challenge and regain his second amendment rights. It is unconstitutional for fundamental rights to be denied to some citizens and not others based on an irrelevant and arbitrary distinction such as state of residence.

### CONCLUSION

10
PLAINTIFF'S RESPONSE TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

For the reasons explained above, Plaintiff asks that this Court grants the attached motions for Summary Judgment in favor of the Plaintiff.

Dated:        May 27, 2021                        Respectfully Submitted,

                                        _____/s/_____
                                        TIMOTHY KELLY
                                        Attorney for Mr. Stokes

11
PLAINTIFF'S RESPONSE TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT