STEPHANIE M. HINDS (CABN 154284)
Acting United States Attorney

SARA WINSLOW (DCBN 457643)
Chief, Civil Division

JULIE BIBB DAVIS (CABN 184957)
Assistant United States Attorney

    1301 Clay Street, Suite 340S
    Oakland, California 94612
    Telephone: (510) 637-3680
    FAX: (510) 637-3724
    Julie.davis@usdoj.gov

Attorneys for Federal Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| EASTON STOKES, | CASE NO. 3:19-cv-04613 WHA |
|     Plaintiff, | **FEDERAL DEFENDANTS' OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT** |
|     v. | |
| UNITED STATES DEPARTMENT OF JUSTICE, et al., | Judge: Hon, William Alsup<br>Date: June 17, 2021<br>Time: 8:00 a.m.<br>Location: Remote |
|     Defendant. | |

**INTRODUCTION**

Plaintiff Easton Stokes ("Plaintiff"), who is prohibited from possessing a firearm under 18 U.S.C. § 922(g)(4), cross-moves this Court for summary judgment, arguing that his commitment was voluntary and that he did not seek judicial review because his commitment was voluntary. In addition, Plaintiff contends that both his Second Amendment and equal protection rights were violated, because he does not live in a state where he may petition for a re-instatement of his right to possess firearms. Plaintiff is wrong on all counts.

To begin with, the record confirms that Plaintiff's commitment was involuntary. Plaintiff's argument that his commitment was voluntary does not have a single citation to the record. Plaintiff's Cross-Motion for Summary Judgment, Dkt. No. 90 at pp. 5-7. In addition, Plaintiff wholly fails to address Federal Defendants' citations to the record, including Plaintiff's own sworn testimony, confirming that the commitment was involuntary both factually and legally. Federal Defendants' Cross-Motion for Summary Judgment, Dkt. No. 88 at pp. 6-8 and citations therein.

Second, the Lanterman-Petris-Short Act, under which Plaintiff was subject to an involuntary commitment, provides for robust judicial proceedings; Plaintiff was informed of the availability of these proceedings and declined to participate in them. In addition, section 922(g)(4) does not mandate a court hearing in order for its restrictions to apply. Finally, this case does not involve any suspect classification, and rational basis review applies to any equal protection analysis. *See Nordyke v. King*, 681 F.3d 1041,1043 n.2 (9th Cir. 2012) (en banc) (collecting authority). Given that the regulations here, including the absence of a forum to prove current fitness, survive an intermediate level of scrutiny (*see Mai v. United States*, 952 F.3d 1106, 1120-21 (9th Cir. 2020)), they must by definition survive a challenge under the lesser rational basis scrutiny. *See, e.g.*, *National Rifle Association v. McGraw*, 719 F.3d 338, 349-50 (5th Cir. 2013). Therefore, Plaintiff's cross-motion for summary judgment should be denied, and summary judgment should be granted to Federal Defendants on all claims.

///

///

///

# ARGUMENT

## I. PLAINTIFF'S COMMITMENT WAS INVOLUNTARY AS A MATTER OF LAW AND FACT

Plaintiff's Certification of Firearms Prohibition confirms that he was subject to a 5250 commitment, which under California law is reserved for those who are "DTSO [danger to self or others] or gravely disabled." Exhibit 1; *see also* Cal. Welf. & Inst. Code § 5250. Accordingly, there can be no doubt that as a matter of law, Plaintiff's commitment was involuntary.

Furthermore, Plaintiff's commitment was factually involuntary, as the record in this case confirms. Plaintiff makes conclusory statements to the contrary that he does not support with citations to anywhere in the record; nor does he address the significant record evidence that contradicts his claims. For example, Plaintiff states (without citation) that "[a]t no time before, during or after his visit to the institution did Mr. Stokes exhibit any violent actions to himself or others." Dkt. No. 90 at p. 6. Plaintiff's intake form, however, states that he exhibited both self-harm and violence towards others. Dkt. No. 79 at 7. Specifically, Plaintiff punched a friend and put his own hands into a fire. *Id.* In addition, the report from the emergency room physician who initially saw Plaintiff states that Plaintiff's "foster parents . . . feel pt [patient] is a danger to self, them and his friends." Dkt. No. 79-1 at 10. While Plaintiff was "not cooperative" with his medical history, he did admit to the doctor that he was also experiencing hallucinations. *Id.*

Plaintiff also mischaracterizes and minimizes the facts that led to his commitment, facts that he testified to at his deposition and that are confirmed by the available medical records. Again without citation, Plaintiff claims that at age 18, he would "occasionally attend parties" and that at one of these parties he felt unwell after consuming "alcohol and cannabis", and subsequently decided to check himself into a mental institution for an examination. Dkt. No. 90 at p. 5. Plaintiff's deposition under oath, as well as the intake documents from his commitment, however, tell a different story.

For example, Plaintiff testified that he ingested psilocybin mushrooms at the party in question, leading to a psychotic episode. Dkt. No. 88-1; Stokes Depo. at 68, 84, 85. Plaintiff testified not simply that he felt "unwell" afterwards, but that he threw his clothes into a fire and had to be carried to the car.

1  Stokes Depo. at 85. While Plaintiff argues in his brief that "[o]ut of concern for himself and others, [he]
2  decided to check himself into a mental institution for examination", Dkt. No. 90 at p. 5, he testified
3  under oath that four adults drove him to Kaiser because he "was scared and didn't have a good
4  perspective of reality." Stokes Depo. at 104. Those adults subsequently stated that they believed Plaintiff
5  was a danger to themselves, to himself and to others. Dkt. No. 79-1 at 10. Plaintiff also testified: "I was
6  in really a bad, a very challenging emotional state. I didn't really understand what was going on. I just
7  knew that I wasn't well, I wasn't sleeping, and I was scared." *Id.* at 105.

8  In addition, Plaintiff's records from his stay confirm that he reported use of alcohol and
9  marijuana since elementary school, both auditory and visual hallucinations, a significant family history
10  of mental illness and drug use, anger at self, and months of decompensating prior to the specific "drug-
11  induced psychotic episode" that led to Plaintiff's commitment. Dkt. No. 79 at 7-8; Stokes Depo. at 68,
12  84, 85. While Plaintiff has not produced his medical records from Oakcrest (Stokes Depo. at 108), the
13  now-closed Sonoma County psychiatric hospital where he spent the majority of treatment during his
14  5250 hold, the records he has produced from his initial stay at Kaiser confirm that Plaintiff presented a
15  danger to himself and others that was confirmed by his own behavior and the statements of his foster
16  parents. *See* Dkt. No. 79 at 7; Dkt. No. 79-1 at 10.

17  In sum, at the time of his commitment, Plaintiff exhibited a danger to himself and others such
18  that a section 5250 involuntary commitment was warranted under California law. Furthermore, Plaintiff
19  testified under oath that he was aware that his commitment was involuntary. While Plaintiff argues –
20  again without citation to the record – that he was voluntarily seeking care, he testified under oath that he
21  knew he could not leave the facility without a court hearing. Stokes Depo. at 121-22. Accordingly, this
22  Court should find that Plaintiff's commitment was involuntary.

23  **II.   PLAINTIFF WAS AWARE OF, YET DECLINED TO UTILIZE, THE ROBUST
24         JUDICIAL PROCEEDINGS THAT WERE AVAILABLE TO HIM AT THE TIME
               OF HIS COMMITMENT**

25  As Federal Defendants discussed at length in their opening brief, the Lanterman-Petris-Short
26  Act, Cal. Welf. & Inst. Code §§ 5000 et seq., pursuant to which Plaintiff was involuntarily committed,
27  provides for the right to a judicial hearing, at the request of either a committed person or a person acting

on his or her behalf. Moreover, this right to a judicial hearing is available at any time during the involuntary commitment. Cal. Welf. & Inst. Code § 5275, et seq. Here, Plaintiff testified under oath that he was specifically told of his right to a judicial hearing, that he knew a judicial hearing was required in order for him to leave the facility, and that he nonetheless opted not to utilize the judicial proceedings available to him. Stokes Depo. at 116-17, 121-22. In sum, the reason a court proceeding did not take place at the time of Plaintiff's involuntary commitment is because he *chose* not to seek any type of judicial review of the 5250 certification. Stokes Depo. at 116-17, 121-22. Plaintiff's failure to use the procedures available to him under California law at the time can hardly create a constitutional problem now, particularly where, as discussed in detail *supra* and in Federal Defendants' opening brief, there is no evidence in the record that Plaintiff's commitment was anything other than involuntary.

The availability of these robust judicial proceedings satisfies the requirements of section 922(g)(4). In stating that "state-law procedures that lack robust judicial involvement do not qualify as commitments for purposes of § 922(g)(4)," 952 F.3d at 1110, the *Mai* Court cited *United States v. Rehlander*, 666 F.3d 45 (1st Cir. 2012), a case that Plaintiff fails to address. In *Rehlander*, Maine's emergency commitment procedure at issue did not meet the requirements of a "commitment" under section 922(g)(4) because – in contrast to California's statutory scheme – it did not allow for substantive judicial review. *Id.* at 48. Notably, neither the *Mai* Court nor the *Rehlander* Court held that any commitment without an actual judicial hearing did not qualify as a section 922(g)(4) commitment, and indeed, Plaintiff has pointed to no court so holding. Instead, the Ninth Circuit referred to "state-law procedures", while citing to a case that involved the non-availability of substantive review under the relevant state law. Had the Ninth Circuit wanted to hold that everyone subjected to a section 922(g)(4) restriction must have first had an actual judicial hearing, it could have done so.

Importantly, the Ninth Circuit repeatedly made it clear that section 922(g)(4) as a whole was "a reasonable fit for the congressional goal of reducing gun violence" and that the statute itself was limited to "those who were found, through procedures satisfying due process, *actually* dangerous in the past." *Mai*, 952 F.3d at 1121. Furthermore, in assessing its constitutionality, the Ninth Circuit found section 922(g)(4) to be more narrowly tailored than other lifetime prohibitions, and confirmed that its holding

1  addressed section 922(g)(4)'s "prohibition on those who [like Plaintiff] 'have been committed to a
2  mental institution.'" *Id.* Here, pursuant to procedures detailed in California law, Plaintiff was found to
3  be subject to an involuntary commitment, which applies only to those persons who are "a danger to
4  others, or to himself or herself, or gravely disabled." Cal. Welf. & Inst. Code § 5250(a). California law
5  provided Plaintiff with an opportunity to obtain a judicial proceeding as part of that involuntary
6  commitment, which he declined. Nothing in *Mai* suggests that Plaintiff Stokes should be treated
7  differently than the plaintiff in that case.

8      The Second Circuit's decision in *Phelps v. Bosco*, 711 Fed. Appx. 63, 64-65 (2d Cir. 2018), is
9  also persuasive here. During his involuntary commitment, the plaintiff in *Phelps* requested a court
10 hearing, which was available under the applicable law, and subsequently withdrew his request. *Phelps v.*
11 *Bosco*, 2017 WL 437407, at *3 (N.D.N.Y. 2017). On appeal, the Second Circuit specifically noted "the
12 right to seek judicial review" under New York law, and found that the plaintiff's commitment was a
13 prohibiting event under section 922(g)(4) even though – as here – the plaintiff had ultimately chosen not
14 to pursue judicial review. 711 Fed. Appx. at 64-65. Like California's Lanterman-Petris-Short Act, New
15 York's statutory scheme provides for involuntary commitment when a person with "mental illness
16 presents a serious danger to herself or others." *Id.* at 64. Such persons, even if they do not participate in
17 an actual judicial hearing, are "exactly the sort of individual the federal gun control laws were designed
18 to prevent from obtaining firearms." *Id* .(internal citations and quotations omitted). So too here.

19     Plaintiff now also argues that certain paperwork was not provided during his commitment, and
20 thus that Oakcrest did not comply with the requirements of Cal. Welf. & Inst. Code §§ 5000 et seq. First,
21 Plaintiff has not established that the forms he references in his brief (Dkt. No. 90 at pp. 10-11) were
22 required in 2002, at the time of his commitment. Furthermore, as stated *supra*, Plaintiff has not produced
23 any records from Oakcrest, records which are not in the custody or control of Federal Defendants, as he
24 was ordered to do by this Court. Dkt. No. 68.[1] Accordingly, Plaintiff is incorrect that "[i]t is clear from

---

[1] Specifically, the Court stated that it "would like to see all records of the fourteen-day commitment as well as the 72-hour commitment. The Court is of the view that even if Oakcrest is closed, those records could be in storage somewhere. Track them down. Do not delay." Dkt. No. 68.

FEDERAL DEFENDANTS' OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT
NO. 3: 19-CV-04613  WHA

5

the record that no such forms were ever prepared" and that there is a "lack of dispute over the absence of any notice of the 5250 certification." Dkt. No. 90 at p. 11.

Finally, Plaintiff has averred that he is challenging his 5250 commitment in state court, and that the state court has still not rendered a decision. However, Plaintiff has cited to no caselaw establishing that he is entitled to raise a collateral attack on his state-law commitment in federal court prior to a state court decision on that issue, and he should not be permitted to do so. *See, e.g.*, *United States v. McIlwain*, 772 F.3d 688, 698 (11th Cir. 2014) (a plaintiff is not entitled "to a collateral attack in federal court on a commitment he did not – and has not in any way – challenged in the state court.").

### III. PLAINTIFF'S SECOND AMENDMENT CLAIM IS FORECLOSED BY THE *MAI* DECISION

Plaintiff additionally attempts to argue that *Mai* is not controlling here by stating that "the Court assumed but did not evaluate whether the plaintiff's claim involved conduct protected by the Second Amendment." Dkt. No. 90 at 12. The *Mai* Court's assumption that Mr. Mai's claim fell within the protections of the Second Amendment, and its detailed analysis confirming that section 922(g)(4) withstands the intermediate scrutiny applicable to Second Amendment claims, are controlling here. 952 F.3d at 1113-21. Plaintiff cites to *Tyler v. Hillsdale Cty. Sheriff's Dep't.*, 837 F.3d 678, 687-88 (6th Cir. 2016)*,* but that case is readily distinguishable. In *Tyler*, the Sixth Circuit did not rule on the constitutionality of section 922(g)(4) as applied to the plaintiff; rather, it held that the case was not resolvable on the question of whether the challenged law burdens conduct protected by the Second Amendment, and remanded to the district court for the application of intermediate scrutiny. *Id.* at 699. Moreover, the opinion of the Ninth Circuit, and not the Sixth Circuit, must control in this case.

Plaintiff also argues – without citation to any caselaw – that Federal Defendants' contention that there is a substantial nexus between the legitimate goal of preventing gun violence and the current absence of a forum to demonstrate fitness is "called into question" by the fact that certain states do provide an opportunity for restoration of rights. Dkt. No. 90 at p. 13. In so doing, Plaintiff wholly ignores *Mai*, which squarely addressed this question and held that even without an avenue of relief from a categorical, lifetime ban, "§ 922(g)(4) nevertheless remains a reasonable fit for the congressional goal

of reducing gun violence." *Mai*, 952 F.3d at 1120. The governmental interests of preventing violence, including suicide, that impacts an individual, families, and community, are powerful and compelling. *Id.* at 1120-21. In addition, the evidence of increased risk of suicides from those released from involuntary commitment (about 39 times the risk of those not previously committed), is significant and further legitimizes this goal. *Id.* at 1121.

Moreover, Plaintiff's reliance on the 2008 enactment of 34 U.S.C. § 40915, in which Congress authorized (but did not mandate) states to create their own "relief from disabilities" program, is misplaced. Plaintiff argues that the lifetime prohibition on gun possession to which he is subject is called into question by the Congressional authorization for states to develop such programs. Dkt. No. 90 at p. 13. The Ninth Circuit, however, specifically addressed and rejected this argument as follows:

> Congress enacted § 40915 as part of the NICS Improvement Amendments Act of 2007 ("NIAA"), 34 U.S.C. §§ 40902-40941. As its name suggests, the NIAA aimed to improve the National Instant Criminal Background Check System ("NICS"), the federal background-check system that includes a database listing persons who have been disqualified from possessing firearms. *Id.* § 40902. Congress passed the NIAA in response to horrible acts of gun violence by those with a history of mental illness. *Id.* § 40902(8)-(9). All of the NIAA's substantive provisions other than § 40915 seek to improve the information contained in the federal database. . . .
>
> The NIAA was a political compromise that included § 40915's avenue for relief for some of the least dangerous only in exchange for greatly improved enforcement as to all the rest, including the most dangerous. Congress' statutory extension of grace to some persons as part of a political compromise aimed at preventing gun violence does not affect our constitutional analysis. We do not read the NIAA as disturbing the longstanding congressional judgment -- supported by scientific evidence – that those who were involuntarily committed to a mental institution pose an increased risk of violence even years after their release.

*Mai*, 952 F.3d at 1119-20 (footnotes omitted).

Accordingly, Federal Defendants are entitled to summary judgment on this claim.

### IV. PLAINTIFF'S EQUAL PROTECTION AND DUE PROCESS ARGUMENTS IGNORE THE APPLICABLE LAW

Plaintiff argues, without citation to any caselaw, that his inability to appeal his section 922(g)(4) prohibition "hinges on his state of residence and thus is an impermissible violation of his rights to Equal Protection under the law." Dkt. No. 90 at p.13. Plaintiff also alleges that his procedural and substantive

7
FEDERAL DEFENDANTS' OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT
NO. 3: 19-CV-04613 WHA

due process rights have been violated. All of Plaintiff's unsupported arguments are meritless.

As Federal Defendants have demonstrated at length in their earlier briefing (Dkt. No. 84 at pp. 4-10; Dkt. No.88 at pp. 19-25), when, as here, a law assessed under an enumerated rights challenge withstands strict or intermediate scrutiny, the law will also survive an equal protection challenge applying rational basis review. *See, e.g.*, *Kwong v. Bloomberg*, 723 F.3d 160, 170 n.19 (2d Cir. 2013) (citing authority) (explaining that where a litigant asserts corresponding Second Amendment and equal protection claims, and the Second Amendment claim fails, "courts have applied 'rational basis' review to Equal Protection claims on the theory that the Second Amendment analysis sufficiently protects one's rights"); *Nordyke v. King*, 681 F.3d 1041,1043 n.2 (9th Cir. 2012) (en banc) ("As to the Nordykes' equal protection claim, because the ordinance does not classify shows or events on the basis of a suspect class, and because we hold that the ordinance does not violate either the First or Second Amendments, rational basis scrutiny applies."). In addition, Federal Defendants have demonstrated that Plaintiff's substantive and procedural due process claims must fail. *See, e.g.*, *Albright v. Oliver,* 510 U.S. 266, 273 (1994) (holding that a substantive due process challenge is redundant where, as here, it is brought along with an enumerated rights challenge); *Jefferies v. Sessions*, 278 F. Supp. 3d 831, 846-47 (E.D. Pa. 2017) (dismissing Plaintiff's claim that section 922(g)(4) violated his Second Amendment rights, dismissing his "equal protection claim under the Fourteenth Amendment", and finding that plaintiff "does not have a Fifth Amendment right to procedural due process before the United States applies § 922(g)(4) to him because of his involuntarily commitment.")

While Federal Defendants need not repeat their arguments from previous briefing, they note that Plaintiff has not even addressed the foundational question of what level of scrutiny would apply to his equal protection claims. *See, e.g.*, *Giannani v. Real*, 911 F.2d 354, 358 (9th Cir. 1990) (finding that in order to decide whether a law violates the equal protection clause, the reviewing court must first determine the appropriate level of scrutiny). Plaintiff argues that his lack of a current forum "cannot withstand any level of scrutiny" (Dkt. No. 90 at p. 14), but in so doing, Plaintiff completely ignores the fact that *Mai* considered a situation where the plaintiff, a resident of Washington, also did not have an avenue to have his ability to possess firearms restored. In that situation, the Court found that even with

FEDERAL DEFENDANTS' OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT
NO. 3: 19-CV-04613 WHA

8

the lack of such a forum, "§ 922(g)(4) nevertheless remains a reasonable fit for the congressional goal of reducing gun violence" and thus satisfies intermediate scrutiny review under the Second Amendment. *Mai*, 952 F.3d at 1111, 1120-21. Statutes making distinctions among residents of different states are subject to rational basis review. *See, e.g.*, *Matsuo v. United States*, 532 F. Supp. 2d 1238, 1248 (D. Hawaii 2008), *aff'd* 586 F.3d 1180 (9th Cir. 2009)). Because a state's lack of a relief from disabilities program survives constitutional challenge under intermediate scrutiny, *Mai*, 952 F.3d at 1111, it must by definition survive a challenge under the lesser rational basis scrutiny applied to equal protection claims such as Plaintiff's. Judgment should therefore be granted to Federal Defendants on Plaintiff's equal protection and due process claims.

## V.   CONCLUSION

For the foregoing reasons, along with the record in this matter and the previous briefing, Plaintiff's cross-motion for summary judgment should be denied and Federal Defendants should be granted summary judgment on all of Plaintiff's claims.

Respectfully submitted,

DATED: May 27, 2021                                    STEPHANIE M. HINDS
                                                       Acting United States Attorney

                                                       By:    /s/ *Julie Bibb Davis*
                                                       JULIE BIBB DAVIS
                                                       Assistant United States Attorney
                                                       Attorneys for Federal Defendants