1  Timothy Kelly, SBN 304840
   1403 Spyglass Parkway
2  Vallejo, CA 94591
    (707) 570-7507
3
   Attorney for Plaintiff
4

5                    **UNITED STATES DISTRICT COURT**

6                    **NORTHERN DISTRICT OF CALIFORNIA**

7                         **SAN FRANCISCO DISTRICT**

8  | EASTON STOKES | ) | Case No.: C-19-cv-4613 WHA |
   
9  |              Plaintiff, | ) |  |

10 | vs. | ) |  |
   |  | ) | PLAINTIFF'S REPLY IN SUPPORT OF |
11 | UNITED STATES DEPARTMENT OF | ) | CROSS MOTION FOR SUMMARY |
   | JUSTICE, et al. | ) | JUDGMENT; [PROPOSED] ORDER |
12 |  | ) |  |
   |              Defendants. | ) |  |
13 |  | ) | Judge: Hon. William Alsup |
   |  | ) | Date: June 17th, 2021 |
14 |  | ) | Time: 8:00 a.m. |
   |  |  | Location: Remote |

15

---

1
PLAINTIFF'S REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT;
[PROPOSED] ORDER

## ARGUMENT

**I.  Plaintiff's decision to go to the mental health facility and check himself in was a voluntary choice.**

Plaintiff went voluntarily to Kaiser seeking mental help and has testified to that fact under oath (Stokes Nov. 20, 2020 Deposition) at 99 :1-2.  The testimony of others who were witness to the event confirm that Mr. Stokes sought help voluntarily. (Nancy Barker – Declaration, Paragraph 2). (John Bassignani – Declaration, Paragraph 8). (Micah Black – Declaration, Paragraph 3). Plaintiff also voluntarily sought to be transported from Kaiser to Oakcrest because that is where he was told he could get treatment.  (Stokes Nov. 20, 2020 Deposition) at 105 – 108. Neither Mr. Stokes's uncertain recollection of exact details (understandable given his young age and the nearly two decades since these events) or his awareness that there was a process to leave changes that underlying fact. Mr. Stokes knew he had an option to leave and chose to extend his stay out of an abundance of caution. (Stokes Nov. 20, 2020 Deposition) at 117 – 118. "I didn't have any interest in just getting out. I wanted to get better."   (Stokes Nov. 20, 2020 Deposition) at 121.

Defendants argue that the 5250 designation by itself is proof that Plaintiff was deemed to be a danger to himself and others but there is no record of who made this designation or what evidence it may have been based on. The 'danger to self or others' standard requires a showing of 'significant' danger. Lynch v. Baxley, 386 F. Supp. 378 (M.D. Ala. 1974). The factual record indicates that on the night in question plaintiff, while under the effects of mushrooms and after an unnerving minor auto accident, tossed several personal items into a beach bonfire, and repeatedly ran back and forth from the bonfire to a tidal break to get his feet in the water. (Stokes Nov. 20, 2020 Deposition) at 85. It is understandable that such behavior would be a cause for

concern to both plaintiff and his friends, but it strains credulity to imagine it is an adequate basis for a lifetime revocation of a fundamental right.

### II. The available facts do not support an assumption that the mental health facility followed the law.

Under WIC 5150-5157 there are two mandatory legal documents, the 5150 application itself and the patient advisement form as required by WIC 5157(c); the latter may be issued in the form of Form MH 303, *Involuntary Patient Advisement*. Neither was presented to the plaintiff or provided to the state as required. State defendants raise the issue of plaintiff's acknowledged confusion during the period in question, but Plaintiff clearly recalls other forms and is confident that he would recall if such a form was presented to him. (Stokes Nov. 20, 2020 Deposition) at 131 – 132. Defendants do not offer any evidence that indicates that either health facility did provide the required documentation to plaintiff and plaintiff has convincingly testified that he *did not* receive any such documentation.

State Defendant offers a Maxim of Jurisprudence to support the questionable presumption that the law was followed regarding the certification of the 5250 hold. Dkt. No. 79-1. However, such an interpretation violates other maxims of jurisprudence. If there is not any reasonable rationale for believing that plaintiff is any more dangerous than the average citizen, he should not be permanently prohibited from owning a firearm. *See* Cal. Civ. Code § 3510 ("When the reason of a rule ceases, so should the rule itself.") If similarly situated plaintiffs in another state would have an avenue for appeal, plaintiff should as well. *See* Cal. Civ. Code § 3511 ("Where the reason is the same, the rule should be the same.") If plaintiff voluntarily sought treatment, it is illogical to punish him in the manner that the state would for someone who had to be coerced

3
PLAINTIFF'S REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT; [PROPOSED] ORDER

into necessary treatment. *See* Cal. Civ. Code § 3515 ("He who consents to an act is not wronged by it.") If this matter is to be decided by a reliance on philosophical syllogisms, it is apparent that the preponderance of the axioms arcs towards a decision in plaintiff's favor.

**III.   The lack of robust judicial procedures in plaintiff's case invalidates this 5250 hold under the standard set out in Mai.**

As discussed in plaintiff's prior filing, the most reasonable and logically consistent interpretation of Mai's requirement for the validity of a 5250 hold is whether robust judicial proceedings were involved in plaintiff's specific commitment. A judicial proceeding at its core ensures that there is a record of the evidence that was used to make an important decision. Here, the decision was consequential indeed. Plaintiff's 5250 designation has yielded a complete denial of his fundamental rights. If plaintiff's complaint before this court fails, he will suffer this limitation of rights for the rest of his life; if he is blessed with the longevity of his grandfather, this could be over 8 decades of rights deprivation. It is reasonable that the decision to impose such a lengthy and impactful denial of rights be required to be reasonably documented and reasonably supported by factual showing. There was clearly not robust judicial proceedings involved in Mr. Stokes' case.

Nevertheless, federal defendants argue that the fact that Mr. Stokes' *could have* demanded a court hearing is an appropriate equivalent to such proceedings actually occurring. Accepting such a conclusion would be contrary to public policy and deeply illogical. First, interpreting a decision not to utilize court proceedings as the equivalent of an adverse court ruling would create a perverse incentive for anyone seeking institutional help following a period of psychological distress; they would have to weigh the logistical short-term benefits of actively consenting to treatment for an

4

PLAINTIFF'S REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT; [PROPOSED] ORDER

acute problem with the long term detriment that would come from a presumption that they should be treated in an equivalent manner to someone who a court ruled *must be* subject to such treatment. This conclusion would likely have a chilling effect on the number of individuals who feel they needed psychological help making the responsible decision to actually seek such help. Secondly, Defendants argument is essentially that Plaintiff waived his rights by not demanding a court hearing about the 5250 designation. Such a waiver would require that plaintiff understood how a designation would affect his rights, and plaintiff has testified that he only realized the lifelong impact on his second amendment rights years later.  (Stokes Nov. 20, 2020 Deposition) at 52. In short, defendant's argument that Mai supports a lifetime ban for Mr. Stokes implies he made a knowing waiver of rights by failing to demand a court hearing, but his decision implies no such thing.

**IV. Even if plaintiff's due process claim does not grant him an opportunity to demand a forum to appeal his permanent loss of a fundamental right, both the equal protection argument and the interplay of state and federal law are unconstitutional as applied to plaintiff's loss of firearm rights.**

As argued in the prior filing, plaintiff's denial of rights in this case is an unconstitutional violation of equal protection. The Privileges and Immunities imposes equal protection standards on the Federal Government to treat citizens of one state equally to citizens of any other state. Bolling v. Sharpe, 347 U.S. 497 (1954); Schneider v. Rusk, 377 U.S. 163, 168 (1964); Shapiro v. Thompson, 394 U.S. 618, 641–42 (1969). As this case demonstrates, the federal government's current policy impermissibly grants a right to review to citizens of some states and denies it to citizens of others.

5
PLAINTIFF'S REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT; [PROPOSED] ORDER

This case also presents an unusual question that raises novel and important questions about the manner in which our federalism jurisprudence impacts the rights on individuals. Is it valid to constrain a citizen's fundamental rights when neither the state nor the federal system would impose a ban on the citizen's rights by themselves?

The California legal system by itself would not block Mr. Stokes from inheriting his grandfather's firearm. The state ban on his right to possess a firearm after a 5250 hold is only five years, so the CA legal system clearly believes that has a right to the restoration of his personal liberties. Likewise, the federal defendants have acknowledged that the sole basis for Mr. Stokes's inability to pass the national background check is the state designation. If the state designation was altered, the federal government would have no objection to Mr. Stokes receiving his ancestor's service weapon. Even more bizarrely, the federal government has expressed a desire to grant an avenue for relief for plaintiffs like Mr. Stokes, and it is only the decision by California to not fund such a program which cuts off the path to relief. In short, both the federal and state defendant point to the other when asked who is responsible for plaintiff's denial of rights.

Plaintiff believes that the due process claims are dispositive in this matter. However, in the event that they are not, plaintiff requests more time to adequately present the equal protection argument/wishes to preserve his equal protection argument and any arguments related to federalism/vagueness.

**Conclusion:**

Plaintiff has received a lifetime ban of a fundamental right as a result of a few weeks of psychological distress when he was a teenager. Both plaintiff's testimony and the declaration of

witnesses indicate that plaintiff voluntarily and responsibly sought treatment. Plaintiff only seeks a reasonable opportunity to have a forum to prove his mental fitness and personal responsibility. He has lived a responsible life and the interests of justice support him having at least an avenue to request he be granted the same rights as his fellow citizens.

    For the foregoing reasons, along with the record in this matter and the previous briefings, Defendant's cross-motion for summary judgment should be denied and Plaintiff should be granted summary judgment on all his claims.

Respectfully Submitted,

DATED: June 7th, 2021        By: ___Timothy Sean Kelly_____

                                              Attorney for Plaintiff

PLAINTIFF'S REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT; [PROPOSED] ORDER