**Pages 1 - 19**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable William Alsup, Judge

| | |
|---|---|
| EASTON STOKES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| VS. ) | **NO. C 19-04613-WHA** |
| ) | |
| UNITED STATES DEPARTMENT OF ) | |
| JUSTICE, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

San Francisco, California
Thursday, June 17, 2021

**TRANSCRIPT OF REMOTE TELEPHONIC PROCEEDINGS**

**APPEARANCES**: (Appearances via AT&T Teleconference.)

For Plaintiff:
        LAW OFFICE OF TIMOTHY S. KELLY
        1403 Spyglass Parkway
        Vallejo, California 94591
   **BY: TIMOTHY S. KELLY**
      **ATTORNEY AT LAW**

For Federal Defendants United States
Department of Justice, et al.:
        UNITED STATES ATTORNEY'S OFFICE
        1301 Clay Street - Suite 340S
        Oakland, California 94612
   **BY: JULIE B. DAVIS**
      **ASSISTANT UNITED STATES ATTORNEY**

**(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

Reported By:  Ruth Levine Ekhaus, RMR, RDR, FCRR
              Official Reporter, CSR No. 12219

**APPEARANCES**:  (CONTINUED)

For California State Defendants
Xavier Becerra, et al.:
                    CALIFORNIA STATE ATTORNEY
                    GENERAL'S OFFICE
                    1300 I Street - Suite 125
                    P.O. Box 944255
                    Sacramento, California 94244
              **BY:  JERRY T. YEN**
                    **DEPUTY ATTORNEY GENERAL**

Also Present:  Easton Stokes

**Thursday - June 17, 2021**                                              **2:02 p.m.**

**P R O C E E D I N G S**

---o0o---

**P R O C E E D I N G S**

    **THE CLERK:** This court is now in session. The Honorable William Alsup presiding.

    Calling Civil Matter 19-4613, Stokes versus United States Department of Justice, et al.

    Starting with plaintiffs, will counsel please state your appearances.

    **MR. KELLY:** Timothy Kelly, attorney for plaintiff.

    **MS. DAVIS:** Good afternoon, Your Honor. This is Julie Davis representing federal defendants.

    **MR. YEN:** Good afternoon, Your Honor. This is Jerry Yen on behalf of the California Attorney General.

    **THE COURT:** Anyone else?

    **MR. STOKES:** Easton Stokes, the plaintiff.

    **THE COURT:** I don't have much time to give you today. We've been though an enormous amount of briefing in the case. I will give you a tentative thought that I have -- I'm not saying it's a tentative ruling -- and then I'll give you a brief amount of time to address it.

    In my mind, an important statement was made in the *Mai versus United States* decision and -- and I have to find it again now. And I'll quote it.

1      "Additionally, commitments under state law
2  procedures that lack robust judicial involvement do
3  not qualify as commitments for purposes of such
4  922(g)(4)."
5      And that's page 110, line 52, F.3d at 110.  I'm sorry,
6  1110.
7      Now, the procedures in California don't have any judicial
8  involvement and place the burden on the committed person to
9  seek a writ of habeas corpus.  And that's vastly different than
10 the procedure that was approved in the State of Washington in
11 the *Mai* case, where there had been robust judicial involvement.
12     So my tentative view is that the federal statute does not
13 qualify -- that the procedure used in California does not
14 qualify as a commitment under the federal statute and,
15 therefore, Mr. Stokes should be allowed to acquire these two
16 firearms; and this is without reaching the equal protection
17 point.
18     I will first give the Government an opportunity to
19 respond.  And then I'll give Mr. Stokes's counsel a chance to
20 respond.  But this is the main point that -- of concern.
21     So, Ms. Davis, you get to go first.
22         **MS. DAVIS:**  Thank you, Your Honor.
23     I think we address this fairly robustly in our briefing,
24 but to restate, California's procedures certainly do have
25 robust judicial proceedings.  Mr. Stokes chose not to avail

himself of them.

If you look at the case cited by the *Mai* court, *Rehlander*, they specifically point to a main proceeding that had had no substantive judicial involvement at all. And they specifically said that the other main proceeding did have those protections there; but the plaintiff in that case had only been committed based on the three-day, limited commitment which, in California, also does not count as a disqualifying, involuntary commitment; it is only the longer 5250.

Also, if you look at the *Rehlander* court, it specifically says that *Mai* didn't even consider that -- that shorter commitment a disqualifying commitment, which the State of California does. The State of California actually sent a certificate of firearms restriction based on the finding that petitioner had been committed for being a danger to himself or others.

In addition, the not -- neither the Ninth Circuit, nor the First Circuit ever stated that the judicial proceedings were non-waivable under any circumstances.

And if you look at *Phelps v. Bosco*, the Second Circuit case, they specifically upheld a 922(g)(4) ban, even though, as here, the plaintiff was offered and declined to have the judicial proceedings that were available to him.

So in this case, the state law does have the judicial proceeding. Plaintiff declined to opt to avail himself of

1  them.  There is nothing stating that persons in -- who are
2  committed are not allowed to waive these conditions.
3       So I think that that is clear, that here it does count as
4  a disqualifying commitment; otherwise, anybody who was
5  committed could simply waive their judicial hearing and then
6  state:  Well, since I didn't have a court hearing, I can't
7  be -- I can't have a ban under 922(g)(4).
8       I also would like to point out, since you mentioned that
9  you thought that plaintiff should be able to have these
10 inherited guns, if the restriction is lifted, it doesn't just
11 apply to inherited firearms.  It is -- it lifts the
12 restrictions for other firearms as well.  So limiting it to
13 what he says he wants to inherit, I don't think is the
14 proper --
15      **THE COURT:**  No, no.  I didn't mean to imply that it
16 was limited to -- no.  But am I correct that the only judicial
17 involvement is by way of habeas corpus?
18      **MS. DAVIS:**  So the judicial involvement is that any
19 time -- under the law -- and I think we had it in our briefing
20 and the state defendants also put it in detail in its briefing,
21 is that the structure of the California Lanterman-Petris-Short
22 Act states that at any time that the person is in the facility,
23 they can ask for a judicial hearing.  And they are even
24 provided with an attorney if they would like one.  All they
25 have to do is request it.

1     They don't have to -- my understanding is that they don't
2  have to go to a separate court, if that's what you're asking.
3  No.  The Lanterman-Petris-Short Act provides for access to a
4  judicial proceeding upon request and also allows for counsel as
5  well.
6           **THE COURT:**  Well, the request -- answer my question.
7  My law clerk told me, categorically, that the only way to get
8  out of the 5250 is by way of habeas corpus.
9     And you're telling me, no, that there is some kind of
10 automatic set-up; all you've got to do is make a request to an
11 orderly there at the insane asylum, and they will automatically
12 give you a hearing?
13          **MS. DAVIS:**  I don't think it's a request to --
14 honestly, I don't think it's a request to an orderly, no.
15    I think the statute clarifies how the procedure works.  In
16 this case, the plaintiff testified in his deposition that he
17 was told of this ability to go to court and he declined it.
18          **THE COURT:**  Please, Ms. Davis, just answer my
19 question.
20          **MS. DAVIS:**  I don't --
21          **THE COURT:**  Is it habeas corpus or is it something
22 else?
23          **MS. DAVIS:**  I'm sorry.  I'm -- I don't know -- do you
24 mean, does he have to file with a separate state court to get a
25 judicial hearing?  Is that what you mean?

1  **THE COURT:** That's the first question, yes.

2  **MS. DAVIS:** That's -- how I understand it is that the
3  person can make a request while he or she is committed, and
4  then is able to have a judicial hearing.

5  **THE COURT:** Read to me the statute.

6  **MS. DAVIS:** I don't know. I'm pulling up the statute
7  right now. But if -- I think there might be a difference just
8  in semantics here. If you mean a writ of habeas corpus, but
9  the person has to find a lawyer and file outside of the system,
10 I don't think that that is true; but I think we may not be
11 talking about the same thing.

12 **THE COURT:** I want you to read to me the statutory
13 language that you're taking about. Maybe my law clerk missed
14 it.

15 **MS. DAVIS:** Okay. I will have to pull that up.

16 **MR. YEN:** Your Honor, this is Jerry Yen on behalf of
17 the California Attorney General. If I may try to answer your
18 question, Your Honor.

19    I would refer the Court to California Welfare and
20 Institutions Code 5275. There, the right to a hearing by writ
21 of habeas corpus can be made to either the person delivering
22 the copy of the notice of certification, or to any member of
23 the treatment staff of the facility providing intensive
24 treatment at any time during the period of intensive treatment.

25 **THE COURT:** Read it to me again. Read me -- I heard

1   you say "habeas corpus."  Read that again.
2           **MR. YEN:**  All right.  I'll read it a little bit
3   slower, and also for the benefit of the court reporter.
4           "Every person detained by certification for
5       intensive treatment shall have a right to a hearing
6       by writ of habeas corpus for his or her relief after
7       her or she or any person acting on his or her behalf
8       has made a request for relief to either:  A, the
9       person delivering the copy of the notice of
10      certification to the person certified at the time of
11      the delivery; or, B, to any member of the treatment
12      staff of the facility providing intensive treatment
13      at any period during the period of intensive
14      treatment pursuant to Section 5250."
15          **THE COURT:**  All right.  That's Section 5275?
16          **MR. YEN:**  Correct.
17          **THE COURT:**  Okay.  Thank you.
18          **MR. YEN:**  You're welcome.
19          **THE COURT:**  All right.  Let me hear from Mr. Kelly.
20          **MR. KELLY:**  Good afternoon, Your Honor.  Can you hear
21  me okay?
22          **THE COURT:**  Yes.  Please, go ahead.
23          **MR. KELLY:**  Okay.  So there's three main points on
24  this issue of robust judicial involvement.  And, you know, the
25  first point we want to make is that the federal defendants have

1  argued repeatedly that because plaintiff waived his right to
2  the Court hearing, that that waiver should be seen as an
3  acquiescence and agreement to the 5250.  Essentially, that's
4  what they seem to be arguing.
5       I think it's very clear that there was no robust judicial
6  involvement in Mr. Stokes's case whatsoever.  But their
7  argument seems to be because there was the opportunity for a
8  hearing if he chose, that that should count as a general robust
9  judicial involvement.
10      And our response is that for that waiver to be meaningful,
11 the plaintiff would need to be informed of the long-term
12 consequences of declining that hearing.
13      Plaintiff here -- my client was not informed of that.  He
14 at no point in the treatment was told that he is going to have
15 a long-term, lifelong impact on a fundamental right.
16      And California Welfare and Institutions Code 5152,
17 explicitly states that written notice must be provided in these
18 cases where there is a 5250 designation, which says the
19 basis -- and that notice needs to include the basis for why the
20 person was labeled 5250; the specific facts which form the
21 basis; and the person who is making this evaluation.  And that
22 the person given the 5250 designation needs to be notified of
23 all these things for this exact reason because if they are
24 going to waive it, it needs to be a known waiver and --
25           **THE COURT:**  Let me stop you.  Do we have a copy of the

1   notice that was given or the statute that lays out what the
2   notice should have said in our case?
3           **MR. KELLY:**  The summary judgment motion to dismiss I
4   filed on 4/29 includes the forms that is -- the form that's
5   supposed to be used.  To the best of my client's recollection,
6   he was never given any such form --
7           **THE COURT:**  All right.  Does the form -- does the form
8   state that he will be barred in California from ever having a
9   firearm?
10          **MR. KELLY:**  No.  He never received any form like that.
11  He never received any form even stating that he was given a
12  5250 designation, who was making that designation, and on what
13  basis.  As far as he knows, no forms like that exists.
14          **THE COURT:**  Wait.  Let me stop you.
15      Ms. Davis, was he informed at the time of the alleged
16  waiver that he would lose his right in California to ever own a
17  firearm?
18      I can't hear you, Ms. Davis.  You might be on mute.
19          **MS. DAVIS:**  Your Honor, I'm sorry about that.
20      We don't have those records.  Your Honor asked plaintiff
21  to produce those documents from Oakcrest.  And my understanding
22  is that he has not been able to receive them.
23      So there is no indication that the state didn't adhere to
24  its own policy, but the documents are not in the record.
25  They've they never been produced to us and defendant doesn't

1  have them, so --

2      **THE COURT:**  All right.  Well, this is --

3      **MS. DAVIS:**  -- the record is silent as to that.

4      **THE COURT:**  Well, isn't there a Welfare Code section
5  that describes what should go into the notice?

6      **MS. DAVIS:**  There is a welfare code.  I'm not sure if
7  it is exactly the same as what it was when plaintiff was
8  admitted to the hospital.  But what I'm saying is we don't have
9  those records at all from Oakcrest.  We have the records from
10 Kaiser.  Those have been filed.
11     But plaintiff has not submitted the records from Oakcrest,
12 so we don't know what he was -- the record is silent as to what
13 he was presented with while he was there; however, the record
14 that we do have, such as his certification of firearms
15 prohibition, do indicate that the procedures were followed, and
16 he was subject to a California involuntary commitment of 5250.
17 But those records are not records that are in federal
18 defendants' custody, nor were they ever.

19     **MR. KELLY:**  May I respond to that?

20              (Reporter interruption.)

21     **THE COURT:**  Is this Mr. Kelly?

22     **MR. KELLY:**  Yeah.  We dispute that assertion.
23     There -- our review of the evidence does not indicate
24 any -- any suggestion that the 5250 designation was done
25 pursuant to the proper requirements under 5152, California

1  Welfare and Institutions Code Section 5152.
2      Because it seems to be -- although, it's somewhat unclear
3  from the -- we have found considerable, you know, numerous
4  pages of medical records from Kaiser.  And it's at least
5  suggested that Kaiser made the 5250 designation and that he did
6  treatment in Oakcrest.  That's, I believe, what the record
7  indicates.
8      And there is no form, as required from -- by Section 5152,
9  that says why Mr. Stokes was given this designation; what the
10 factual basis of this designation was; and who was making the
11 designation, let alone --
12     **THE COURT:**  Can I ask a question?
13 Does 5250 or any of these code sections, as it existed
14 then or if we don't have that, as it existed now, spell out
15 what notice was supposed to say?
16     **MR. KELLY:**  Yes, Your Honor.
17 California Welfare and Institutions Code 5152 says a
18 notice of certification is to be prepared and delivered to
19 anyone designated as a 5250.  This notice should be
20 substantially in the following form, and then it provides a
21 sample form which states that the person -- you know, the three
22 bases for this designation is that they were a danger to
23 others; a danger to himself or herself; or gravely disabled.
24     **THE COURT:**  51 what?
25     **MR. KELLY:**  5152, California Welfare and Institutions

1  Code.
2      **THE COURT:** That describes what the notice should say?
3      **MR. KELLY:** I believe so. Yes, Your Honor.
4      **THE COURT:** Does it say or did it say anything about
5  firearms?
6      **MR. KELLY:** Not that I'm aware of, no.
7      **THE COURT:** How good is your awareness?
8      **MR. KELLY:** I believe it is accurate in this case.
9      **MS. DAVIS:** Your Honor, I just want to -- this is
10 Julie Davis for the federal defendants.
11    And I just want to reiterate again that, even though
12 plaintiff was asked to produce all of the records, he has not;
13 so we don't have those records for this case right now.
14     **THE COURT:** But you could have just as easily gone to
15 the people who run these programs and found out what the --
16 what was the form of notice that was given to somebody under
17 5250 back at the time in question and -- but here is the guy
18 that you say was crazy and out of his mind, you claim you gave
19 a knowing waiver, and you can't even produce what -- how he
20 was -- it's got to be an informed waiver. It can't just be a
21 waiver. It's got to be informed.
22     **MS. DAVIS:** Your Honor --
23     **THE COURT:** Yes.
24     **MS. DAVIS:** I'm going to -- there is none of the case
25 law that says that. There is no case law that says that there

1  has to be a knowing waiver specifically of Second Amendment
2  rights prior to receiving a 922(g)(4) prohibition.  That's not
3  in any of the case law.  In fact, even the cases that talk
4  about judicial proceedings, to my knowledge, don't talk about
5  those judicial proceedings including a discretion of a waiver
6  of gun rights.
7       So I think this waiver issue is something new that's been
8  brought up without reliance on any case law.
9       **THE COURT:**  Well, Ms. Davis, we've had this case a
10 long time.  And you and your office could have been of great
11 assistance to the judge, who comes to work at 5:00 a.m. almost
12 every morning, with a huge caseload; and your office has not
13 done very much to help me get to the bottom of this.
14      You could have gone out and gotten these records.  And
15 instead, you're blaming the guy you say was crazy and didn't
16 have --
17      **MS. DAVIS:**  I --
18      **THE COURT:**  -- the wherewithal to make a waiver in the
19 first place.  So maybe this will be first case, Ms. Davis.
20 Maybe this will be the first case that says what you say no
21 case has ever said.
22      All right.  I'm going to give each of you --
23      **MS. DAVIS:**  Yes --
24      **THE COURT:**  Wait a minute.  You get one minute,
25 Ms. Davis, and Mr. Kelly gets one minute, and then I'm going to

PROCEEDINGS

the next of my many, many cases I have on my plate.

Go ahead, Ms. Davis.

**MS. DAVIS:** So we're not stating that Mr. Stokes is crazy. We have never stated that. We have stated that he is subject to a prohibition based on his involuntary commitment; that is what the law states.

In terms of getting the records, they are his medical records. We cannot get them, as far as I know.

And we have responded to all the briefing that the Court has asked for. We deposed him. We've reviewed all the documents. I apologize to the Court if you think that we should have produced more documents; but we are not able to get plaintiff's personal medical records.

**THE COURT:** May I ask if --

**MS. DAVIS:** -- the agency -- Oakcrest is closed right now. But we are not saying that Mr. Stokes is crazy. That's not what we're saying.

**THE COURT:** No. No. But at the time, he was not able to think straight and yet you say he waived his rights. And I would like to know what was -- was he told that he could never have a firearm the rest of his life. And you say maybe he was.

I think that's wrong. I think that's totally wrong.

And I bet if we ever got the records, which you refuse to go get, then we would know that he was not warned of that.

Well, you say "But these are his medical records." Yeah,

1    you can't get them.  But what you could have done was you could
2    have gone to the agency and said, "Okay.  We don't have the one
3    that was given to him, but give us a standard form that was
4    used back at the time in question."
5         Ms. Davis --
6         **MS. DAVIS:**  Judge, the standard form is in the record.
7    Mr. Stokes actually put it in his documents.
8         The standard form is there.  I haven't said that maybe he
9    was told that he wasn't -- that he was going to have a firearms
10   ban.  But the standard form is in the record.  Mr. Stokes, as
11   he stated, could have provided it with one of his briefs.
12        **THE COURT:**  If it's in the record, what did it say?
13   Did it say that he would lose his firearm rights?
14        **MS. DAVIS:**  No.  There is no indication in that form
15   about firearm rights.
16        **THE COURT:**  All right.  Well, then -- then maybe this
17   will be the first case, and you will be able to win on appeal;
18   that crazy Judge Alsup ruled against you, and now you can get
19   me reversed.
20        But to my mind -- to my mind, there ought to be judicial
21   involvement and not just government claiming a waiver, where
22   you got the guy locked up, and you're not telling him:  Listen,
23   this is long-term.  This is going to affect you the rest of
24   your life.  You're a teenager now, but when you're age 50 and
25   you want to inherit some rifles from your grandad or ever have

1  a firearm, you'll be out of luck the rest of your life because
2  California's not in the system.
3      To me, this was an important thing.  And maybe if he had
4  heard that, somebody would have said:  Wait a minute.  What are
5  you doing to me?  Get me out of here.
6      All right.  Mr. Kelly, you get one minute, then I've got
7  to go to the next case.
8      **MR. KELLY:**  Thank you so much.
9      Federal defendants just indicated that the standard form
10 is in the record.  I am curious what she is referencing
11 exactly.  My client has sought out, diligently, his full
12 medical records.  And we have provided all of them into the
13 record, everything that we can provide.
14     I have not seen anything that matches the form that is
15 presented as the sample form under California Welfare and
16 Institutions Code 5152.  There is no clear record of who made
17 the 5250 designation, what the factual basis of that was.
18 There is, you know, possible assumptions that you can make from
19 the medical records, but no clear statement.
20     And I would like to point out that my client wanted
21 treatment.  He asked for them to take him to get help.  So the
22 sense -- the argument that the federal defendants are making,
23 that he should have petitioned to get a court hearing to get
24 out of treatment that he requested, is absurd.
25     And it creates a perverse incentive, where someone doing

1   the responsible thing, feeling psychological distress and
2   seeking help, is then told:  Hey.  You didn't dispute what you
3   tried to get, so you're going to have this ban on your
4   fundamental rights for the rest of your life.
5       That would be a perverse incentive that's contrary to
6   public policy.
7           **THE COURT:**  All right.  Thank you.  I'm sorry.  I've
8   got to --
9           **MS. DAVIS:**  Your Honor, to clarify, I'm talking about
10  the form that Mr. Stokes put -- the sample form.  I'm not
11  saying that it's a filled-out form.  It's the sample form that
12  Mr. Stokes included.
13      And we're not saying that he should have done anything.
14  We're saying that the proceedings were available to him if he
15  chose to avail himself of them.
16          **THE COURT:**  All right.  Thank you all.  I'm going
17  to -- I wish I had more time for your case, but we have had
18  many rounds, and maybe it's coming to an end.
19      Okay.  You all can hang up then, and I'll go to the next
20  case.
21          **MS. DAVIS:**  Thank you, Your Honor.
22              (Proceedings adjourned at 2:30 p.m.)
23                      ---o0o---
24
25

**CERTIFICATE OF REPORTER**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE:    Monday, July 19, 2021

_____
Ruth Levine Ekhaus, RMR, RDR, FCRR, CSR No. 12219
Official Reporter, U.S. District Court