ROB BONTA
Attorney General of California
ANTHONY R. HAKL
Supervising Deputy Attorney General
JERRY T. YEN
Deputy Attorney General
State Bar No. 247988
  1300 I Street, Suite 125
  P.O. Box 944255
  Sacramento, CA 94244-2550
  Telephone: (916) 210-7836
  Fax: (916) 324-8835
  E-mail: Jerry.Yen@doj.ca.gov
*Attorneys for State of California and Rob Bonta, in his official capacity as California Attorney General*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EASTON STOKES,<br><br>                                    Plaintiff,<br><br>          v.<br><br>THE UNITED STATES DEPARTMENT OF JUSTICE, WILLIAM BARR, individually and as Attorney General of the United States, THE U.S. BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES (ATF); REGINA LOMBARDO individually and as Acting Director of ATF; THE FEDERAL BUREAU OF INVESTIGATION; Christopher Wray individually and as Director of the Federal Bureau of Investigation; STATE OF CALIFORNIA, ROB BONTA, individually and acting as Attorney General of the State of California, THE SONOMA COUNTY SHERIFF'S OFFICE, MARK ESSICK, individually and as Sheriff of Sonoma County,<br><br>                                    Defendants. | 3:19-cv-04613-WHA<br><br>**DEFENDANT CALIFORNIA ATTORNEY GENERAL ROB BONTA'S RESPONSE TO ORDER REQUESTING ADDITIONAL INFORMATION**<br><br>Judge:          Hon. William Alsup<br>Trial Date:    None Set<br>Action Filed: August 12, 2019 |

Defendant California Attorney General Rob Bonta files this response to the Court's July 26, 2021 Order (ECF No. 110) requesting answers to five questions.

1. As the Court reads the Kaiser records on plaintiff, there is no reference to Section 5150 or to any 72-hour hold. And in fact, there is an affirmative reference to plaintiff being "advised not to not attend school tomorrow" (Dkt. No. 79 at 5), and a reference to "IOP Screening 3/12/02" (*id*. at 10), which the Court presumes means intensive outpatient screening. Please state whether plaintiff was, in fact, detained for 72 hours under Section 5150 versus whether he was evaluated and allowed by Kaiser to return home with prescriptions. Please cite to and refer to every reference in the Kaiser records (or any other records) referring to Section 5150, a 72-hour hold, a hold of any type, or anything else that would indicate plaintiff was ever held by Kaiser under Section 5150.

**Response:** The record suggests that Mr. Stokes indeed was held under Section 5150, although the available evidence indicates that Oakcrest, as opposed to Kaiser, imposed that hold. More specifically, according to his Kaiser records, Mr. Stokes went to Kaiser three times on March 11, 2002 – two times to the outpatient psychiatric department during the day and then to the emergency room later that same day around 8:30 p.m. ECF No. 79-1 at p. 10 ("brought in by foster parents today twice to psychiatry . . . sent home with rx . . . yet to pick them up but foster parents found out more information from pts friends and feel pt is danger to self them and his friends"); *see also* ECF No. 79 at pp. 1-10 (March 11, 2002 notes from psychiatric department). Then, at some point after his evaluation at the Kaiser emergency room, Mr. Stokes was transported to a mental health facility, Oakcrest, which unlike the Kaiser facility had the capacity to deliver inpatient psychiatric treatment. *See* Nov. 20, 2020 Deposition of Easton Stokes (ECF No. 88-1) at 105 ("And I ended up getting transported from Kaiser . . . . I don't think they have a psychiatric ward . . . ."). The facility that admits a patient under Section 5150 for treatment and evaluation—in this case, Oakcrest—would place and report the 5150 hold.[1] *See* Cal. Welf. &

---

[1] An individual's 5150 report is removed from the California Department of Justice's Mental Health Reporting System once his or her firearms prohibition expires after 5 years. *See* Cal. Welf. & Inst. Code § 8103(f)(1)(A).

Inst. Code §§ 5150 and 8103(f)(2).  Moreover, Oakcrest, which was Sutter's Psychiatric Unit,[2] reported Mr. Stokes' 5250 hold to the California Department of Justice.  ECF No. 89 at Exh. D. Under the relevant statutory framework, a 5150 hold is a necessary precursor to a 5250 hold.  Cal. Welf. & Inst. Code § 5250.  This series of events suggests that Oakcrest—as opposed to Kaiser— initially placed Mr. Stokes on a 5150 hold and then later determined that he needed to be held longer for treatment under Section 5250.

In response to the Court's order, the California Attorney General identifies the following additional documents indicating that Mr. Stokes was held for involuntary evaluation and treatment, which on balance also indicate that Oakcrest, as opposed to Kaiser, imposed the relevant 5150 hold:

- Nov. 20, 2020 Deposition of Easton Stokes.  ECF No. 88-1 at 106, 133 (Mr. Stokes testifying that "I voluntarily went to [Oakcrest][3] in an ambulance, and that's when I was declared a 5150" and "while I was in the ambulance talking with the paramedic in the back," "I could hear over the radio that so-and-so ambulance is transferring a patient who's a 5150 to Oakcrest.").
- Kaiser Patient Progress Record (ECF No. 79 at p. 11) stating "Probable 14 day hold" in the 3/14/02 entry.
- Declaration of Easton Stokes dated May 5, 2019 and filed with his complaint.  ECF No. 1-1 at ¶ 3 ("I was told that personnel at Kaiser decided to label me at [sic] "5150 in order to transport me to Oakcrest hospital via ambulance.").

2. Under the California scheme used by Sonoma County in 2002, when a patient voluntarily accepted a commitment, how was it documented?  If a patient voluntarily accepted a 14-day hold for intensive psychiatric treatment, was that nevertheless documented as a Section 5250 hold?  If not, how was it documented or supposed to be documented?

---

[2] Sutter Health operated Oakcrest in 2002, but it was closed in 2008.  *See* Carol Benfell, *Sutter's psychiatric unit to close in 2008*, The Press Democrat, March 10, 2006, *available at* https://www.pressdemocrat.com/article/news/sutters-psychiatric-unit-to-close-in-2008/.

[3] Although the transcript says that he "went to Kaiser in an ambulance," Mr. Stokes likely meant to say Oakcrest because he testified that Nancy Barker (his friend's mother) drove him to Kaiser and that he was transported to Oakcrest in an ambulance.  *Id*. at 104, 107.  In other words, it is undisputed that Mr. Stokes did not go to Kaiser in any ambulance.

**Response:** The California Attorney General refers to California Welfare and Institutions Code section 6002 which specifies certain requirements when an adult (i.e., an individual over 17 years of age) is voluntarily admitted for treatment to a private institution. In particular, the Code requires that the patient must make "a written application to the person in charge of admission into the institution, hospital, or clinic" and the patient must also be, "at the time of making the application, mentally competent to make the application." Cal. Welf. & Inst. Code § 6002(a). After admission, the mental health facility must "forward to the office of the State Department of State Hospitals a record of the voluntary patient showing all information required by rule by the department." *Id*. at § 6002(b). It is also possible that the mental health facility had other requirements for documenting when a patient voluntarily accepts a commitment.

Given the requirements discussed above, a patient who voluntary accepts treatment would not be documented as certified for intensive treatment under Section 5250. A patient can only be certified under Section 5250 if the mental health facility's professional staff finds that the patient, "as a result of a mental health disorder or impairment by chronic alcoholism, [is] a danger to others, or to himself or herself, or gravely disabled" and is unwilling or unable "to accept treatment on a voluntary basis."[4] *Id*. at §§ 5250(a) and 5250(c). Moreover, as discussed above, a patient's record of voluntary treatment would be sent to the State Department of State Hospitals, and no report would have been submitted to the California Department of Justice. *Id*. at § 6002(b); *cf. id*. at § 8103(g)(2) (requiring a report to the California Department of Justice if a person has been certified under Section 5250, not if the patient is admitted voluntarily under Section 6002).

3.   Please supply the filled-out form used to report plaintiff to the California DOJ. It appears that the form should have been called "Mental Health Facilities Report of Firearm Prohibition Form 4009A," according to a California DOJ, Division of Law Enforcement,

---

[4] Here, given Mr. Stokes' mental state of confusion and disorientation at the time of his 5250 hold, it is possible that mental health professionals determined that he was not mentally competent or able to voluntarily accept treatment. *See* Attorney General's Opposition to Plaintiff's Cross-Motion for Summary Judgment, ECF No. 94, at pp. 1-2 (citing Nov. 20, 2020 Deposition of Easton Stokes at 103, 110-111).

1  Information Bulletin, dated May 22, 2007 (attached to this order).  The California DOJ shall
2  produce this form as it pertained to plaintiff.
3      **Response:**  The California Attorney General refers to Plaintiff's Firearms Prohibition
4  Summary that was attached as Exhibit D to the Attorney General's Motion for Summary
5  Judgment (ECF No. 89 at Exh. D).  The information in that summary contains the same
6  information that would have been reported from the mental health facility in paper form in 2002.
7  *See* Attachment A (blank Form 4009A).  Paper records were entered into the Mental Health
8  Reporting System when it moved online in July 2012 and the paper records are no longer
9  maintained.  *See* Gilbert Mac Declaration (ECF No. 89-1), at ¶ 11.
10     4.    Section 5252 prescribed a notice of certification.  All parties shall supply the specific
11 version of that form as filled out in 2002 for plaintiff.
12     **Response:**  Mental health facilities are not required to provide a copy of the Section 5252
13 notice of certification to California Department of Justice.  Thus, the California Department of
14 Justice does not have a copy of Mr. Stokes' notice of certification.
15     5.    Did it make any difference in terms of who paid for his treatment (or for funding for
16 the facility) whether the treatment was documented as a Section 5150 or Section 5250?
17     **Response:**  The California Attorney General does not have sufficient information to
18 respond to this question.  The California Attorney General is not aware of who pays for treatment
19 under Section 5150 or Section 5250 or how much mental health facilities receive for such
20 treatment.

| | |
|---|---|
| Dated: July 29, 2021 | Respectfully Submitted, |
| | ROB BONTA<br>Attorney General of California<br>ANTHONY R. HAKL<br>Supervising Deputy Attorney General |
| | */s/ Jerry T. Yen*<br>JERRY T. YEN<br>Deputy Attorney General<br>*Attorneys for State of California and Rob Bonta, in his official capacity as California Attorney General* |

SA2019104336

CONFIDENTIAL

## Attachment A
# MENTAL HEALTH FACILITIES REPORT
# OF FIREARMS PROHIBITION

(Welfare and Institutions Code (WIC) Sections 8103(f) & (g) and 8105)

☐ ORIGINAL ☐ CORRECTION ☐ DISCHARGE

### PART I - PATIENT INFORMATION

| PATIENT'S NAME Last | First | Middle | AKA(S) |
|---|---|---|---|
| | | | |

| DATE OF BIRTH | APPROX. AGE | SEX | RACE | APPROX. HGT. | APPROX. WT. | EYES | HAIR |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

| PATIENT ID NUMBER | SOCIAL SECURITY NUMBER | DRIVER'S LICENSE NUMBER |
|---|---|---|
| | | |

### PART II - FACILITY INFORMATION

| NAME OF FACILITY | FACILITY DOJ ID NUMBER |
|---|---|
| | |

| ADDRESS | ZIP CODE | DATE |
|---|---|---|
| | | |

| CONTACT PERSON | TITLE | TELEPHONE NUMBER |
|---|---|---|
| | | |

### PART III - WIC SECTION 8103 INFORMATION ONLY

☐ 5150/5151/5152 WIC
(Danger to Self or Others Only - *Not* Gravely Disabled)

☐ 5250 WIC
(14 Day Hold - Includes Gravely Disabled)

☐ 5260 WIC
(14 Day Hold - Suicide)

☐ 5270.15 WIC
(30 Day Hold)

DATE OF ADMISSION AS INVOLUNTARY PATIENT: __|__|__

*DATE OF DISCHARGE FROM INVOLUNTARY STATUS: __|__|__

*Discharge report required only if patient is discharged more than 31 days from admission.

### PART IV - WIC SECTION 8105/8100(a) INFORMATION ONLY
*THIS SECTION SHOULD NOT BE COMPLETED IF PART III IS APPLICABLE.*

☐ 8100(a) WIC INPATIENT
(Danger to Self or Others pursuant to 8100(f) WIC)

DATE OF ADMISSION AS VOLUNTARY PATIENT: __|__|__

DATE OF DISCHARGE: __|__|__

DISTRIBUTION COPIES: White (Original DOJ); Yellow (Facility); Pink (Facility); Green (Discharge Report)

*SEE BACK OF FORM FOR ADDITIONAL INSTRUCTIONS*

FD 4009A (10/99)

# CERTIFICATE OF SERVICE

Case Name:  **Easton Stokes v. US DOJ, et al**          No.   **3:19-cv-04613-WHA**

I hereby certify that on July 29, 2021, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DEFENDANT CALIFORNIA ATTORNEY GENERAL ROB BONTA'S RESPONSE TO ORDER REQUESTING ADDITIONAL INFORMATION**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on July 29, 2021, at Sacramento, California.

|  |  |
|---|---|
| Lindsey Cannan | /s/ *Lindsey Cannan* |
| Declarant | Signature |

SA2019104336
35329916