STEPHANIE M. HINDS (CABN 154284)
Acting United States Attorney

SARA WINSLOW (DCBN 457643)
Chief, Civil Division

JULIE BIBB DAVIS (CABN 184957)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7066
    FAX: (415) 436-7169
    Julie.davis@usdoj.gov

Attorneys for Federal Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| EASTON STOKES, | CASE NO. 19-cv-4613 WHA |
| Plaintiff, | **FEDERAL DEFENDANTS' RESPONSE TO DOCKET NUMBER 110** |
| v. | |
| UNITED STATES DEPARTMENT OF JUSTICE, et al. | |
| Defendants. | |

FEDERAL DEFENDANTS' RESPONSE TO DOCKET NUMBER 110
C-19-4613 WHA

0

On July 26, 2021, the Court issued an Order (Dkt. No. 110) directing that all counsel respond to five questions regarding certain records and their potential relevance to this case.

To begin, Federal Defendants respectfully submit that they met their burden at summary judgment to demonstrate that Plaintiff was subject to an involuntary commitment that would trigger section 922(g)(4)'s restrictions on gun possession—here, a commitment under California Welfare and Institutions Code section 5250. At the outset of this litigation, Plaintiff conceded that he was subject to an involuntary psychiatric hold. Complaint at ¶¶ 25–26. And the only record evidence, including Plaintiff's sworn testimony, confirms that his commitment to Oakcrest was involuntary both as a matter of California law and as a matter of fact, and that there was support in the record for such a commitment. *See* Dkt. No. 84 at 2–4; Dkt. No. 88 at 6–8; Dkt. No. 96 at 2–6; Dkt. No. 98 at 1–4 (citing evidence). Plaintiff did not appeal that involuntary commitment at the time, and cannot collaterally challenge that involuntary commitment here in federal court almost two decades later. And even if it could be revisited, Plaintiff provides no argument supported by evidence to do so. Instead, Plaintiff's briefing on this point has both lacked any supporting citation to the record and failed to respond to Federal Defendants' extensive citations to both the record and Plaintiff's own testimony.[1] Federal Defendants do not have access to more of Plaintiff's medical records than he has produced in this case, and it is not Federal Defendants' burden to produce such records. At bottom, because of his well-documented involuntary commitment to Oakcrest, Plaintiff is properly subject to the restrictions on gun possession contained in section 922(g)(4) and cannot prevail on his claims in this case.

With this background, Federal Defendants respectfully submit the following responses to the Court's request for information.

1. The record suggests that Plaintiff was not detained under Section 5150 at Kaiser, and that he was allowed to return home with prescriptions after his first visit to Kaiser on March 11, 2002.

---

[1] In Plaintiff's final brief, Plaintiff did cite some record evidence for the proposition that "he went voluntarily to Kaiser" and then from Kaiser to Oakcrest. Dkt. 99 at 2. That is beside the point, because the involuntary commitment occurred at Oakcrest. Whether Plaintiff "chose to extend his stay" there, *id.*, he also testified that he had given up his "right to make decisions" and could not have left Oakcrest without petitioning to be discharged. Stokes Depo. 106–08, 116–17 (Dkt. No. 88-1).

FEDERAL DEFENDANTS' RESPONSE TO DOCKET NUMBER 110
C-19-4613 WHA

1

According to Plaintiff's testimony and partial medical records, he was not detained for 72 hours at Kaiser—instead, it appears that he was first seen at Kaiser on March 11, 2002, seen there again either later that night or on March 12, transferred from Kaiser to Oakcrest by ambulance, and subject to a 14-day involuntary hold at Oakcrest on March 12. Stokes Depo. 97–98, 106–08, 110; Dkt. No. 79 at 4, 5, 10, 11; Dkt. No. 79-1 at 9–10 *see also* Dkt. No. 96-1 (indicating the prohibiting event, here an involuntary commitment under section 5250, occurred March 12, 2002). Plaintiff testified that, en route to Oakcrest, he overheard on the ambulance radio that "a patient who's a 5150" was being transferred to Oakcrest, which Plaintiff believes referred to himself. Stokes Depo. 133. He did not have any discussions with anyone about a 5150 hold at Kaiser or Oakcrest. *Id.* at 134. And his medical records include a checkmark for "No" next to "Involuntary Hold (5150)." Dkt. No. 79 at 4. At either Kaiser or Oakcrest, Plaintiff testified, he "gave up [his] rights to make decisions." Stokes Depo. 106; *see id.* at 107–08. And at Oakcrest, he knew he was unable to leave for 14 days without contesting his commitment and petitioning for release. Stokes Depo. 116–17, 121–22. Accordingly, Plaintiff was subject to a 5250 commitment at Oakcrest, *see* Dkt. No. 79 at 11 (indicating "Probable 14 day hold"). The State Defendants note in their response that a 5150 hold is a necessary precursor to a 5250 hold. Dkt. No. 112 at 3.

2. Federal Defendants lack information sufficient to respond to this question about Sonoma County practices in 2002.
3. Federal Defendants lack access to the California DOJ document requested by this question.
4. Federal Defendants lack access to the 2002 state document requested by this question.
5. Federal Defendants lack information sufficient to respond to this question about any relation between treatment payment and documentation under state law.

//
//
//
//

FEDERAL DEFENDANTS' RESPONSE TO DOCKET NUMBER 110
C-19-4613 WHA

2

Respectfully submitted,

DATED: July 29, 2021

STEPHANIE M. HINDS
Acting United States Attorney

By:   /s/ *Sara Winslow*   .
SARA WINSLOW
Assistant United States Attorney
Attorneys for Federal Defendants